**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ZILLOW GROUP, INC. and ZILLOW, INC., | Case No. 1:26-cv-5451 |
| *Plaintiffs,* | Judge: Hon. John J. Tharp, Jr. |
| v. | |
| MIDWEST REAL ESTATE DATA LLC, COMPASS, INC., and COMPASS ILLINOIS, INC., | |
| *Defendants.* | |

**DECLARATION OF MATTHEW HENDRICKS IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

I, Matthew Hendricks, hereby declare as follows:

1. I am the Vice President of Industry Affairs at Zillow Group.

2. I submit this Declaration in support of Plaintiffs Zillow Group, Inc. and Zillow, Inc.'s Motion for a Preliminary Injunction.

3. The matters in this declaration are based on my own personal knowledge. If called as a witness, I could and would testify competently to them.

4. I have worked in the real estate industry for over 23 years, over 10 of which have been at Zillow. Prior to taking on the role of Vice President of Industry Affairs, I served as Senior Director of Industry Affairs from October 2022 through February 2025 and various roles in the Brokerage group from November 2015 through October 2022.

5. In my current role, I am responsible for leading the Zillow Group Industry Affairs & Broker Operations Team. In that role, I regularly liaise with MLSs in which Zillow participates,

1

such as Midwest Real Estate Data, LLC ("MRED"). MRED is the largest MLS in Illinois and serves portions of neighboring states as well.

6.  Zillow's Listing Access Standards (the "Standards") are a core competitive business strategy for Zillow and promote Zillow's pro-transparency brand promise to consumers and real estate professionals who use our services. The Standards also help Zillow incentivize listing agents and sellers to provide Zillow with recent, high-quality listings early in the sales process rather than only after the listing fails to sell elsewhere in a private listing network ("PLN").

7.  Zillow relies on Internet Data Exchange ("IDX") and Virtual Office Website ("VOW") feeds provided by MRED to display for-sale residential real estate listings in the Chicagoland area. These feeds provide access to accurate, comprehensive, and up-to-date listings information for homes for sale on the MLS, as well as other information such as historical listing and sales data.

8.  On April 15, 2025, I attended a conference hosted by the Association of Real Estate License Law Officials ("ARELLO"). At the conference, MRED CEO Rebecca Jensen and Compass CEO Robert Reffkin participated in a "Private Listing Network Fireside Chat" that I attended. During the presentation, Mr. Reffkin commented to Ms. Jensen that Zillow's Standards "make MRED [PLN] impossible." Ms. Jensen responded with a discussion of feed display rules and that "Zillow is going to be making decisions based on brokerage, which is what I think is part of their algorithm." Zillow's Standards do not in any way make MRED's PLN impossible as the Standards reflect a Zillow business strategy to display only truly public listings. Ms. Jensen's interpretation of Zillow as making decisions "based on brokerage" also did not make sense to me because the Standards apply only to certain types of listings, i.e., listings that were previously marketed but not shared with all market participants.

**Defendants' Threats to Terminate Zillow's Access to MRED's Listing Feeds**

9.     On October 15, 2025, I attended a call with Ms. Jensen and Zillow's Vice President of Sales and Industry, Mike Lane. On the call, Ms. Jensen informed us that MRED would terminate Zillow's access to MRED's listing feeds if Zillow took steps to enforce the Standards in MRED's territory because doing this would violate forthcoming MRED rules.

10.     On the morning of October 31, 2025, I and other Zillow employees met with MRED, including Ms. Jensen, to discuss ways in which agents and sellers can deploy various marketing strategies while remaining compliant with Zillow's Standards. Ms. Jensen rejected our proposals and  expressed her disagreement with Zillow's Standards.

11.     On January 23, 2026, I spoke with Ms. Jensen after the Real Estate Standards Organization ("RESO") board meeting in Dallas, TX. Ms. Jensen stated that Zillow would face consequences for breaking MRED's revised IDX and VOW rules and that she knew about Zillow's efforts to obtain listing feeds directly from Chicagoland-area brokerages and associations. She further stated that she was not "bluffing" nor "backing down" about terminating Zillow's access to MRED's IDX and VOW feeds. She further stated that she was the "referee" and that MRED would continue to change its rules as needed to prevent Zillow from implementing its Standards regardless of how Zillow adapted them.

//

//

//

//

//

3

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14 day of May, 2026.

Matthew Hendricks