**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| ZILLOW GROUP, INC. and ZILLOW, INC.,<br><br>         *Plaintiffs*,<br><br>   v.<br><br>MIDWEST REAL ESTATE DATA LLC, COMPASS, INC., and COMPASS ILLINOIS, INC.,<br><br>         *Defendants*. | Case No. 1:26-cv-05451<br>Hon. Judge John J. Tharp |

**DEFENDANT MIDWEST REAL ESTATE DATA LLC'S**
**MOTION TO COMPEL ARBITRATION AND STAY ACTION**

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ...................................................................................................... 1

II. BACKGROUND ...................................................................................................... 2

III. LEGAL STANDARD ............................................................................................. 6

IV. ARGUMENT ........................................................................................................... 6

    A.     Zillow's Antitrust Claims Are Subject To Binding Arbitration Pursuant to The Arbitration Provisions ......................................................................................... 6

        1.     Under The FAA, This Court Must Compel Arbitration Pursuant To The Terms Of Zillow's License Agreements ...................................................... 7

        2.     Zillow's Arbitration Provisions Are Valid. ................................................ 7

        3.     The Arbitration Provisions Clearly Encompass Plaintiffs' Claims ............ 9

            i.     As A Third-Party Beneficiary, MRED May Enforce the Arbitration Provisions.................................................................... 10

            ii.     Zillow's Antitrust Claims Are Arbitrable ................................... 12

                a.     The Arbitration Provisions Are Broad ............................ 12

                b.     The Arbitration Provisions Cover Zillow's Claims .......... 13

    B.     This Action Should Be Stayed Pending Arbitration ........................................... 15

V. CONCLUSION........................................................................................................ 15

## TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*Adtile Techs. Inc. v. Perion Network Ltd.*,
192 F. Supp. 3d 515 (D. Del. 2016)...............................................................................9

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)......................................................................................................13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).......................................................................................................7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986).....................................................................................................10

*Baxter Int'l, Inc. v. Abbott Labs.*,
315 F.3d 829 (7th Cir. 2003) .....................................................................................1, 13

*Blair v. Scott Specialty Gases*,
283 F.3d 595 (3d Cir. 2002)...........................................................................................9

*BrightStar Franchising, LLC v. Foreside Mgmt. Co.*,
808 F. Supp. 3d 870 (N.D. Ill. 2025).............................................................................8

*Caley v. Gulfstream Aerospace Corp.*,
428 F.3d 1359 (11th Cir. 2005) .....................................................................................8

*Carder v. Carl M. Freeman Cmtys.*,
2009 WL 106510 (Del. Ch. Jan. 5, 2009).....................................................................11

*Castle v. Glob. Credit & Collection Corp.*,
2020 WL 127763 (N.D. Ill. Jan. 10, 2020)....................................................................6

*Cindy's Candle Co. v. WNS, Inc.*,
714 F. Supp. 973 (N.D. Ill. 1989).................................................................................13

*Corrigan v. Domestic Linen Supply Co.*,
2012 WL 2977262 (N.D. Ill. July 20, 2012)...................................................................7

*E. Hedinger AG v. Brainwave Sci., LLC*,
363 F.Supp.3d 499 (D. Del. 2019).................................................................................9

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)...................................................................................................8, 10

*Giuliano as Trustee for RIH Acquisitions NJ, LLC v. Sci. Games Corp.*,
2022 WL 1591651 (N.D. Ill. May 19, 2022)...................................................................1

*GNH Grp., Inc. v. Guggenheim Holdings, L.L.C.*,
2020 WL 4287358 (D. Del. July 27, 2020) .....................................................................9

*Gore v. Alltel Comm'ns, LLC*,
666 F.3d 1027 (7th Cir. 2012) ..............................................................................2, 7, 12

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000).........................................................................................................6

*In re Evanston Nw. Corp. Antitrust Litig.*,
2015 WL 13735423 (N.D. Ill. Sep. 4, 2015) .............................................................13

*In re Remicade (Direct Purchaser) Antitrust Litig.*,
938 F.3d 515 (3d Cir. 2019)........................................................................................13

*In re Rotavirus Vaccines Antitrust Litig.*,
30 F.4th 148 (3d Cir. 2022) ........................................................................................13

*James & Jackson, LLC v. Willie Gary, LLC*,
906 A.2d 76 (Del. 2006) ..............................................................................................14

*Jennings v. Ed Napleton Elmhurst Imports Inc.*,
2025 WL 461433 (N.D. Ill. Feb. 11, 2025) ...........................................................6, 15

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
174 F.3d 907 (7th Cir. 1999) ........................................................................................2

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011).........................................................................................................7

*Li v. Standard Fiber, LLC*,
2013 WL 1286202 (Del. Ch. Mar. 28, 2013)..............................................................12

*Maxwell v. Cellco P'ship*,
2019 WL 5587313 (D. Del. Oct. 30, 2019) ................................................................12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)..................................................................................................1, 13

*O'Shea v. Maplebear Inc.*,
508 F. Supp. 3d 279 (N.D. Ill. 2020) ............................................................................6

*Peters v. Kaleyra*,
2024 WL 4333143 (D. Del. Sep. 27, 2024) .......................................................... 10-13

*Rummel Klepper & Kahl, LLP v. Del. River & Bay Auth.*,
2022 WL 29831 (Del. Ch. Jan. 3, 2022)................................................................ 12-14

*Short v. MV Transp.*,
2025 WL 3641951 (N.D. Ill. Dec. 16, 2025).............................................................15

*Smash v. Dover Downs, Inc.*,
2022 WL 2966431 (D. Del. July 27, 2022) ............................................................. 8-9

*Smith v. Spizzirri*,
601 U.S. 472 (2024).....................................................................................................15

*Thompson v. Army & Air Force Exch. Serv.*,
125 F.4th 831 (7th Cir. 2025) .....................................................................................15

*Young v. Shipt, Inc.*,
563 F. Supp. 3d 832 (N.D. Ill. 2021) ............................................................................6

iii

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
    417 F.3d 682 (7th Cir. 2005) ..............................................................................................6, 10

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), Defendant Midwest Real Estate Data LLC (MRED), submits this Motion to Compel Arbitration and Stay Action and respectfully requests that the Court enter an order compelling Plaintiffs Zillow Group, Inc., and Zillow, Inc. (collectively, "Zillow"), to arbitrate this dispute and staying this action pending the outcome of the arbitration proceeding.

## I.   INTRODUCTION

Driven by concerns over its ability to sustain monetization of agent leads, Zillow has brought a meritless antitrust action rooted not in competitive harm, but in its insecurity about continuing to generate revenue and its dissatisfaction with the contract terms governing its access to MRED's listing data. Stripped of its rhetoric and hyperbole, this case presents nothing more than a straightforward dispute over license agreements. Zillow seeks continued access to thousands of MRED real estate listings while simultaneously attempting to avoid its obligations in those license agreements. But that is not how contracts work.

To make matters worse, Zillow's alleged harm is completely self-inflicted, readily avoidable, and can be remedied at any time by simply complying with the same clear and longstanding license agreements under which it has operated for years. Because the parties expressly agreed to arbitrate disputes arising from those license agreements, the Court should enforce the applicable terms and compel arbitration without delay.

The Supreme Court and Seventh Circuit have long held antitrust disputes may be resolved through arbitration. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *Baxter Int'l, Inc. v. Abbott Labs.*, 315 F.3d 829, 832 (7th Cir. 2003) ("arbitration of antitrust disputes is appropriate"); *Giuliano as Trustee for RIH Acquisitions NJ, LLC v. Sci. Games Corp.*, 2022 WL 1591651, at *5 (N.D. Ill. May 19, 2022) (compelling arbitration where

1

"the antitrust claims at issue were implicated by the relevant contracts that contained arbitration provisions"). This case is no exception, as Zillow's claims fall well within the scope of its expansive agreement to arbitrate.

In the license agreements governing the real estate listing data at the heart of this case, Zillow agreed to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement." Haran Decl. ¶ 8, Ex. A § XII(c) (the "IDX Agreement"); ¶ 9, Ex. B § XII(c) (the "VOW Agreement") (collectively, the "License Agreements"). Zillow filed this antitrust lawsuit last week, and yesterday a motion for a preliminary injunction and motion for expedited discovery, to have continued access to MRED's data feeds that Zillow receives under its License Agreements for MRED data, even though Zillow has failed to comply with the terms of the license. Zillow's antitrust claims fall squarely within the "arising out of or relating to" language in the License Agreements requiring arbitration. *See Gore v. Alltel Comm'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) ("'arising out of' reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se") (quotations omitted); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909 (7th Cir. 1999) (characterizing arbitration clause's "arising out of or relating to" language as "extremely broad and capable of an expansive reach"). The crux of Zillow's antitrust lawsuit is a challenge to the licensing rules imposed on the display of MRED's property listing data that Zillow has contracted to use.

As a result, the Court should send to arbitration Zillow's antitrust claims arising from its contractual obligations and stay the case pending resolution.

## II. BACKGROUND

For Zillow to receive and display data on various properties for sale in the MRED service area, Zillow entered into two different license agreements with MRED's technology vendor, MLS

GRID, to gain access to that listing data. *See* License Agreements. Pursuant to those IDX (Internet Data Exchange) and VOW (Virtual Office Website) License Agreements, Zillow obtained a "non-exclusive, limited, revocable, non-transferable, non-sublicensable worldwide license to use (i) MLS GRID Data provided under this Agreement solely for those usage options selected by the MLS." *See* IDX Agreement § II; VOW Agreement § II.

MRED provides data feeds to MLS Grid to send to Zillow to display listing data for IDX and VOW uses consistent with Zillow's data licenses. *See* IDX Agreement § I ("IDX is a cooperative initiative whereby a Member Participant of an MLS gives permission to display its real-estate listings on another Member Participant's websites and vice versa"); VOW Agreement § I ("VOW is a cooperative initiative whereby a Member Participant's Internet website, or a feature of Member Participant's website is capable of providing real estate brokerage services to consumers with whom a broker-consumer relationship has been established where the consumer may search MLS data, subject to the Member Participant's oversight, supervision, and accountability.").

Zillow's data licenses are at issue in Zillow's Complaint and fundamental to the case here. In the License Agreements, Zillow agreed not to "[u]se, distribute, [or] publicly display ... the MLS GRID Data … for any purpose … that is otherwise inconsistent with the intent of this Agreement and the MLS GRID Rules." IDX Agreement § V(f)(vii); VOW Agreement § V(f)(vii). "MLS GRID Rules" means "all rules, other than the Governing Documents, governing the use, maintenance, and display of MLS GRID Data, as may be changed by MLS GRID in its sole discretion." IDX Agreement § I; VOW Agreement § I.

Crafted by MRED to apply to data feed recipients, like Zillow, who license MRED listing data through MLS GRID for display, MLS GRID's Rules – or what Zillow calls "MRED's Revised

3

Rules" – are publicly available[1] and at the core of Zillow's Sherman Act claims. *See, e.g.*, Compl. ¶¶ 103 ("MRED's Revised Rules became effective on or around October 29, 2025."), 104 ("As of April 29, 2026, the complete, revised IDX rule is as follows: … For MRED Participants only…"), 105 ("As of April 29, 2026, the complete, revised VOW rule is as follows: … For MRED Participants only…").

Specifically, Zillow alleges that MRED created new rules for licensing MRED's listing data to thwart Zillow's adoption of its own listing display rules. *See id.* ¶¶ 190 ("Starting in or around October 2025, MRED engaged in anticompetitive conduct by enacting its Revised Rules which prevent Zillow from enforcing its [new Listing Access] Standards"), 191 ("Under MRED's Revised Rules, Zillow will lose access to MRED's Listing Feed if it enforces the Standards"). Zillow contends, at length, that MRED's "Revised Rules are designed to provide MRED with a pretextual basis for retaliating against Zillow's implementation of its Standards by terminating Zillow's access to MRED's Listing Feed." *Id.* ¶ 102. Through the License Agreements, these "Revised Rules" govern Zillow's duties and obligations under its licensees, which in turn, govern its ability to access the listing data that is central to this case. *See* MLS GRID Rules.

In fact, in explaining the alleged antitrust violations, Zillow asserts that it received "email communications from both MRED and its technology provider, MLS Grid" asking Zillow to display licensed MRED listing data because MLS GRID "identified multiple Compass listings that are purportedly in MRED's Listing Feed but were not displayed on Zillow." Compl. ¶ 128. Zillow alleges that "MRED demanded an explanation as to why Zillow did not display the Compass listings on Zillow's platforms" and that Zillow was sent "a copy of MRED's Revised Rules." *Id.*

---

[1] MLS GRID, *Resources & Guides* (last visited May 19, 2026), https://www.mlsgrid.com/resources. Copies of the publicly available MLS GRID IDX Rules and VOW Rules are also attached as Exhibits C and D, respectively, to the Haran Declaration. Haran Decl., ¶ 10, Ex. C ("IDX Rules"); Haran Decl., ¶ 11, Ex. D ("VOW Rules") (collectively, the "MLS GRID Rules").

¶¶ 129, 130. Further, Zillow avers that "MRED sent Zillow new rules (the 'Revised Rules') that purported to block Zillow from implementing [its] Standards in Chicagoland by inserting an MRED-specific provision into the objective criteria rule." *Id.* ¶ 101. Not surprisingly, Zillow's Complaint quotes an email where MRED explained that "MRED has made it clear to Zillow that selectively excluding certain listings may violate MRED's rules, as well as ***the terms of Zillow's license agreement with MRED***." *Id.* ¶ 111 (emphasis added and internal quotation marks omitted).

As part of its Section 1 claim, Zillow alleges that "Defendants also conspired to deprive Zillow of the opportunity … to challenge MRED's monopolistic imposition of the Revised Rules." *Id.* ¶ 110. As a basis for its Section 2 monopolization claim, Zillow claims that "MRED is willfully maintaining and abusing its monopoly power … through its anticompetitive Revised Rules targeting pro-consumer, pro-transparency platforms like Zillow[.]" *Id.* ¶ 188. For relief, Zillow seeks an equitable remedy to change the terms of its License Agreements, including "[a]n injunction prohibiting enforcement of MRED's Revised Rules" and "[a]n injunction prohibiting MRED from terminating Zillow's access to MRED's IDX or VOW feeds[.]" Compl. § XII.

In each of these License Agreements, Zillow agreed in Section XII(c) on "[d]ispute resolution" that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, including its Optional Rules for Emergency Measures of Protection (collectively, the "Arbitration Rules"), and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof." *See* IDX Agreement § XII(c); VOW Agreement § XII(c). In Section XII(j) of the license, Zillow further agreed that "[e]ach MLS is a third-party beneficiary of MLS GRID's delivery of the MLS's MLS

Data to third parties, including this Agreement, and each MLS is entitled to enforce the terms of this Agreement." *See* IDX Agreement § XII(j); VOW Agreement § XII(j).

As explained below, in the License Agreements, Zillow and MRED agreed that arbitration is the appropriate forum to resolve this dispute over Zillow's licensing and display of MRED listing data. Despite a request from MRED, Zillow has not agreed to arbitrate this dispute over its rights under the License Agreements.

## III. LEGAL STANDARD

Under the Federal Arbitration Act, a court may compel arbitration "if the following three elements are shown: [(1)] a written agreement to arbitrate, [(2)] a dispute within the scope of the arbitration agreement, and [(3)] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005); *accord O'Shea v. Maplebear Inc.*, 508 F. Supp. 3d 279, 284 (N.D. Ill. 2020). "Courts review motions to compel arbitration under a summary judgment standard." *Castle v. Glob. Credit & Collection Corp.,* 2020 WL 127763, at *3 (N.D. Ill. Jan. 10, 2020). The court "must accept the complaint's allegations as true, and draw all justifiable inferences in the non-movant's favor," but may consider evidence "beyond the pleadings." *Jennings v. Ed Napleton Elmhurst Imports Inc.*, 2025 WL 461433, at *3 (N.D. Ill. Feb. 11, 2025) (Tharp, J.). "The party opposing arbitration bears the burden of establishing why the arbitration provision should not be enforced." *Young v. Shipt, Inc.*, 563 F. Supp. 3d 832, 836 (N.D. Ill. 2021) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)). Here, Zillow cannot carry that burden.

## IV. ARGUMENT

### A. Zillow's Antitrust Claims Are Subject To Binding Arbitration Pursuant to The Arbitration Provisions

6

1.      **Under The FAA, This Court Must Compel Arbitration Pursuant To The Terms Of Zillow's License Agreements**

Section 2 of the FAA provides that binding arbitration agreements in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. As the Supreme Court has consistently confirmed, this provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).

The FAA mandates a liberal policy favoring the enforcement of arbitration agreements and requires any doubts regarding whether a dispute is arbitrable to be resolved in favor of arbitration. *See KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011). The "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *See Concepcion*, 563 U.S. at 344; *see also Corrigan v. Domestic Linen Supply Co.,* 2012 WL 2977262, at *5 (N.D. Ill. July 20, 2012) ("Parties are 'generally free to structure their arbitration agreements as they see fit."). By consenting to bilateral arbitration, "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Concepcion*, 563 U.S. at 344, 348.

An arbitration agreement governed by the FAA, like Zillow's License Agreements here, is presumed to be valid and enforceable. *See Gore*, 666 F.3d at 1034. The provisions in Section XII(c) of MRED's License Agreements where Zillow agreed to submit to binding arbitration any claim arising out of or relating to the agreements (the "Arbitration Provisions") are valid and enforceable.

2.      **Zillow's Arbitration Provisions Are Valid**

7

While the FAA exclusively governs the enforceability of arbitration agreements, state law governs whether there is a valid agreement to arbitrate. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). The License Agreements between Zillow and MRED, which include the Arbitration Provisions, contain a Delaware choice-of-law provision. *See* IDX Agreement § XII(a); VOW Agreement § XII(a). Delaware law governs the validity of the Arbitration Provisions.[2]

Under Delaware law, the License Agreements (and their Arbitration Provisions) are binding, enforceable contracts. Each License Agreement contains the requisite "(1) intent to be bound, (2) sufficiently definitive terms, and (3) exchange of consideration" to enforce the Arbitration Provisions. *See, e.g.*, *Smash v. Dover Downs, Inc.*, 2022 WL 2966431, at *2 (D. Del. July 27, 2022) (compelling arbitration and dismissing complaint based on valid contract under Delaware law).

*First,* "[t]he parties' intent to be bound by the Arbitration [Provisions] is manifested by their signatures." *Id.; see* IDX Agreement at 11-12; VOW Agreement at 11-12. Indeed, Zillow filed an antitrust lawsuit to secure a federal court injunction so it would no longer be bound by MRED's display rules that Zillow agreed to in its License Agreements. *See* Compl. § XII (requesting "[a]n injunction prohibiting enforcement of MRED's Revised Rules").

*Second,* the Arbitration Provisions contain sufficiently definitive terms, stating that the parties agree that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules including its Optional Rules for Emergency Measures of Protection (collectively, the 'Arbitration Rules'), and judgment on the award rendered

---

[2] Contractual choice-of-law provisions are routinely enforced in Illinois. *BrightStar Franchising, LLC v. Foreside Mgmt. Co.*, 808 F. Supp. 3d 870, 879 (N.D. Ill. 2025).

by the arbitrator(s) may be entered in any court having jurisdiction thereof." IDX Agreement §
XII(c); VOW Agreement § XII(c). *See, e.g.*, *Smash*, 2022 WL 2966431 at *2 (holding that "the
parties agree[d] to forego the right to sue each other in court and further agree to arbitrate 'any
dispute that may arise from' Plaintiff's employment"); *E. Hedinger AG v. Brainwave Sci., LLC*,
363 F.Supp.3d 499, 508 (D. Del. 2019) (compelling arbitration under Delaware law and noting
that "[c]ourts in Delaware have found language similar to the 'arising out of or relating to' language
to be indicative of a broad arbitration clause").

*Third,* the parties' "mutual assent to the Arbitration [Provisions] qualifies as adequate
consideration." *Smash*, 2022 WL 2966431 at *2; *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603
(3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration
exists and the arbitration agreement should be enforced.").

Accordingly, Zillow's Arbitration Provisions are valid and enforceable agreements to
arbitrate under Delaware law. *See, e.g.*, *Smash*, 2022 WL 2966431, at *2 ("We therefore conclude
that the Arbitration Agreement between [parties] is a valid contract"); *GNH Grp., Inc. v.
Guggenheim Holdings, L.L.C.*, 2020 WL 4287358, at *2-4 (D. Del. July 27, 2020) (compelling
arbitration based on "valid and enforceable Arbitration Provision" which stated that "[a]ny
controversy between the parties hereto involving any claim arising out of or relating to this
Agreement, will be submitted to and be settled by final and binding arbitration"); *Adtile Techs.
Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 525-26 (D. Del. 2016) (compelling arbitration
under Delaware law where parties "agreed to submit 'any controversy or claim arising out of or
relating to'" license agreement).

### 3. The Arbitration Provisions Clearly Encompass Zillow's Claims

9

The remaining inquiry is whether the dispute falls "within the scope of the arbitration agreement." *Zurich Am.*, 417 F.3d at 687. An "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Here, because MRED is an intended third-party beneficiary under the License Agreements and because Zillow's antitrust claims plainly "arise out of or relate to" the License Agreements, this Court must refer Zillow's claims to arbitration.

### i. As A Third-Party Beneficiary, MRED May Enforce the Arbitration Provisions

Under Delaware law, "nonsignatories to a contract can compel a signatory to arbitrate their claims if they count as third-party beneficiaries." *Peters v. Kaleyra*, 2024 WL 4333143, at *4 (D. Del. Sep. 27, 2024). And, a third party is a beneficiary where "(1) the contracting parties intended the contract to benefit the third party, (2) they intended the benefit as a gift or to satisfy a pre-existing obligation to the third party, and (3) conferring this benefit was a 'material part of the parties' purpose in entering into the contract.'" *Id.* (citation omitted).

*First*, the terms of the License Agreements evidence the parties' undeniable "intent" to benefit MRED. *Peters*, 2024 WL 4333143, at *4. Section XII(j) of each License Agreement specifically designates "[e]ach MLS" as a "third-party beneficiary of MLS GRID's delivery of the MLS's MLS Data to third parties," and specifically states that "***each MLS is entitled to enforce the terms of th[e] Agreement.***" *See* IDX Agreement § XII(j); VOW Agreement § XII(j) (emphasis added). The License Agreements are "for the ***sole and exclusive benefit of*** MLS GRID, ***MLS***, Vendor, and Participant," while defining "MLS" to mean "any of the multiple listing services … that is a member of MLS GRID or that has otherwise agreed to license multiple listing service data to MLS GRID, as may change from time to time." *See* IDX Agreement §§ I, XII(j); VOW

10

Agreement §§ I, XII(j) (emphasis added). Indeed, the core of Zillow's lawsuit is a challenge to the licensing rules that MRED imposes through MLS GRID. *See* Compl. ¶¶ 101-106, 110-111, 188, 190; IDX Rules, Rule 9; VOW Rules, Rule 13. For example, MLS GRID'S IDX Rule 21 makes clear that "[a]ny display of fewer than all IDX listings must remain consistent with Rule 9 (Criteria for IDX Display)," but Zillow has filed an antitrust lawsuit to avoid displaying all of MRED's IDX listings. IDX Rules, Rule 21 ("[f]or MRED Participants only"). As a result, the parties clearly intended for MRED to "benefit" from and "enforce" the License Agreements as a third-party beneficiary. *Peters*, 2024 WL 4333143, at *4.

*Second,* the parties clearly intended to give MRED the benefit of being treated as a third-party beneficiary. *Peters*, 2024 WL 4333143, at *4. MRED agreed to provide its data to MLS GRID, who would then license it to Zillow, for a fee and the security afforded by allowing MRED to enforce the License Agreements. *See* Haran Decl., ¶ 14. *See also Carder v. Carl M. Freeman Cmtys.*, 2009 WL 106510, at *8 (Del. Ch. Jan. 5, 2009) ("It is conceivable, therefore, that Freeman's inclusion of First Republic in the Contract may have been in satisfaction of an obligation Freeman owed to First Republic to refer potential purchasers to it.").

*Third*, "conferring this benefit was a material aspect of the agreement." *Peters*, 2024 WL 4333143, at *4. The value proposition of MLS GRID is to provide vendors, participants and brokers access to property listing data in an efficient manner. *See* Haran Decl., ¶ 15. For MLS GRID to fulfill its purpose as a technology provider, MRED must provide its data to MLS GRID for distribution. *Id.* Zillow concedes this very point by virtue of its allegations that MRED's listing data – provided through MLS GRID – is a "critical input for competition in the market" and an "essential input [Zillow] needs to compete[.]" *See* Compl. ¶¶ 1, 75. Providing MRED the ability

11

to instruct how licensees display MRED listing data provided through MLS Grid was necessarily material to the License Agreements.

Because MRED is a third-party beneficiary under the License Agreements, MRED is entitled to compel Zillow to arbitration.

### ii.      Zillow's Antitrust Claims Are Arbitrable

"To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore*, 666 F.3d at 1032. Under controlling Delaware law, courts first "ask if the scope of the arbitration clause is broad or narrow" and then they "decide whether each legal claim falls within the scope of the arbitration provision." *Peters*, 2024 WL 4333143, at \*5. In this case, Zillow's antitrust claims are within the broad scope of the Arbitration Provisions.

### a.      The Arbitration Provisions Are Broad

When an arbitration provision is broad, Delaware courts compel arbitration on all claims that "touch on contract rights or contract performance." *Id*. (citation omitted). Here, the Arbitration Provisions are undeniably broad, covering "***[a]ny controversy or claim arising out of or relating to th[ese] Agreement[s]***." IDX Agreement § XII(c); VOW Agreement § XII(c) (emphasis added). *See also Li v. Standard Fiber, LLC*, 2013 WL 1286202, at \*2 (Del. Ch. Mar. 28, 2013) (characterizing the same language as a "broad" arbitration clause); *Rummel Klepper & Kahl, LLP v. Del. River & Bay Auth.*, 2022 WL 29831, at \*10 (Del. Ch. Jan. 3, 2022) ("the use of 'arising out of' and 'relating to' language in the Dispute Resolution Provision indicates the parties' intent for a broad mandate for arbitration"); *Maxwell v. Cellco P'ship*, 2019 WL 5587313, at \*5 (D. Del. Oct. 30, 2019) ("Plaintiffs suggest that the phrases 'relates to' and 'arises out of' in the arbitration provision necessarily limit arbitrable disputes to contract claims. However, plaintiffs' claims are

12

arbitrable as long as they 'touch matters' covered by the parties' contract"); *Peters*, 2024 WL 4333143, at \*5 ("That language signals the parties' intent to arbitrate 'all possible claims that touch on the rights set forth in the contract.'") (cleaned up).

> **b.      The Arbitration Provisions Cover Zillow's Claims**

"Where, as here, the arbitration provision is broad, it will apply to 'any issues that touch on contract rights or contract performance.'" *Rummel Klepper*, 2022 WL 29831, at \*11 (citation omitted). "For a claim to fall within the scope of a broad arbitration provision, it must 'depend on the existence of' the agreement that contains the arbitration provision." *Id.*

When a contract, like Zillow's License Agreements, contains a broad arbitration clause, federal antitrust claims fall within their scope. *See, e.g., Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (compelling arbitration in antitrust dispute and noting that "courts must 'rigorously enforce' arbitration agreements according to their terms") (citation omitted); *Mitsubishi Motors Corp.*, 473 US at 617 (compelling arbitration of antitrust claims based on clause providing that "[a]ll disputes, controversies or differences which may arise between [the parties] out of or in relation to [their] Agreement or for the breach thereof, shall be finally settled by arbitration"); *Baxter Int'l, Inc.*, 315 F.3d at 832; *In re Rotavirus Vaccines Antitrust Litig.,* 30 F.4th 148, 158-59 (3d Cir. 2022) (sending antitrust claims to arbitration as "any controversy, claim or dispute arising out of or relating to" parties' agreement under Pennsylvania law) (citation omitted); *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 518 (3d Cir. 2019) (compelling arbitration of antitrust claims that "arise out of or relate to" a distribution agreement under New Jersey law); *In re Evanston Nw. Corp. Antitrust Litig.*, 2015 WL 13735423, at \*5 (N.D. Ill. Sep. 4, 2015) ("Antitrust claims are arbitrable."); *Cindy's Candle Co. v. WNS, Inc.*, 714 F. Supp. 973, 978 (N.D. Ill. 1989) ("[T]he Seventh Circuit has since discovered that the soil which nourished the

13

principle of non-arbitrability of antitrust claims no longer supports the number of doctrines which it once declared grew there.").

In this case, the Arbitration Provisions encompass Zillow's claims. The Arbitration Provisions cover "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof[.]" *See* IDX Agreement § XII(c); VOW Agreement § XII(c). Zillow's antitrust allegations stem from Zillow's breach of its License Agreements and Zillow's claims that MRED's right to enforce Zillow's obligations under the License Agreements to display MRED's listing data consistent with MRED's "Revised Rules" constitute an unlawful conspiracy under Section 1 of the Sherman Act and unlawful monopolization under Section 2. *See* Compl. ¶¶ 97-106, 110-111, 188, 190. Specifically, Zillow alleges that MRED's "agreement operates as a group boycott to deprive Zillow of a crucial input—listings data—for competing in the market ***by terminating Zillow's access to MRED's Listing Feed***" and that "[u]nder MRED's Revised Rules, Zillow will lose access to MRED's Listing Feed if it enforces [its] Standards." *Id.* ¶¶ 178, 191 (emphasis added). Each of Zillow's claims "touch on [MRED's] contract rights or contract performance" under the License Agreements, as well as Zillow's breaches of those Agreements, bringing them within the ambit of the Arbitration Provisions. *Rummel Klepper*, 2022 WL 29831, at *11 (internal quotation marks and citation omitted).[3]

Accordingly, because the License Agreements are valid and enforceable agreements to arbitration and Zillow's claims are encompassed by the parties' broad Arbitration Provisions, the Motion should be granted, and Zillow's antitrust claims against MRED should be referred to arbitration, consistent with the arbitration clause.

---

[3] To the extent to which there is any doubt whether Zillow's claims are arbitrable, this Court should refer arbitrability decisions to the arbitrator. *See James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80 (Del. 2006) ("As a matter of policy, we adopt the majority federal view that reference to the AAA rules evidences a clear and unmistakable intent to submit arbitrability issues to an arbitrator.").

14

**B.      This Action Should Be Stayed Pending Arbitration**

The FAA provides that a court, upon determination that an action before it is subject to an enforceable arbitration provision, "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *Jennings*, 2025 WL 461433, at *12 ("the FAA requires the Court to issue a stay 'on application of one of the parties' when" "'the issue[s] involved in [this] suit ... [are] referable to arbitration'") (citations omitted); *Short v. MV Transp.*, 2025 WL 3641951, at *1 (N.D. Ill. Dec. 16, 2025) (same). *Cf. Thompson v. Army & Air Force Exch. Serv.*, 125 F.4th 831, 835 (7th Cir. 2025) ("'Shall' connotes a requirement.") (citing *Spizzirri*, 601 U.S. at 476). Because Zillow must arbitrate its claims against MRED, the action should be stayed pending completion of arbitration.

**V.      CONCLUSION**

For these reasons, MRED respectfully requests that the Court grant this Motion, compel arbitration of Zillow's claims, and stay this action pending completion of the arbitration proceedings.

Dated:  May 19, 2026

Respectfully Submitted,
/s/ *Stephen D. Libowsky*
Stephen D. Libowsky
MANATT, PHELPS & PHILLIPS, LLP
151 N. Franklin St. (Suite 2600)
Chicago, IL 60606
(312) 477-4798
slibowsky@manatt.com
Attorney No. 6187081

*Attorneys for Defendant*
*Midwest Real Estate Data, LLC*

15

<u>**CERTIFICATE OF SERVICE**</u>

   I, Stephen D. Libowsky, of the law firm of Manatt, Phelps & Phillips, LLP, certify that I have filed the foregoing **DEFENDANT MIDWEST REAL ESTATE DATA LLC'S MOTION TO COMPEL ARBITRATION AND STAY ACTION** with the Northern District of Illinois Court via the Court's CM/ECF notification system, which will send notification of such filing by electronic service to counsel of record as follows:

**Beau William Buffier**
Wilson Sonsini Goodrich & Rosati
31 West 52nd Street, Fifth Floor
New York, NY 10019
bbuffier@wsgr.com

**Bonnie Lau**
Wilson Sonsini Goodrich & Rosati
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
blau@wsgr.com

**Nicholas Sidney**
Wilson Sonsini Goodrich & Rosati
701 Fifth Ave., Suite 5100
Seattle, WA 98104
nsidney@wsgr.com

**Brian Joseph Smith**
Wilson Sonsini Goodrich & Rosati
1700 K St. NW, Fifth Floor
Washington, DC 20006
brian.smith@wsgr.com

*Attorneys for Plaintiffs*

Dated: May 19, 2026

                */s/ Stephen D. Libowsky*

16