**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ZILLOW GROUP, INC. and ZILLOW, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> MIDWEST REAL ESTATE DATA LLC, COMPASS, INC., and COMPASS ILLINOIS, INC., <br><br> *Defendants*. | Case No. 1:26-cv-05451 <br><br> Judge: Hon. John J. Tharp, Jr. |

**<u>PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

Plaintiffs Zillow Group, Inc. and Zillow, Inc. ("Zillow") respectfully submit this Motion for Temporary Restraining Order ("TRO") against Defendants Midwest Real Estate Data LLC ("MRED"), Compass, Inc. (d/b/a Compass International Holdings), and Compass Illinois, Inc. (together "Compass") (all collectively, "Defendants").

## I. INTRODUCTION

Yesterday morning, MRED—the monopolist multiple listing service in Chicagoland—made the dramatic and unprecedented decision to terminate Zillow's longstanding access to data feeds of over 30,000 residential real estate listings in Chicagoland ("MRED Listing Feeds"). Supplemental Declaration of Errol Samuelson ("ES Supp.") ¶6, Ex. BB. MRED did so in service of an illegal conspiracy with Compass, Zillow's and MRED's mutual competitor, to protect nine Compass private listings in Florida, Georgia, and California (well outside MRED's historical territory) from Zillow's pro-transparency Listing Access Standards ("Standards") that Zillow has implemented without issue in those regions for nearly a year. MRED cutting Zillow's feed to protect Compass private listings on the other side of the country benefits no one in Chicagoland—not agents, buyers, or sellers—and not even MRED's member Chicagoland brokerages. Panicked Chicagoland agents have rushed to the phone lines to ask Zillow when MRED will restore their listings and explain the immediate harms to their independent businesses. ES Supp. ¶¶12-13.

At its core, Defendants' anticompetitive conspiracy leverages MRED's monopoly power over residential real estate listings in Chicagoland to coerce Zillow into (1) promoting Defendants' nationwide private listings against Zillow's will, and (2) abandoning a key competitive lever Zillow uses to maintain its supply of listings. This conduct threatens to shut Zillow out of the Chicagoland real estate markets. Yesterday, that threat came to pass. In the face of Zillow's Complaint (Dkt. 1) and Motion for Preliminary Injunction (Dkt. 21, "PI Motion"), Defendants chose to accelerate their conspiracy, pressing forward with the very conduct that Zillow seeks to

1

enjoin. As a result, Zillow has now been dispossessed of the critical real estate listings input on which its platform and business depend, and it is effectively foreclosed from competing with Compass and MRED in Chicagoland.

There is no way to quantify the monumental and irreparable harms that Defendants' listings blackout already has begun to inflict on Zillow's business in the region, to agents, to the public, and to the market, and particularly to the nascent Zillow Preview offering. To stop those harms, prevent further injury, and restore the status quo, Zillow seeks a TRO to reinstate Zillow's longstanding access to MRED Listing Feeds until Zillow's PI Motion can be decided.[1]

## II.    BACKGROUND

Less than forty-eight hours after Zillow filed its PI Motion, MRED terminated Zillow's access to MRED Listing Feeds early the morning of May 20, 2026. ES Supp. ¶6. As a result, over 30,000 residential real estate listings in Chicagoland that were displayed for free on Zillow platforms just yesterday are no longer accessible to Zillow or its millions of users. *Id.* ¶8.

Zillow provided a detailed accounting of the factual basis for its antitrust claims and of Defendants' unlawful conduct in its PI Motion and supporting materials, all of which Zillow incorporates by reference. *See* PI Motion at 2-6.

---

[1]    On May 19, 2026, MRED filed a motion on behalf of only itself to compel Zillow's conspiracy and monopolization claims to arbitration. Dkt. 30. Although Zillow disagrees that its claims should be arbitrated, the Court need not delve into those issues to decide Zillow's TRO or PI Motion. *See, e.g.*, *Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1141 (7th Cir. 1994) (district court may grant preliminary injunctive relief in the face of arbitration); *Popovich v. McDonald's Corp.*, 189 F. Supp. 2d 772, 775-76 (N.D. Ill. 2002) ("Even when a claim filed in court is subject to arbitration, a court retains the authority to enter a preliminary injunction to preserve the *status quo ante* and prevent irreparable harm pending a decision by the arbitration panel."); *OptionsCity Software, Inc. v. Baumann*, 2015 WL 3855622, at *2 (N.D. Ill. June 19, 2015) (arbitration clause "does not preclude [the court] from granting preliminary injunctive relief"); *Wilbert Funeral Servs., Inc. v. Wilbert of Birmingham, LLC*, 2009 WL 3617532, at *9-10 (N.D. Ill. Oct. 29, 2009) (similar). Indeed, MRED's bid to suspend evaluation of its antitrust violations while it joins with Compass to force Zillow out of the market only underscores the need for interim relief.

2

As relevant for this TRO, MRED and its partner MLS Grid recently complained about Zillow's implementation of the Standards, under which Zillow decided to not display nine Compass private listings located in Florida, Georgia, and California, ES ¶¶76-78, Exs. W, X, where Zillow has consistently been applying its Standards for nearly a year, *id.* ¶37. MRED's territory has not extended beyond Illinois and certain bordering areas for at least the last eleven years. Declaration of Bonnie Lau (Dkt. 22, "BL"), Ex. D at 2. For example, one of the listings MRED now wields as pretext to cut off Zillow's MRED Listing Feeds access is a nearly $2 million home listed by a Compass agent in Boca Raton, Florida.[2] This home was flagged as a formerly private listing, and based on Zillow's Standards implemented in Florida since June 2025, was not displayed on Zillow. ES ¶78, Ex. X. After the home did not sell privately, it was listed on April 25, 2026 on BeachesMLS, a multiple listing service that serves South Florida. *Id.*[3] Then, only two days after Compass and MRED announced an alliance by which MRED would "protect" Compass's formerly private listings, PI Motion at 4-5, the Boca Raton property was redundantly listed on MRED on April 26, 2026. For this Florida private listing and the other Compass listings at issue, MRED appears to offer no service to its Chicagoland member agents. MRED's support for these listings benefits only Compass. *Id.* at 5. On May 6, MLS Grid threatened "suspension of [Zillow's] access to MLS data" based on Zillow's failure to display this Florida listing and other private listings. ES, Ex. X at 2.

Early yesterday morning, MRED made good on its threats and suspended Zillow's access to all MRED Listing Feeds, cut off every Chicagoland broker's access to Zillow's audience, and

---

[2] Redfin, https://www.redfin.com/FL/Boca-Raton/3010-Hampton-Cir-33434/home/42309723 (last visited May 18, 2026).

[3] *BeachesMLS is the Backbone of Real Estate in South Florida*, BeachesMLS, https://rworld.com/value-of-beachesmls (last visited May 17, 2026).

demanded that Zillow remove all MRED listing information from Zillow's platforms. ES Supp. ¶6, Ex. BB. As of the time of filing, Zillow remains cut off from the MRED Listing Feeds—the single most essential input for Zillow's business in Chicagoland. ES Supp. ¶10.

Since MRED announced its intention to cut off Zillow's feed, Zillow has received numerous calls per day from Chicagoland agents. *Id.* ¶12. For example, one agent explained, "[i]f MRED cuts Zillow off, that means we [agents] have no business model . . . the lifeblood of Zillow is listings." *Id*. ¶13.

Industry commentators have expressed shock at the lengths MRED has taken to protect Compass's private listings far outside of Chicagoland. One prominent real estate source described MRED's decision as "nuclear."[4] Another industry source noted it is already clear to the public that MRED's conduct will prevent homebuyers from "see[ing] all Chicago-area homes for sale" and will prevent sellers from "rely[ing] on those sites to get their listing in front of buyers."[5] The Wall Street Journal called MRED's termination an "extreme response[]" that is "likely to confuse home sellers in the region who expect to see their listings on Zillow and buyers who are using Zillow in their housing search."[6]

As described in Zillow's PI Motion, Defendants were planning to leverage MRED's monopoly power—where Defendants have used their stranglehold over the Chicagoland market to prevent Zillow from implementing the Standards—as a cudgel to coerce Zillow into abandoning

---

[4] *Chicago MLS goes nuclear: MRED plans to sever Zillow feed,* The Real Deal (May 18, 2026), *available at* https://therealdeal.com/chicago/2026/05/18/mred-plans-to-cut-zillows-chicago-listing-feed/.

[5] *Chicago-area homes for sale may disappear from Zillow*, Axios (May 20, 2026), *available at* https://www.axios.com/local/chicago/2026/05/20/chicago-homes-zillow-mred-listings-cutoff-compass-private-listings.

[6] *Thousands of Chicago Home Listings Just Disappeared Off Zillow*, Wall St. J. (May 20, 2026), *available at* https://www.wsj.com/real-estate/thousands-of-chicago-home-sellers-just-lost-their-zillow-listings-ce78c6aa

its Standards outside of Chicagoland. Defendants have now executed their plan, and Zillow's harm has moved from imminent to irreparable. So too for the public: Chicagoland buyers and sellers today have significantly less access to the housing market than they had two days ago.

## III.    ARGUMENT

To obtain a temporary restraining order or preliminary injunction, Zillow must show that "it is likely to succeed on the merits of its suit, it is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in its favor, and [a TRO] is in the public interest." *United States v. Town of Thornapple*, 143 F.4th 793, 797 (7th Cir. 2025). Because "[t]he standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions," *Int'l Profit Assocs., Inc. v. Paisola*, 461 F. Supp. 2d 672, 675-76 (N.D. Ill. 2006), Zillow incorporates by reference all of the arguments advanced in its PI Motion. PI Motion at 6-15. Defendants' termination of the MRED Listing Feeds compounds the very harms alleged, further validating Zillow's arguments.

***Irreparable Harm.*** The irreparable harm that Zillow feared when it filed its PI Motion is no longer just imminent but actual: Defendants have followed through on their concerted threats to terminate a competitor's access to a critical business input—the 98% of residential for-sale real estate listings in Chicagoland that are controlled by MRED. Declaration of Lawrence Wu (Dkt. 26, "LW") ¶¶105, 121. The termination of MRED Listing Feeds immediately and vastly decreases the quality and quantity of listings on Zillow's website. ES Supp. ¶¶8-9. This reduces viewership and impairs products that depend on broad sharing of listings, eroding consumer trust in Zillow's platform and causing an immense but indeterminate amount of lost business. PI Motion at 13; ES ¶¶85-87.

Over the last day, Compass has seized on Zillow's loss of listings to advertise the competitive advantage it has unfairly secured through the conspiracy. *See* Supplemental

Declaration of Bonnie Lau ("BL Supp.") ¶¶ 3-6, Exs. F-I. Indeed, Compass CEO Robert Reffkin has touted on social media that "Zillow's missing the majority of listings in Chicago" and displayed a direct side-by-side comparison of Zillow's platform to Compass's. *See id*., Ex. F. Absent an injunction to restore the status quo, Zillow will be irreparably harmed by Compass's active, ongoing exploitation of the conspiracy to advantage itself in competition between Zillow and Compass. "[I]t is difficult to quantify the loss of competitive position." *Applied Sys., Inc. v. PBC Consulting Inc.*, 2026 WL 381866, at *6 (N.D. Ill. Feb. 11, 2026) (citation omitted) (finding plaintiff's "lost [] competitive advantage" coupled with "ongoing competition" from direct competitor was "sufficient … to show irreparable harm"); *see BrightStar Franchising, LLC v. Foreside Mgmt. Co.*, 808 F. Supp. 3d 870, 888–89 (N.D. Ill. 2025) (finding irreparable harm where a competitor was placed "at a serious competitive disadvantage" due to defendant's wrongful conduct).

Zillow Preview is especially vulnerable. ES ¶¶83-84. It is a nascent product competing against Defendants in a market with network effects, and without the MRED Listing Feeds it could suffer a negative spiral in Chicagoland in which reduced listings on Zillow depress the audience for Zillow Preview, discouraging brokerages from signing up for Zillow Preview and limiting its audience even further. *Id.*; LW ¶¶158-59. The impact of degrading Zillow's platform in Chicagoland and crippling Zillow Preview so close to its launch is incalculable, and "it is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'" *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (citation omitted). The attendant "loss of goodwill and reputation" is irreparable on its own, *id.*, and could be enough to drive Zillow Preview out of business in Chicagoland, LW ¶¶155-65. *See Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) ("Where the availability of a product

6

is essential to the life of the business or increases business of the plaintiff beyond sales of that product . . . [preliminary] injunctive relief is appropriate"); *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) ("[T]he threat of being driven out of business is sufficient to establish irreparable harm."). The termination is also likely to harm Chicagoland agents directly, who have expressed concern to Zillow that the disruption will negatively impact their ability to sell homes and reach consumers. ES Supp. ¶12.

As of now, Zillow has no reasonable alternative to MRED for all listings in Chicagoland. Compiling a complete, alternate database of Chicagoland listing feeds from the thousands of individual brokerages while waiting for the PI Motion to be decided "would undoubtedly require a considerable amount of time and expense," thus warranting injunctive relief. *hiQ Labs*, 31 F.4th at 1189 (affirming preliminary injunction against LinkedIn for shutting off access to its database of users critical to hiQ's business). But even that alternative has been foreclosed by Defendants' conspiracy. Compass and all of its affiliates have terminated Zillow's access to 28% of Chicagoland listings pursuant to the conspiracy. PI Motion at 4; ES ¶¶61-73; LW ¶18. Compass has even instructed its agents they may not independently provide listings to Zillow. ES Supp. ¶9. For its part, MRED has warned its member brokerages about extending a direct listing feed to Zillow. PI Motion at 4; ES ¶68. Thus, despite its best efforts, Zillow only has ready access to less than half of the listings in the Chicagoland region, not nearly enough for Zillow to effectively compete. ES Supp. ¶8. *See Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 680 (7th Cir. 2012) (finding sufficient evidence of irreparable harm where the policy at issue "would be a significant change to its business model and . . . would negatively affect its revenue, possibly even to a considerable extent").

*Likelihood of Success.* MRED's termination yesterday resolved any possible doubt remaining in Zillow's PI Motion that: Defendants have the power to exclude competition and have done so; they have exercised their market power to execute a group boycott of Zillow; and they have unreasonably restrained trade, all in violation of the antitrust laws. Although MRED's territory has historically been Chicagoland and the Midwest, MRED made it clear that its decision to terminate Zillow's feed was predicated on Zillow's implementation of its Standards well outside MRED's territory—in Florida, Georgia, and California—which Zillow has been doing for the better part of a year. ES ¶¶37, 77, Ex. X; ES Supp., Ex. AA. As a result, tens of thousands of MRED members have effectively lost access to Zillow as a way to help their clients buy or sell their home or to find potential clients, solely to benefit a handful of Compass private listings across the country from Chicagoland. MRED's conspiracy with Compass has come into sharp relief, and it is evident the conspiracy does not serve the "economic self-interest" of either Defendants or the vast majority of MRED's non-Compass, Chicagoland members. *See* PI Motion at 8.

*Public Interest.* Two days ago, tens of thousands of for-sale home listings were freely available to Zillow's millions of users, helping real estate agents connect with prospective clients, buyers locate their dream homes, and sellers attract the widest possible pool of prospective buyers. Yesterday, consumers across Chicagoland lost a beloved home listing platform, lost access to thousands of those listings on Zillow, and suffered harm caused by Defendants' conspiracy, against the backdrop of a housing affordability crisis exacerbated by inventory shortages. And all market participants are harmed by the loss of Zillow Preview as a viable new pro-transparency competitor to Defendants' exclusionary private listing networks. In short, MRED's decision to protect nine Compass private listings in Florida, Georgia, and California at the expense of over 30,000 Chicagoland listings on Zillow has caused harm to Chicagoland agents, buyers, and sellers—

including the Compass agents and sellers whose listings complied with the Standards and are no longer displayed on Zillow. *See* PI Motion at 15.

***Balance of Hardships.*** Defendants stand to lose nothing should the Court grant the TRO, which would reinstate the years-long public display of Defendants' listings on Zillow to the benefit of Defendants' own customers and brokerages. Indeed, nothing about Zillow's practices changed in the days leading up to Defendants' termination. Zillow has been enforcing its Standards in Georgia, Florida, and California for close to a year. ES ¶37. The only thing that has changed is that Defendants followed through on their threats to invoke MRED's monopoly power in Chicagoland to strongarm Zillow into abandoning its Standards outside of Chicagoland by cutting off the MRED Listing Feeds, and yesterday, Defendants executed the decisive step of their conspiracy. ES Supp. ¶6.

## IV.     CONCLUSION

For the foregoing reasons, Zillow respectfully requests that this Court grant the instant Motion and enter a temporary restraining order (1) immediately reinstating Zillow's access to the MRED Listing Feeds and (2) enjoining Defendants from taking any steps in furtherance of their group boycott conspiracy to terminate, block, limit or restrain listings supply to Zillow on the basis of Zillow's application of the Standards (i) to listings anywhere in the country, or in the alternative, (ii) to listings outside of Chicagoland.

Dated: May 21, 2026

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/ *Bonnie Lau*
Bonnie Lau (admitted *pro hac vice*)
One Market Plaza, Spear Tower, Suite 3300

9

San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: blau@wsgr.com

Brian J. Smith (IL Bar No. 6321543)
1700 K Street NW, Fifth Floor
Washington, DC 20006
Telephone: (202) 973-8800
Facsimile: (866) 974-7329
Email: brian.smith@wsgr.com
*Admitted to practice only in Illinois and Maine*

Beau W. Buffier (admitted *pro hac vice*)
31 West 52nd Street, Fifth Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: bbuffier@wsgr.com

Nicholas R. Sidney (admitted *pro hac vice*)
701 Fifth Avenue, Suite 5100
Seattle, WA 98104
Telephone: (206) 883-2500
Facsimile: (866) 974-7329
Email: nsidney@wsgr.com

*Attorneys for Plaintiffs Zillow Group, Inc. and Zillow, Inc.*

10