# EXHIBIT F

Revised 3/20/2026

 

# Rules and Regulations

# Midwest Real Estate Data

## MRED Quick Reference Guide

| | |
|---|---|
| **TRAINING REGISTRATION** | **630-955-2755** |
| **HELP DESK** | **630-955-2755** |

**HELP DESK HOURS:  M-F 8:00 AM – 6:00 PM, Sat:  9:00AM – 3:00PM**

**VISIT US AT MREDLLC.COM FOR TRAINING REGISTRATION, FORMS AND MORE…**

2443 WARRENVILLE RD, SUITE 600   LISLE, ILLINOIS 60532   T  630-955-0011   F  630-955-0353  MREDLLC.COM

1

**Rules and Regulations**

| | | |
|---|---|---|
| **SECTION 1: LISTING PROCEDURES** | | **6** |
| | | |
| **SECTION 1:  LISTING PROCEDURES** | | **6** |
| SECTION 1(A):  PARTICIPATION | | 7 |
| SECTION 1(B)      REQUIRED CONSUMER DISCLOSURE | | 8 |
| SECTION 1(C)      WRITTEN BUYER AGREEMENTS | | 8 |
| SECTION 1(D)      SERVICES ADVERTISED AS FREE | | 9 |
| SECTION 1(E):  EXCLUSIVE BROKERAGE AGREEMENTS | | 9 |
| SECTION 1(F):  AUCTION LISTINGS AND DETAILS | | 10 |
| SECTION 1(G):  PRIVATE LISTINGS | | 10 |
| SECTION 1.1:      LISTINGS SUBJECT TO RULES AND REGULATIONS | | 10 |
| SECTION 1.2:      LISTING IDENTIFICATION | | 10 |
| SECTION 1.3:      UNAUTHORIZED DISSEMINATION OF PASSWORDS | | 11 |
| SECTION 1.4:      CO-LISTINGS/COURTESY LISTINGS | | 11 |
| SECTION 1.5:      DETAIL ON LISTINGS FILED WITH THE SERVICE | | 11 |
| SECTION 1.5.1:  BROKER PRIVATE REMARKS | | 11 |
| SECTION 1.6:      EXEMPTED LISTINGS | | 11 |
| SECTION 1.7:      CHANGE OF STATUS OF LISTING | | 11 |
| SECTION 1.8:      REMOVAL OF LISTING PRIOR TO EXPIRATION | | 11 |
| SECTION 1.9:      LISTING MULTIPLE UNIT PROPERTIES | | 11 |
| SECTION 1.10:  NO CONTROL OF COMMISSION RATES OR FEES CHARGED BY PARTICIPANTS | | 12 |
| SECTION 1.11:    EXPIRATION, EXTENSION, AND RENEWAL OF LISTINGS | | 12 |
| SECTION 1.11.1  NON-FILTERING OF LISTINGS | | 12 |
| SECTION 1.12:  TERMINATION DATES ON LISTINGS | | 12 |
| SECTION 1.13:    JURISDICTION | | 12 |
| SECTION 1.14:    LISTINGS OF SUSPENDED PARTICIPANTS | | 12 |
| SECTION 1.15:    LISTINGS OF EXPELLED PARTICIPANTS | | 12 |
| SECTION 1.16:    LISTINGS OF RESIGNED PARTICIPANTS | | 12 |
| SECTION 1.17:  LISTINGS OF "OVER-55" PROPERTIES | | 12 |
| | | |
| **SECTION 2: SELLING PROCEDURES** | | **13** |
| | | |
| **SECTION 2:  SHOWINGS AND NEGOTIATIONS** | | **13** |
| SECTION 2.1:  PRESENTATION OF OFFERS | | 13 |
| SECTION 2.2:  SUBMISSION OF OFFERS | | 13 |
| SECTION 2.3:  RIGHT OF COOPERATING BROKER IN PRESENTATION OF OFFER | | 13 |
| SECTION 2.4:  RIGHT OF LISTING BROKER IN PRESENTATION OF COUNTEROFFER | | 13 |
| SECTION 2.5:  REPORTING STATUS OF LISTING | | 13 |
| SECTION 2.6:  REPORTING RESOLUTIONS OF CONTINGENCIES | | 14 |
| SECTION 2.7:  REPORTING CANCELLATION OF PENDING SALE | | 14 |
| SECTION 2.8:  BROKER RECIPROCITY/IDX AND ADVERTISING OF LISTINGS | | 14 |
| SECTION 2.9:  ASSOCIATION/BOARD PROTOCOL | | 14 |
| | | |
| **SECTION 3: REFUSAL TO SELL** | | **14** |
| | | |
| **SECTION 3:  REFUSAL TO SELL** | | **14** |
| | | |
| **SECTION 4: PROHIBITIONS** | | **14** |
| | | |
| **SECTION 4:  INFORMATION FOR PARTICIPANTS ONLY** | | **14** |

**Rules and Regulations**

SECTION 4.1: "FOR SALE" SIGNS — 15
SECTION 4.2: "SOLD" SIGNS — 15
SECTION 4.3: SOLICITATION OF LISTING PLACED INTO THE SERVICE — 15
SECTION 4.4: STANDARD OF PRACTICE — 15

## SECTION 5: NO COMPENSATION SPECIFIED ON MLS LISTINGS — 15

SECTION 5: NO COMPENSATION SPECIFIED ON MLS LISTINGS — 15
SECTION 5.1: PARTICIPANTS AS PRINCIPALS — 15
SECTION 5.2: PARTICIPANTS AS PURCHASERS — 15

## SECTION 6: SERVICE FEES AND CHARGES — 16

SECTION 6: SERVICE FEES — 16
SECTION 6.1.1: PHOTOGRAPHS — 16
SECTION 6.1.2: PHOTOGRAPHY CONTRACTORS — 17
SECTION 6.1.3: BRANDING OF CLIENT-VIEWABLE INFORMATION — 17
SECTION 6.2: PHOTOGRAPHY AND VIRTUAL STAGING — 17
SECTION 6.2.1 DEFINITION OF VIRTUAL STAGING — 17
SECTION 6.2.2 VIRTUAL STAGING PROHIBITIONS — 17
SECTION 6.2.2.1 VIRTUAL STAGING PROHIBITED INCLUSIONS — 17
SECTION 6.2.2.2 VIRTUAL STAGING PROHIBITED EXCLUSIONS — 17
SECTION 6.2.3 PERMITTED USES OF VIRTUAL STAGING IN THE SERVICE — 17
SECTION 6.2.3.1 PERMITTED VIRTUAL STAGING AND LISTINGS OF PROPERTIES NOT FULLY CONSTRUCTE — 17

## SECTION 7: COMPLIANCE WITH RULES — 17

SECTION 7: COMPLIANCE WITH RULES — 17
SECTION 7.1: APPLICABILITY OF RULES — 18

## SECTIONS 8-22: FINES — 18

SECTION 8: FINE SYSTEM AND PROCEDURE — 18
SECTION 9: FINES — 18
SECTION 9.1: MINIMUM STANDARDS FOR ASSOCIATION/BOARDS — 18
SECTION 9.2: VIOLATIONS OF THESE RULES AND REGULATIONS — 18
SECTION 9.3: SUBMISSION OF NEW LISTINGS — 18
SECTION 9.4: REPORTING CHANGES OF STATUS AND CONTINGENCIES — 18
SECTION 9.4.1: REPORTING CLOSED (SOLD) — 19
SECTION 9.5: REPORTING PRICE CHANGES — 19
SECTION 9.6: REMOVAL FOR FAILURE TO MEET MINIMUM STANDARDS — 19
SECTION 9.7: UNAUTHORIZED DISSEMINATION OF SYSTEM ACCESS PASSWORD — 19
SECTION 9.7.1: PARTICIPATION — 19
SECTION 9.7.2: INTERRUPTION OF ACCESS TO SYSTEM — 19
SECTION 9.8: E-MAIL/USE OF THE TERM "MRED" — 19
SECTION 9.9: REPORTING STATUS CHANGES — 19
SECTION 9.10: REPORTING REQUIRED FIELDS — 20
SECTION 9.10.1: NO DIRECTION TO CONTACT SELLER ON OFFERS — 20
SECTION 9.11: PROVIDING REQUESTED DOCUMENTATION — 20
SECTION 9.12: ENTERING A LISTING WITHOUT AN EXCLUSIVE BROKERAGE AGREEMENT — 20
SECTION 9.13: REPORTING OF CLOSED TRANSACTIONS BY NON-LISTING BROKER — 20
SECTION 9.14: REPEATED PATTERNS OF DATA MISREPRESENTATION — 20

© MRED LLC All Rights Reserved Revised 3/20/2026

**Rules and Regulations**

SECTION 9.15:   DELIVERY OF BROKER ONLY INFORMATION                                    20
SECTION 9.16:   DISPUTE RESOLUTION AND ARBITRATION ROUTING                             20
**SECTION 10:   ACTION**                                                              **21**
**SECTION 11:   DIVISION OF FINES**                                                   **21**
**SECTION 12:   COMPLAINTS OF UNETHICAL CONDUCT**                                     **22**
**SECTION 13:   APPEALS COMMITTEE**                                                   **22**
**SECTION 14:   FORMS**                                                               **22**
**SECTION 15:   INITIATION OF APPEAL**                                                **22**
**SECTION 16:   FAILURE TO APPEAL A FINE OR CORRECT AN ENTRY AFTER A FINE**           **22**
**SECTION 17:   APPEAL HEARING PANELS**                                               **22**
**SECTION 18:   REQUESTS FOR DOCUMENTS**                                              **22**
**SECTION 19:   CONTINUANCES**                                                        **22**
**SECTION 20:   ATTENDANCE AT APPEAL HEARINGS**                                       **22**
**SECTION 21:   APPEAL TO BOARD OF MANAGERS**                                         **22**
**SECTION 22:   APPEAL HEARING PROCEDURES**                                           **23**

**SECTIONS 23-25:   CONFIDENTIALITY OF MRED INFORMATION**                             **23**

**SECTION 23:   CONFIDENTIALITY OF MRED INFORMATION**                                 **23**
**SECTION 24:   SERVICE NOT RESPONSIBLE FOR ACCURACY OF INFORMATION**                 **23**
**SECTION 25:   ACCESS TO COMPARABLE AND STATISTICAL INFORMATION**                    **23**

**SECTION 26: COPYRIGHT**                                                             **23**

**SECTION 26:   OWNERSHIP OF SERVICE COMPILATION AND COPYRIGHTS**                     **23**
SECTION 26.1:MRED DIGITAL MILLENNIUM COPYRIGHT ACT (DCMA) POLICY                       23
**SECTION 27:   USE OF INFORMATION**                                                  **24**
**SECTION 28:   DISPLAY**                                                             **24**
**SECTION 29:   REPRODUCTION**                                                        **24**
SECTION 29.1:SHARING OF MLS ID                                                         25

**SECTION 30:   USE OF SERVICE INFORMATION**                                          **25**

**SECTION 30:   LIMITATIONS ON USE OF SERVICE INFORMATION**                           **25**

**SECTION 31:   BROKER RECIPROCITY / IDX**                                            **25**

**SECTION 32:   USE OF TERMS**                                                        **25**

**SECTION 32.1:   USE OF TERMS**                                                      **25**
**SECTION 32.2:   GRANDFATHERING COMPANY NAMES**                  ERROR! BOOKMARK NOT DEFINED.
**SECTION 32.3:   RULE VIOLATION PENALTIES**                                          **26**

**SECTION 33: VOW RULES**                                                             **26**

**SECTION 34: MOBILE AND ELECTRONIC DISPLAY DEVICES**                                 **26**

**SECTION 34:1:   DEFINITIONS**                                                       **26**
**SECTION 34.2:   TRANSMISSION OF LISTING CONTENT**                                   **26**

© MRED LLC All Rights Reserved              Revised 3/20/2026

**Rules and Regulations**

**SECTION 35: USE OF CONTACT INFORMATION POLICY**     **27**

**SECTION 35.1: DEFINITION OF APPROPRIATE/INAPPROPRIATE USE**     **27**
**SECTION 35.2: REMEDY**     **27**

**SECTION 36 ACCESS TO OTHER MLS'**     **27**

**SECTION 36.1 ACCESS TO LISTING DATA IN OTHER MLS'**     **27**
**SECTION 36.1.2 NO INPUT OR IDX/BROKER RECIPROCITY**     **27**
**SECTION 36.2 APPLICATION OF OTHER MLS RULES**     **27**
**SECTION 36.3 DISCLAIMER OF WARRANTIES**     **28**
**SECTION 36.4 SAVED INFORMATION**     **28**

**APPENDIX A: SANCTIONS**     **29**

**INTERNAL REMEDIES FOR SERVICE RULES VIOLATIONS**     **29**
**JUDICIAL REMEDIES FOR DATA MISAPPROPRIATION AND COPYRIGHT INFRINGEMENT**     **29**

**APPENDIX B: SELLER OPT-OUT FORM**     **30**

**APPENDIX C: SYSTEM ACCESS POLICY**     **31**
**APPENDIX D: USER PRIVILEGES POLICY**     **32**

**APPENDIX E: POLICY ON THE USE OF CONTACT INFORMATION OBTAINED FROM MRED SYSTEMS**     **33**

**APPENDIX F: CODE OF CONDUCT POLICY**     **34**

**Rules and Regulations**

© MRED LLC All Rights Reserved      Revised 3/20/2026

**DEFINITIONS:**

**For purposes of these Rules and Regulations, the following terms shall have the meanings set forth below. Unless the context otherwise requires, these definitions apply throughout the Rules and Regulations, appendices, and policies adopted by the Service.**

**System Access**

- **User of the Service: Participants, Subscribers, MLS Entities, International Real Estate Entities, and any other persons or entities granted access to the Service or its data pursuant to these Rules and Regulations or any agreement with the Service.**

- **Access Granting Entity: The REALTOR® association, MLS entity, International Real Estate Entity, or other organization through which a Participant, Subscriber, or other authorized user obtains access to the Service.**

- **MLS Entity**

- **International Real Estate Entity**

- **Contract for Service Agreement (CSA)**

**System Terms**

# SECTION 1: LISTING PROCEDURES
### SECTION 1: LISTING PROCEDURES

Midwest Real Estate Data accepts listings of real properties, which are listed by a licensed real estate broker and are located within the combined territorial jurisdiction of the Associations/Boards that Midwest Real Estate Data provides services to, and in the State of Illinois and beyond this jurisdiction at the option of the Listing Broker, which shall be placed into Midwest Real Estate Data's MLS Listing Network(hereinafter referred to as the "Service") within 48 hours of the effective listing date or within 24 hours after the real estate broker advertises the real property to the general public, whichever is earlier, through a publicly accessible website or utilizes any publicly accessible print advertisements, including but not limited to for sale signs, brochures, flyers, postcards or other publicly distributed print or digital marketing materials.

Accepted property types are:

| | |
|---|---|
| Property Type 1: | Detached Single Family - Detached Dwelling Unit with a Real Estate Tax Identification Number (PIN) |
| Property Type 2: | Attached Single Family - Attached Dwelling Unit with a Real Estate Tax Identification Number (PIN) |
| Property Type 3: | 2-4 Units - 2-4 Dwelling Units with a Real Estate Tax Identification Number (PIN) |
| Property Type 4: | Mobile Home - Any Dwelling Unit or Mobile Home with a Vehicle Identification Number (VIN). Note: If the dwelling unit is to be transferred with real estate, the Real Estate Tax Identification Number (PIN) shall be included on the listing input sheet |
| Property Type 5: | Vacant Land - Vacant (including residential tear- downs)/Farms (including farm buildings and commercial) |
| Property Type 6: | Residential Rental Unit - Residential Dwelling Unit Available for Rent/Lease |
| Property Type 7: | Deeded Parking Spaces/Boat Slip**s** |
| Property Type 8: | International Property Listing |
| Property Type 11: | Commercial-Multi-Family - 5+ Units |
| Property Type 12: | Commercial – Office/Tech |
| Property Type 13: | Commercial –Business only or with Real Estate Estate/Confidential Listings |
| Property Type 14: | Commercial – Retail/Stores |
| Property Type 15: | Commercial Mixed Use |
| Property Type 16: | Commercial –Institutional and/or To Develop |
| Property Type 17: | Commercial –Industrial |

See Section 1(e) for details on Exclusive Brokerage Agreements

**SECTION 1(a):    PARTICIPATION**

Any member of an Association/Board that Midwest Real Estate Data LLC ("MRED") provides services pursuant to a Contract for Services Agreement ("CSA"), whether a REALTOR® or a non-REALTOR member, who is a principal, partner, corporate officer, or branch office manager acting on behalf of a principal, without further qualification except as otherwise stipulated in these Rules and Regulations, shall be eligible to participate in the Service, except as otherwise provided in these Rules and Regulations.

In addition, MRED may provide access to the Service:

(i) to a Multiple Listing Service entity ("MLS Entity") that has entered into an MLS Entity Agreement with MRED, which MLS Entity may provide services to REALTORS®, non-REALTOR real estate professionals, or other authorized users in accordance with its governing documents and applicable law; and

(ii) to an International Real Estate Entity admitted pursuant to an International Entity Agreement approved by MRED.

For purposes of these Rules and Regulations, "International Real Estate Entity" means (i) a membership-based or trade organization formed and operating under the laws of a jurisdiction outside the United States of America whose primary purpose is to support, represent, and advance the interests of real estate professionals within that jurisdiction; or (ii) a real estate company, firm, brokerage, property data service provider, or other legally recognized business entity formed and operating under the laws of a jurisdiction outside the United States of America that is duly licensed, registered, or otherwise legally authorized under applicable foreign law to provide real estate-related brokerage, appraisal, or property data services within that jurisdiction. An International Real Estate Entity must be legally recognized under applicable foreign law and, if structured as a firm, brokerage, or data service company, must maintain compliance with the licensing, registration, or professional standards imposed by the relevant regulatory authority in its jurisdiction.

Except as otherwise determined by MRED in its sole and exclusive discretion, , under no circumstances is any individual or firm, regardless of membership status, entitled to participate in the Service unless they hold a current, valid real estate broker's license, or are licensed or certified by an appropriate state regulatory agency to engage in the appraisal of real property.  Notwithstanding the foregoing, MRED may, at its sole and exclusive discretion, provide certain direct services to individuals or entities that are not licensed real estate brokers, salespersons, or appraisers, provided that such access or services shall not constitute participation in the Service unless otherwise expressly authorized by MRED. Participation by an International Real Estate Entity and its authorized users shall be governed by the applicable International Entity Agreement and applicable foreign law Cooperation is the obligation to share information on listed property and/or to represent buyers or tenants in purchasing or leasing properties of the type listed on the MLS.  Use of information developed by or published by the Service is strictly limited to the activities authorized under a Participant's licensure(s) or certification and unauthorized use(s) are prohibited. A licensed leasing broker shall not engage in any licensed activities other than those permitted by law.  No person working on a 120-day leasing broker permit is eligible to participate in the Service. Further, none of the foregoing is intended to convey "participation" or "membership" or any right of access to information developed by or published by the Service, where access to such information is prohibited by law.

Note: Except as otherwise expressly permitted by MRED in its sole and exclusive discretion, or as provided pursuant to an International Entity Agreement approved by MRED, mere possession of a broker's license is not sufficient to qualify for Service Participation. Rather, the requirement that an individual or firm cooperates means that the Participant actively endeavors during the operation of its real estate business to list real property of the type listed on the Service and/or to represent buyers or tenants in purchasing or leasing properties of the type listed in the MLS.  "Actively" means on a continual and on-going basis during the operation of the Participant's real estate business. The "actively" requirement is not intended to preclude Service participation by a Participant or potential Participant that operates a real estate business on a part time, seasonal, or similarly time-limited basis or that has its business interrupted by periods of relative inactivity occasioned by market conditions. Similarly, the requirement is not intended to deny Service participation to a Participant or potential Participant who has not achieved a minimum number of transactions despite good faith efforts. Nor is it intended to permit the Service to deny participation based on the level of service provided by the Participant or potential Participant as long as the level of service satisfies state law.

This requirement shall be applied in a non-discriminatory manner to all Participants and potential Participants except to the extent participation, access, or services are provided pursuant to an International Entity Agreement or other arrangement expressly authorized by MRED in its sole and exclusive discretion..  This requirement does not permit denial of participation to a Participant or potential Participant that operates a Virtual Office Website ("VOW") (including a VOW that the Participant uses to refer customers to other Participants Notwithstanding the above, licensed, and non-licensed appraisers who subscribe to the Service will have access to the Service with the following privileges: Search Active Database, Search Off-Market Database, Search Tax Records, Area Market Survey Search, Custom Reports, Financial Tools, and Hotsheets.

These Rules and Regulations apply to all Participants, Subscribers, Users of the Service, MLS Entities, International Real Estate Entities, and any other persons or entities granted access to the Service or its data.  Additionally, the foregoing does not prohibit the Service, at its discretion, from categorizing non-principal brokers, sales licensees, licensed and certified appraisers and any other classification of real estate license, however limited in scope, as promulgated from time to time by the Illinois real estate licensing system (i.e., the Department of Financial and Professional Regulation and its divisions),by another state's licensing system, or by an applicable foreign regulatory authority in the case of International Real Estate Entities admitted pursuant to an International Entity Agreement as Users of the Service, provided that any such individual or entity accessing the Service shall be subject to and comply with the MRED Rules and Regulations, policies, and enforcement procedures regardless of the jurisdiction in which they are licensed or regulated.

The Service may also categorize as Users other individuals affiliated with a Service Participant including a Participant's affiliated unlicensed administrative and clerical staff, personal assistants, and individuals seeking licensure or certification as real estate appraisers, provided that any such individual is under the direct supervision of a Participant or the Participant's licensed designee. Such Users shall be personally subject to the Rules and Regulations, the payment of applicable fees and charges, and other governing provisions of the Service and the limitations and restrictions of state law (or, where applicable, the supervisory license holder recognized under applicable foreign law), and to discipline violations thereof.

None of the foregoing diminishes the Participant's ultimate responsibility for ensuring compliance with the Rules and Regulations of the Service by all individuals affiliated with the Participant. Access to MRED systems is determined solely by compliance with MRED's Systems Access Policy, online Terms of Use, online Privacy Policy, and any other policy issued by MRED or as modified by MRED from time to time.

All non-principal brokers, sales licensees, licensed and certified appraisers and any other classification of real estate license affiliated with a Participant will be required to pay MRED Service fees or be in violation of these Rules and Regulations (see Section 6 and Section 9.7.1) if they obtain access to MRED systems. Where applicable, Users of the Service include individuals affiliated with a Participant who are granted access to the Service and who are subject to these Rules and Regulations.

- A listing placed into the Service must be displayed in the Service compilation in the proper property type according to its zoning, and in the area designated for that location. The property address shall be used to designate the property area. The following lists specific parameters to identify the correct property type: A listing with residential zoning shall only be placed under one of the residential property types unless the listing is both for sale and rent, in which case the listing may also be entered under the residential rental category.
- A listing with both residential and commercial use or zoning must first be placed in the appropriate commercial property type, and then may be placed in the appropriate residential property type.
- A vacant residential lot may not be placed in property type 1 - "Detached Single Family" (except for lots with specific plans and price for a "to-be-built" structure). Proposed construction must be disclosed in the Remarks section.
- Tear-down properties are permitted to be placed in both property type 1-Detached Single Family and property type 5-Land. The sale may only be reported on one of the properties, and the other must be marked as cancelled or expired.
- Type 1-Detached Single-Family properties with an additional adjacent lot(s) having separate Parcel ID Numbers (PINs) may be input as type 1-Detached Single Family and property type 5-Land. An additional listing of the combined adjacent properties, designated as having multiple PINs, may also be entered. This would require that, upon closing, the listing(s) corresponding to the method of sale (either individual parcel(s) or the combined adjacent properties) may be marked as closed, and all others listed must be marked as cancelled or expired.
- Homesteads larger than 11 acres are allowed to have multiple appearances in the Service database. A homestead (buildings and land transferred together) on a farm, including multiple homesteads and a farm, that is segregated for sale from a homestead of greater than 10 acres exclusive of the homestead may list the property in Property Type 1 and/or Property Type 5 Vacant Land.
- Multi-property packages (e.g., investor portfolios and packages of listings that are not available for purchase individually) are strictly prohibited from entry into the Service.
- Participation in the Service does not confer REALTOR® membership, Association membership, ownership interest, voting rights, or governance rights in MRED except as expressly provided in the Operating Agreement.

### Section 1(b)        REQUIRED CONSUMER DISCLOSURE

Disclosure of Compensation: Participants and Subscribers must:

1. Disclose to prospective sellers and buyers that broker compensation is not set by law and is fully negotiable. This must be included in conspicuous language as part of any listing agreement, buyer written agreement, and pre-closing disclosure documents (if any).

2. Conspicuously disclose in writing to sellers, and obtain the seller's authority, for any payments or offer of payment that the listing Participant or seller will make to another broker, broker, or other representative (e.g. real estate attorney) acting for buyers. This disclosure must include the amount or rate of any such payment and be made in writing in advance of any payment or agreement to pay.

### Section 1(c)        WRITTEN BUYER AGREEMENTS

Unless inconsistent with state or federal law or regulation, all Participants working with a buyer must enter into a written agreement with the buyer prior to touring a home. The written agreement must include:

a. a specific and conspicuous disclosure of the amount or rate of compensation the Participant will receive or how this amount will be determined, to the extent that the Participant will receive compensation from any source.

b. the amount of compensation in a manner that is objectively ascertainable and not open-ended.

c. a term that prohibits the Participant from receiving compensation for brokerage services from any source that exceeds the amount or rate agreed to in the agreement with the buyer; and

d. a conspicuous statement that broker fees and commissions are not set by law and are fully negotiable.

**Section 1(d)      SERVICES ADVERTISED AS FREE**

Participants and Subscribers must not represent that their brokerage services to a client or customer are free or available at no cost to clients, unless the Participant or Subscriber will receive no financial compensation from any source for those services.

**SECTION 1(e):    EXCLUSIVE BROKERAGE AGREEMENTS**

The Service only accepts property listings subject to an "Exclusive Right to Sell", "Exclusive Right to Lease" or "Exclusive Agency" brokerage agreement for listings of real property located within the United States. For business only listings, the Service will accept a contract between the broker and their client which provides for the Broker's exclusive representation and gives the Broker the authority to place the business for sale in the Service. For International listings (where the subject property is located outside the United States), the Service will additionally accept an Exclusive Marketing/Advertising agreement between the broker and their client if it provides for the Broker's exclusive right within the Service Area to market and/or advertise the subject property for sale or lease.

An Exclusive Right to sell brokerage agreement is a written agreement between a broker and seller to market the seller's property, giving the broker (the "Listing Broker") the exclusive right to place the listing into the Service.

An Exclusive Right to Lease brokerage agreement is a written agreement between a broker and lessor to lease the lessor's property, giving the Listing Broker the exclusive right to place the listing into the Service.

The Exclusive Agency brokerage agreement also authorizes the Listing Broker, as exclusive broker to place the listing in the service but reserves to the seller the general right to sell the property on an unlimited or restrictive basis. Exclusive agency and exclusive right to sell brokerage agreements with named exceptions should be clearly distinguished from exclusive right to sell brokerage agreements with no named exceptions they can present special risks of procuring cause controversies and administrative problems not posed by exclusive right to sell brokerage agreements with no named exceptions.

An Exclusive Marketing/Advertising brokerage agreement is a written agreement between the broker and the seller to market and/or advertise the seller's property giving the broker the right to place the listing into the Service. . Broker and/or buyer registration processes may be required. Exclusive Marketing/Advertising brokerage agreements are only accepted for International listings, where the subject property is located outside the United States.

"Open listings" and "net listings" are not accepted by the Service. Net listings are not accepted because they are considered unethical,

For listings located in Illinois Real Estate License Law requires that all exclusive brokerage agreements must provide for minimum services to (1) accept delivery of and present to the client all offers and counteroffers to buy, sell or lease the client's property or the property the client seeks to purchase or lease (2) assist the client in developing, communicating, negotiating, and presenting offers, counteroffers and notices that relate to the offers and counteroffers until a lease or purchase agreement is signed and all contingencies are satisfied or waived, and (3) answer the client's questions relating to the offers, counter offers, notices and contingencies.

For listings located outside the State of Illinois but within the United States, Participants shall comply with the real estate licensing laws and brokerage service requirements of the state in which the property is located. The Service reserves the right to refuse to accept or to remove any listing submitted to the Service if the underlying brokerage agreement fails to comply with the applicable law of the jurisdiction where the property is located or fails to adequately protect the interests of the public, the Service, or its Participants.

For listings submitted pursuant to an MLS Entity Agreement, or, the Service may rely on the originating MLS to ensure compliance with the applicable brokerage laws of the jurisdiction where the property is located, subject to the terms of the applicable agreement.

For listings submitted by Participants or authorized entities operating outside the United States pursuant to an International Entity Agreement, the Service may apply comparable requirements consistent with the applicable foreign law governing brokerage services and the terms of the applicable agreement with MRED.

The Service reserves the right to refuse to accept any exclusive brokerage agreement for a property or business placed into the Service which fails to adequately protect the interest of the public and the Participants, or which fails to comply with the applicable license laws...The Service also reserves the right to investigate reports of any broker failing to provide minimum services and request a copy of that broker's exclusive brokerage agreement for property listings. As the Service only accepts exclusive brokerage agreements, the Service will remove any property listing from the Service if the Listing Broker's exclusive brokerage agreement is not in conformity with the above.

In the event the Listing Broker's exclusive brokerage agreement is removed for failure to meet the above requirements for any exclusive right to sell or exclusive agency agreement, there shall be an automatic fine of $500.00 for the first violation per company. For a second violation of the same company, the automatic fine shall be $1,000.00. Thereafter, for each violation, that company shall pay a fine of $1,500.00. "Company" shall mean a real estate firm, corporation, LLC, partnership, sole proprietorship or otherwise, and all of its branch offices.

Any language in a listing in the Service or otherwise, directing a cooperating broker to contact the seller to negotiate or present an offer shall be a finable offense in accordance with the procedures outlined in Section 9.10.1 of the MRED Rules and Regulations.

The Service shall not require a Participant to use an Exclusive brokerage agreement other than the contract the Participant individually chooses to utilize provided the listing is of a type accepted by the Service. The Service reserves the right to refuse to accept a listing which fails to adequately protect the interest of the public and the Participants. The Service may reject any exclusive brokerage

agreement that establishes, directly or indirectly, any contractual relationship between the Service and the client (buyer or seller). The exclusive brokerage agreement must include the seller's written authorization to place the listing in the Service. MRED allows the marketing of a future buyer's contractual rights; however, the listing broker must confirm there are no provisions written into the sales contract forbidding this practice and the previous listing must be in a PEND status.  The listing broker must mention in the listing's Remarks field "This sale is based on the completion of a prior transaction".

Failure to reflect the accurate listed price in any exclusively listed property shall result in an automatic fine of $250.00 for the first offense, $300.00 for the second offense, $500.00 for the third offense and $1,000.00 for each offense thereafter.  Within 72 hours from the date of the fine notice of MRED to the offending Service Participant, the listing price shall be changed by the Service Participant and, if not, such listing shall be removed from the Service.

### SECTION 1(f):    AUCTION LISTINGS AND DETAILS

Listings that are the subject of an auction may be entered into the Service; Auction properties must be the subject of a Listing Agreement, in accordance with all other listing agreement requirements contained within this Section 1(b).

The list price must be the greater of the minimum bid price or the reserve price unless an absolute auction, plus (when calculable) any required buyer's fee or premium charged to the buyer at auction. Details of any required buyer's fees for the auction including calculations or premium charged to the buyer at auction must be disclosed in the Broker Private Remarks field of the listing.

The Remarks field must disclose a) when the property described in the Listing is subject to an auction; and/or b) if the owner requires an auction after an accepted offer.

The Remarks field must include details of the auction (the auction type, auction date, auction location, showing and preview instructions, bidding format, buyer premiums or other charges, whether offers may be submitted prior to the auction, and where to submit offers), or a web link to a website including same. However, any Auction property web address included in the Broker Private Remarks field cannot be directed to a website or landing page that displays any broker compensation information whatsoever. Upon acceptance of an offer, the listing shall be updated to include the appropriate CTG/PEND status.  If contingent awaiting auction, it must include the Contingency Flag field entry of CTGA (contingent on auction). After the auction has been completed, if any contingencies still remain, the Contingency Flag field must be changed to the remaining appropriate contingency flag.

Details regarding photos and auction listings can be found under Section 6.1.1

The Listing, Participant and the Listing Broker must comply with all other MRED Policies and Procedures.

### SECTION 1(g):   PRIVATE LISTINGS

The MRED Private Listing is a tool for Participants to provide "mini-drafts" of property information for those listings the Participant chooses to have as a Private listing. Private Listings must be the subject of a Listing Agreement, in accordance with all other listing agreement requirements contained within Section 1(b).

The fields for the Private listing are a small sub-set of the required fields for the Standard listing.  Please see Section 9.10 for further information regarding required fields.

Private listings may be viewed exclusively by Participants of MRED's MLS system and are not included in MRED's IDX/Broker Reciprocity Program or feeding to syndication sites.  The listing broker must approve and/or be contacted for approval to share information about the property with clients.  However, subject to the seller's or client's authorization or instructions, the listing broker may elect to permit the display of a private listing through a Virtual Office Website ("VOW") feed in accordance with applicable MLS rules and policies. Any such display shall not be considered participation in IDX or third-party syndication.

There is no minimum or maximum period of time a listing can be private, as long as the time chosen is within the parameters of the written listing agreement.  Listing History is maintained on Private listings, but other MLS system functionality normally available is not on Private listings, i.e. market time or, statistics.

The listing can go from a Private listing to any other status, where it will be treated as all other properties in that status.  Transactions where procuring cause was produced while it was a Private listing must be changed to a Standard listing and reported closed.

Private listings can expire.

### SECTION 1.1:    LISTINGS SUBJECT TO RULES AND REGULATIONS

Any listing taken on a contract to be placed into the Service is subject to the Rules and Regulations of the Service upon signature of the seller(s).

### SECTION 1.2:    LISTING IDENTIFICATION

Only brokers with a system password may have properties in the Service with their name noted as a listing broker.

### SECTION 1.3:     UNAUTHORIZED DISSEMINATION OF PASSWORDS

.  Use of the password or login credentials assigned to any Participant, User, broker, administrator, secretary, office administrative staff member, or other authorized system user by any other person, including but not limited to other Participants, Users, non-Participants, individuals affiliated with other MLSs, or authorized users of an International Real Estate Entity, is strictly prohibited.

Any such use shall result in a fine as specified under Section 9.7 against the responsible Participant and/or credential holder, and may result in additional disciplinary action, including further fines or suspension of access, as determined by the Service.

### SECTION 1.4:     CO-LISTINGS/COURTESY LISTINGS

Properties co-listed with other Participants of the Service shall be appropriately identified on the system. Co-listings with Non-Participants or licensees affiliated with Non-Participants are not allowed in the Service. Courtesy listings are not allowed in the Service.

### SECTION 1.5:     DETAIL ON LISTINGS FILED WITH THE SERVICE

A listing when placed with the Service by the Listing Broker shall be complete and accurate in every ascertainable detail or be subject to a fine under Section 9.10 and shall include the listing price stated in the exclusive brokerage agreement except when the listing is a Private listing, where the entry of a price, no price, or a price range is allowed.

No reference, in the remarks section or otherwise, shall be made to any Service or licensee not a Participant in the Service. Detail (information) for each listing shall be limited to being descriptive of the property. "Reciprocal" referring to fees charged against commissions referring to a listing is not allowed.  No participant may reproduce or use another broker's property listing remarks without obtaining prior written authorization from the broker.  In the event a listing is not complete in detail or makes reference to a multiple listing service other than the Service or a Participant that is not a Participant in the MRED Service, then upon 72 hours' notice to the Listing Broker the Service shall purge that listing if the Listing Broker fails to complete any detail or fails to delete any reference to another multiple listing service or a Participant that is not a Participant in Midwest Real Estate Data, LLC.

### SECTION 1.5.1:  BROKER PRIVATE REMARKS

The broker private remarks field is limited to language that pertains to the property, or additional broker contact information. The remarks field may include a web address for a property that requires an offer submission form only. The web address included in the field cannot be directed to a website, landing page or any other digital method that displays any broker compensation whatsoever. Additionally, the remarks field cannot be used for the solicitation of sales brokers, recruitment, a job search tool, personal classified advertisement or contain inappropriate language.

### SECTION 1.6:     EXEMPTED LISTINGS

If the seller declines to permit the listing to be disseminated via the Service, a seller's listing exemption form shall be signed by the Seller indicating that he or she does not desire the listing to be immediately filed with and disseminated by the Service and the listing exemption form shall be filed with the Service upon request.

See MRED's Listing Exemption Policy for details.

### SECTION 1.7:     CHANGE OF STATUS OF LISTING

Any change in listed price or other change in the original exclusive brokerage agreement (other than expirations and extensions - see Section 1.12) shall be made only when authorized in writing by the Seller and shall be placed into the Service within 48 hours after the authorized change is received by the Listing Broker.

### SECTION 1.8:     REMOVAL OF LISTING PRIOR TO EXPIRATION

Listings of property may be removed from the Service by the Listing Broker before the expiration date of the exclusive brokerage agreement provided Seller authorizes the cancellation in writing.

### SECTION 1.9:  LISTING MULTIPLE UNIT PROPERTIES

Contiguous or multiple unit properties located within the same block or unit of a subdivision, according to the legal description, may be placed into the Service as one listing, however, when part of a listed property has been sold, proper notification must be placed into the Service. If the Listing Broker has a Master Marketing or Exclusive brokerage agreement for a development, condominium, conversion or new construction with multiple condominium units, lots or homes, the Listing Broker must either include all units (at time of input) or a selection of each price and style of units, lots or homes available. All unit(s), lot(s) or home(s) sold or pending, must be reported to the

Service as "contingent," "pending" or "closed" within 48 hours of the activity.

### SECTION 1.10:  NO CONTROL OF COMMISSION RATES OR FEES CHARGED BY PARTICIPANTS

The Service shall not fix, control, recommend, suggest, or maintain commission rates or fees for services to be rendered by Participants. Further, the Service shall not fix, control, recommend, suggest, or maintain the division of commissions or fees between cooperating Participants or between Participants and nonparticipants.

### SECTION 1.11:   EXPIRATION, EXTENSION, AND RENEWAL OF LISTINGS

Each listing placed into the Service shall automatically expire at midnight on the date specified in the exclusive brokerage agreement unless renewed and placed into the Service prior to expiration.

If notice of renewal or extension is dated after the expiration date of the original listing, then an updated  exclusive brokerage agreement must be secured for the listing to be placed into the Service. Any extension or renewal of a listing must be signed by the Seller(s.)

### SECTION 1.11.1  NON-FILTERING OF LISTINGS

  Participants and Subscribers shall not filter, limit, or otherwise restrict the display or communication of listings to customers or clients based on the name of a brokerage or broker. Participants and Subscribers must present listings in a manner consistent with applicable law and their fiduciary or agency obligations to their clients. Nothing in this provision prohibits Participants or Subscribers from advising clients regarding compensation or negotiating compensation outside the MLS in accordance with applicable law and MLS rules

### SECTION 1.12:   TERMINATION DATES ON LISTINGS

Listings placed into the Service shall bear a definite and final termination date as negotiated between the Listing Broker and the Seller.

### SECTION 1.13:  JURISDICTION

Only listings of the designated types of property located within the combined territorial jurisdiction of the Associations/Boards that Midwest Real Estate Data provides services to are required to be placed into the Service in accordance with the Rules and Regulations.  Listings of property located outside the territorial jurisdiction of such Associations or Boards may be submitted to the Service voluntarily by a Participant, provided the listing complies with applicable law, the rules of the Service, and any applicable agreements between MRED and other multiple listing services, associations, MLS entities, or international organizations. Such listings are not required to be submitted to the Service unless otherwise provided by these Rules and Regulations or applicable agreements.

### SECTION 1.14:  LISTINGS OF SUSPENDED PARTICIPANTS

When a Participant in the Service is suspended from his Association/Board, MRED is not obligated to provide services, including continued inclusion of the suspended Participant's listings in the Service's compilation of current listing information. Prior to any removal of the suspended Participant's listings from the Service, the suspended Participant will be advised in writing of the intended removal, so the suspended Participant may advise his clients.

### SECTION 1.15:   LISTINGS OF EXPELLED PARTICIPANTS

When a Participant is expelled from his Association/Board, MRED is not obligated to provide services, including continued inclusion of the expelled Participant's listings in the Service compilation of current listing information. Prior to any removal of an expelled Participant's listings from the Service, the expelled Participant will be advised in writing of the intended removal, so the expelled Participant may advise his clients.

### SECTION 1.16:   LISTINGS OF RESIGNED PARTICIPANTS

When a Participant resigns from his Association/Board, MRED is not obligated to provide services, including continued inclusion of the resigned Participant's listings in the Service Compilation of current listing information. Prior to any removal of a resigned Participant's listings from the Service, the resigned Participant will be advised in writing of the intended removal, so the resigned Participant may advise his clients.

### SECTION 1.17:   LISTINGS OF "OVER-55" PROPERTIES

Any listing otherwise eligible for dissemination in the Service that is located within a community that is "qualified housing for older persons" under the Fair Housing Act and may thus lawfully limit occupancy to such older persons (an "over-55 community") shall include a statement specifically disclosing such restriction in the "Remarks" Section of the property data record. Before such a listing is input into the Service, the listing Participant shall secure a written representation from the seller or the over-55 community's management company or its legal counsel that any restriction on the age of the occupants of the property otherwise eligible for dissemination in the Service, is located within a community that is "qualified housing for older persons" under the Fair Housing Act and may thus lawfully limit occupancy to such older persons (an "over-55 community") and shall include a statement specifically authorizing the disclosure of such restriction in the "Remarks" Section of the property data record and further that any restriction on the age of the

occupants of the property does not violate any federal, state, or local law. The listing Participant's submission of a listing to the Service that is subject to a restriction on the age of the occupants of the property shall constitute the listing Participant's commitment to defend, indemnify, and hold harmless the Service against any claim that the Service, by including such remarks, has violated any local, state or federal law that prohibits discrimination against families with children or on the basis of age.

NOTE: Per the federal Fair Housing Act, a dwelling or community is "qualified housing for older persons if:

- HUD has determined that it is specifically designed for and occupied by elderly persons under a federal, state or local government program, OR
- It is occupied solely by persons who are 62 or older, OR
- It houses at least one person who is 55 or older in at least 80 percent of the occupied units and adheres to a policy that demonstrates intent to house persons who are 55 or older."

## SECTION 2: SELLING PROCEDURES

### SECTION 2: SHOWINGS AND NEGOTIATIONS

Appointments for showings with the seller of the listed property placed into the Service shall be conducted through the Listing Broker, unless otherwise directed. Negotiations with the seller for the purchase or rental of the listed property placed into the service shall be conducted through the Listing Broker.

### SECTION 2.1: PRESENTATION OF OFFERS

The Listing Broker must make arrangements to present the offer as soon as possible or give the Cooperating Broker a satisfactory reason for not doing so.

### SECTION 2.2: SUBMISSION OF OFFERS

The Listing Broker shall submit to the seller all offers until closing unless precluded by law, government rule, regulation, or agreed otherwise in writing between the Seller and the Listing Broker. Unless the subsequent offer is contingent upon the termination of an existing contract, the Listing Broker shall recommend that the seller(s) obtain the advice of legal counsel prior to acceptance of subsequent offer.

### SECTION 2.3: RIGHT OF COOPERATING BROKER IN PRESENTATION OF OFFER

The Cooperating Broker or his/her representative has the right to participate in the presentation to the seller or lessor of any offer the Cooperating Broker secures to purchase or lease. The Cooperating Broker does not have the right to be present at any subsequent discussion or evaluation of that offer by the seller(s) or lessor and the Listing Broker. However, if the seller or lessor gives written instructions to the Listing Broker that the Cooperating Broker not be present when an offer to the seller that the Cooperating Broker secured is presented, the Cooperating Broker has the right to a copy of the seller's or lessor's written instructions. None of the foregoing diminishes the Listing Broker's right to control the establishment of appointments for such presentations.

### SECTION 2.4: RIGHT OF LISTING BROKER IN PRESENTATION OF COUNTEROFFER

The Listing Broker or the Listing Broker's representative has the right to participate in the presentation of any counteroffer made by the seller or lessor. The Listing Broker does not have the right to be present at any discussion or evaluation of a counteroffer by the purchaser or lessee. However, if the purchaser or lessee gives written instructions to the Cooperating Broker that the Listing Broker not be present when a counter-offer is presented to the buyer, the Listing Broker has the right to a copy of the purchaser or lessees written instructions.

### SECTION 2.5: REPORTING STATUS OF LISTING

Change of a listing's status shall be reported within forty-eight (48) hours after date of execution to be defined as "the date of the last required signature" by all parties to the contract except for builder sales of new construction listings which shall be reported as closed within 30 days. The broker code of #99995 shall be input for the selling broker when reporting new construction as closed if there is no cooperating broker.

Status of Listings

a) Active listing (NEW, ACTV, RACT, BOMK, PCHG) - listing entered in the Service - available for showings – continue to show
b) Active-Contingent (A/I, FIN, CTGO) – attorney review, financing, other – continue to show unless otherwise specified
c) Active-Contingent (CTGA)- awaiting auction – continue to show unless otherwise specified
d) Active-Contingent (HS, HC) – home sale/home closing - continue to show unless otherwise specified

e) Active-Contingent (PS, PC) – commercial property sale/closing – continue to show unless otherwise specified
f) Active-Contingent (SS) - short sale under contract – continue to show unless otherwise specified
g) Active-Temporarily No Showings (TEMP) - still listed, exclusive brokerage agreement in effect but not under contract for purchase, property unable to be shown, except for reasonable restrictions noted on the listing in the showing instructions
h) Active-Auction (AUCT) – continue to show
i) Pending (PEND) – under contract waiting for closing without contingencies
j) Closed (CLSD) and Rented (RNTD)
k) Canceled (CANC) or expired (EXP) listing (exclusive brokerage agreement no longer in effect)
l) Active-Private (PRIV-ACTV) – Private listings; agents choose whether property is available for showing
m) Private-Contingent (PRIV-CTG) – Private listings under contract
n) Private-Pending (PRIV-PEND) - Private listing under contract waiting to close with no contingencies
o) Private-Expired (PRIV-EXP) – Private listing) exclusive brokerage agreement  no longer in effect)
p) Private-Cancelled (PRIV-CANC) – Private listing (exclusive brokerage agreement no longer in effect)

### SECTION 2.6:    REPORTING RESOLUTIONS OF CONTINGENCIES

The Listing Broker shall report to the Service within 48 hours that a contingency placed into the Service has been fulfilled or renewed or changed or canceled.

### SECTION 2.7:    REPORTING CANCELLATION OF PENDING SALE

The Listing Broker shall place into the Service, within 48 hours, the cancellation of any pending sale

### SECTION 2.8:    BROKER RECIPROCITY/IDX AND ADVERTISING OF LISTINGS

Unless a Participant is in good standing with the Broker Reciprocity program, and then only in conjunction with the rules of such Broker Reciprocity program as contained herein, a listing shall not be advertised by any Participant other than the Listing Broker without permission of the Listing Broker.

### SECTION 2.9:    ASSOCIATION/BOARD PROTOCOL

Other than stated herein, a REALTOR® Association/Board's procedures and protocol for the showing of property, negotiation, presentation and submission of offers shall control.

## SECTION 3: REFUSAL TO SELL
### SECTION 3:    REFUSAL TO SELL

If the Seller of any listed property placed into the Service refuses to accept a written offer satisfying the terms and conditions stated in the listing, such fact shall be communicated immediately to the Service and to all Participants. This can be accomplished by changing the listing status to cancelled or TEMP in the system.

## SECTION 4: PROHIBITIONS
### SECTION 4:    INFORMATION FOR PARTICIPANTS ONLY

Unless ordered by a court of competent jurisdiction, listing data contained in the Service shall be made available only to Participants, Subscribers and Users authorized under these Rules and Regulations and the Operating Agreement.
For purposes of this Section, "Participant" includes:

- REALTOR® members eligible under Section 1(a);
- Licensed real estate professionals granted access pursuant to a Contract for Services Agreement ("CSA");
- MLS Entities and their authorized users admitted pursuant to an MLS Entity Agreement; and
- International Real Estate Entities and their authorized users admitted pursuant to an International Entity Agreement.

Listing data shall not be made available to any broker, firm, entity, or person not authorized as a Participant, Subscriber, or User pursuant to these Rules and Regulations and the applicable service agreement, except as otherwise provided herein.

Use of information developed by or published by the Service is strictly limited to the activities authorized under a Participant's licensure(s), certification, lawful authority, or governing agreement, and unauthorized uses are prohibited.

No Participant, Subscriber, MLS Entity, International Real Estate Entity, or other authorized user shall provide access to the Service or

Service information to any unauthorized person or entity.

Nothing herein shall be construed to grant access to Service information where such access is prohibited by applicable law.

All Participants remain responsible for the actions and compliance of their affiliated Subscribers, Users, employees, contractors, and authorized representatives.
For MLS Entities and International Real Estate Entities, distribution of Service information to their authorized users shall be governed by the applicable agreement and must remain consistent with these Rules and Regulations.

### SECTION 4.1:    "FOR SALE" SIGNS

Only the "For Sale" signs of the Listing Broker (does not include "For Sale By Owner" signs) may be placed on a property

### SECTION 4.2:    "SOLD" SIGNS

Prior to closing, only the "Sold" sign of the Listing Broker may be placed on a property, unless written permission is granted by the Listing Broker.

### SECTION 4.3:    SOLICITATION OF LISTING PLACED INTO THE SERVICE

Participants shall not solicit a listing on property placed into the Service unless such solicitation is consistent with Article 16 of the REALTORS® Code of Ethics, its Standards of Practice and Case Interpretations, applicable Illinois law, or for participants and other authorized users of the Service who are not REALTORS®, the Code of Conduct ("Code of Conduct") adopted by the Service attached herein as Appendix F as part of these Rules and Regulations. Violations may be subject to enforcement and disciplinary action under these Rules and Regulations.

### SECTION 4.4:    STANDARD OF PRACTICE

Section 4.4 is to be construed in a manner consistent with Article 16 of the Code of Ethics and particularly Standard of Practice 16-4 as amended, for Participants who are "REALTORS®.   For Participants and other authorized users of the Service who are not REALTORS®, Section 4.4 shall be interpreted and applied in a manner consistent with the Code of Conduct adopted by the Service as part of these Rules and Regulations, which establishes comparable professional standards governing solicitation of listings. REALTORS® shall not solicit a listing which is currently listed exclusively with another broker. However, if the listing broker, when asked by the REALTOR®, refuses to disclose the expiration date and nature of such listing; i.e., an exclusive right to sell, an exclusive agency, open listing, or other form of contractual agreement between the listing broker and the client, the REALTOR® may contact the owner to secure such information and may discuss the terms upon which the REALTOR® might take a future listing or, alternatively, may take a listing to become effective upon expiration of any existing exclusive listing. (Amended 1/94)." Section 4.4 is also intended to encourage brokers to participate in the Service by assuring them that other Participants will not attempt to persuade the Seller to breach the exclusive brokerage agreement or to interfere with their attempts to market the property. Absent the protection afforded by this Section, Listing Brokers would be most reluctant to generally disclose the identity of the seller or the availability of the property to other brokers.

Section 4.4 does not preclude solicitation of listings under the circumstances otherwise recognized by the Standards of Practice related to Article 16 of the Code of Ethics, or, for non-REALTOR Participants and users of the Service, under the Code of Conduct adopted by the Service.

## SECTION 5:  NO COMPENSATION SPECIFIED ON MLS LISTINGS
### Section 5:        NO COMPENSATION SPECIFIED ON MLS LISTINGS

Participants, Subscribers, or their sellers may not make offers of compensation to buyer brokers and other buyer representatives in the MLS including but not limited to any data field, photo, attachment, supplement file on a listing. Use of MLS data or data feeds to directly or indirectly establish or maintain a platform to make offers of compensation from multiple brokers to buyer brokers or other buyer representatives is prohibited and must result in the MLS terminating that Participant's access to any MLS data and data feeds.

### SECTION 5.1:    PARTICIPANTS AS PRINCIPALS

If Participants or any licensees affiliated with a Participant have any interest in property or a business, they shall disclose that interest and such information shall be disseminated to all Participants by placing a "Y" in the broker/owner interest field in the MRED system.
### SECTION 5.2:    PARTICIPANTS AS PURCHASERS

If any licensee affiliated with a Participant wishes to acquire an interest in property or business listed with another Participant such contemplated interest shall be disclosed to the Listing Broker prior to the time an offer to purchase is submitted to the Listing Broker.

## SECTION 6: SERVICE FEES AND CHARGES
### SECTION 6:       SERVICE FEES

The Participant MLS Entity and International Real Estate Entity shall be assessed a monthly Service fee for each non-principal broker, sales licensee, licensed and certified appraiser and any other classification of real estate license or authorized user who accesses the MRED system. The only exception will be when a special waiver of Service fee is granted by your Association/Board of Directors, MLS Entity or International Real Estate Entity and approved by MRED.

Each Participant shall pay all fees and service charges as are from time to time set by the Service.  Said fees and service charges shall only be such as to cover the costs of the Service and to maintain a reasonable working reserve. Billing to the Association/Board, MLS entity or International Entity is to be as follows:

Each Association/Board, MLS Entity and International Real Estate Entity under the terms of its Service Agreement with MRED shall pay a monthly fee for each Participant of their Association/Board, MLS Entity or International Real Estate Entity and each licensee affiliated with said Participant.  Each Board/Association, MLS Entity and International Real Estate Entity  may, in connection with the delivery and sale of the Service to its Participants and their affiliated licensees or users, charge whatever price the Association/Board, MLS Entity or International Real Estate Entity deems appropriate, including a markup over the cost of the Service, provided that each Participant is charged the same price for itself and its affiliated licensees as every other Participant, regardless of whether the Participant is or is not a preferred unit owner of the Service.

An Association/Board, MLS Entity or International Real Estate Entity whose service account is past due, 10 days from the date of billing, shall be assessed a late charge equal to a rate of 1.5% on past due amounts. A REALTOR® Association/Board, MLS Entity and International Real Estate Entity will be subject to suspension for any past due accounts not satisfied within 60 days from date of billing. T Any suspension of the Service will result in the complete loss of access to the Service for Participants and does not eliminate or reduce the obligation to pay the underlying debt.

### SECTION 6.1.1:  PHOTOGRAPHS

All listings except vacant land, new construction, confidential commercial listings, Private listings and deeded parking/boat slips must have a primary photo in the system within 7 days of their entry into the system.  Listings with an Auction (AUCT) status or Contingent on Auction (CTGA) contingency flag shall have a photo placeholder added as the primary photo to indicate this is awaiting auction, and the secondary photo shall be a primary photo of the property.  Failure to comply with this rule may subject you to a fine. If no primary photo is submitted within 10 days, the listing will be placed in the "HOLD" status, and can only be viewed by the Listing Broker, Listing Broker and Secretary of the office. It will not appear in any searches for the general membership, and the listing will not be included on any VOW or IDX sites or fed to any third-party vendors including but not limited to vendors such as REALTOR®.com and other similar services. The listing will be removed from the "HOLD" status once a primary photo has been added to the listing. Once the listing has been placed in hold, a violation notice will be sent to the Broker, who will have 72 hours to add the photo before a fine is imposed. The fine will be $250.00 for the first offense per office (not per broker), $300.00 for the second offense per office, $500.00 for the third offense per office, and $1,000.00 for the fourth and all subsequent violations.

Electronic transmission must be submitted in the required format, as set forth by the Service. For vacant land or proposed construction, a sketch or artist's rendering may be submitted to the Service. For confidential commercial listings, a graphic conveying the type of business or property listed may be submitted to the Service.  For all other types of listings, the primary photo submitted must be an exterior shot of the residence/business and secondary photos can include additional exterior and/or interior shots.  Photos submitted may not be removed from the Service, with the exception of (1) replacing photos to reflect a change in the seasons, (2) reflecting improvements to the home; or (3) substituting a higher quality photo of the same image.   While secondary photos may not be removed from the Service, a Listing Broker may instruct the Service to suppress off market secondary photos (but not primary photos) from the Service's data feed to third parties (e.g., IDX data feeds) which shall include the Participant's own IDX site. Removal of photos shall result in a $250 fine and the photos will be restored to the listing. All photos should pertain strictly to the subject property and may not prominently display any names, contact information (digital or otherwise), URLs and/or links, QR codes (or similar) REALTOR® or realty office logos and/or branding, for sale signs, persons, collages, or audio/video/text commentary. Cloning of any photo by a different brokerage firm is strictly prohibited.  The same verbiage and language restrictions/prohibitions that apply to the Property Description/Remarks also apply to all photo captions and photo remarks.

All photos/virtual tours should pertain strictly to the subject property and may not prominently display any names, contact information (digital or otherwise), URLs and/or links, QR codes (or similar), for sale signs, persons, collages, or audio/video/text commentary, with the exception of a livestream showing and livestream open house, which may reflect these elements during the live display only. Brokerages will have the option to show all livestream links on their website, show none of the links on their website or just show links from their brokerage.
Virtual tours submitted to the Service may not require any registration. Once an office is notified that their photo/virtual tour is in violation of the above rule, there shall be a fine imposed for subsequent occurrences per office as follows: $250.00 fine for first occurrence after notification, $300.00 for the second occurrence per office, $500.00 for the third occurrence per office, and $1,000.00 for every occurrence thereafter.

Using photos without written permission from the intellectual property owner is strictly prohibited. Violation of this rule will result in an automatic $250.00 fine per occurrence (i.e., each submission of a violating photo).  The complaining firm must submit proof (i.e. copy of prior listing with copies of original photos, invoicing for photos) of a violation to this rule to the Service before a notice will be sent to the listing firm. The new listing firm will have 72 hours to remove the photos. If the listing firm does not remove the photos, MRED will

remove or deactivate access to the infringing content after the 72-hour period. Once the disputed photo has been removed and a firm has been fined, it will have 20 days to file an appeal in accordance with the MRED Rules and Regulations. If an appeal is filed, MRED will notify the complainant of the appeal and repost the disputed photo in not less than ten, nor more than fourteen, business days pending the outcome of the appeal, unless the complainant notifies MRED that that the complainant has filed an action seeking a court order to restrain the alleged infringer from engaging in infringing activity on the MRED MLS system. If no appeal is filed, the photos in violation of this rule will be permanently removed by the Service at the end of the appeal period.

### SECTION 6.1.2: PHOTOGRAPHY CONTRACTORS

If a Participant of the Service obtains photographs from a photographer, the Participant must receive written permission from the photographer for the Participant's firm to include the photographs in the Service consistent with the Subscriber Agreement and the uses permitted in these Rules and Regulations.

NOTE: In order to assure compliance with these rules, each Participant that engages a third-party photographer and submits photos to the service is advised to obtain a written agreement with the photographer assigning all rights, including copyrights, in the photographs, to the Participant firm.  The following provision should be included in the agreement with the photographer: "Photographer hereby assigns all right, title, and interest, including copyrights and all intellectual property rights, in the photographs, videos, and other media of [insert property address] to [insert name of Participant's firm] and agrees to execute any further documents which may reasonably be necessary to effect such assignment."  Alternatively, a license should be granted that includes the following provision, "Participant is granted an irrevocable, unrestricted, transferable, perpetual, royalty-free, non-exclusive license (including all rights and abilities to sublicense) to use, store, reproduce, create derivative works from, compile, display and distribute the media (photographs, videos, and all other media delivered to Participant)."

### SECTION 6.1.3: BRANDING OF CLIENT-VIEWABLE INFORMATION

Participants shall not place any branded documents to any client-viewable information.

### SECTION 6.2: PHOTOGRAPHY AND VIRTUAL STAGING

### Section 6.2.1 DEFINITION OF VIRTUAL STAGING
MRED recognizes the varying needs of different marketplaces and individual property sales concerns.  Accordingly, MRED defines and permits the use of "virtually staged photos" within the following parameters:

"Virtual Staging" is defined as using photo editing software to create a photo or conceptual rendering of what a room and/or property could look like, if it was staged or lived in.
### Section 6.2.2 VIRTUAL STAGING PROHIBITIONS

### Section 6.2.2.1 VIRTUAL STAGING PROHIBITED INCLUSIONS

Modifying photo(s)/rendering(s) to include visual elements not within a property owner's control **is strictly prohibited.**

Example: Editing in a view of CloudGate (aka the Chicago Bean) that is not physically possible from the specified location in the real world.
### Section 6.2.2.2 VIRTUAL STAGING PROHIBITED EXCLUSIONS

Modifying photo(s)/rendering(s) to exclude visual elements not within a property owner's control **is strictly prohibited.**

Example: Removing power lines, water towers and/or nearby highways
### Section 6.2.3 PERMITTED USES OF VIRTUAL STAGING IN THE SERVICE

Modifying photo(s)/rendering(s) to include personal property items not conveyed with the real property is permitted.
Permitted personal property modifications include, but are not limited to:

- Applying digital photos of furniture, mirrors, artwork, plants, etc. into a photo of an empty room
- Removing existing furniture from a photo and replacing it with digital images of furniture, mirrors, artwork, plants, etc.

Disclosure of virtually staged photo(s)/rendering(s) is required in the specified field.

### Section 6.2.3.1 PERMITTED VIRTUAL STAGING AND LISTINGS OF PROPERTIES NOT FULLY CONSTRUCTED

Virtually staged photo(s)/rendering(s) on either: (a) To-Be Built; or (b) Under Construction; is permitted for all facets of real property to conveyed to a buyer in a sale.  Disclosure of virtually staged photo(s)/rendering(s) is required in the specified field.

# SECTION 7: COMPLIANCE WITH RULES
### SECTION 7: COMPLIANCE WITH RULES

The following action may be taken for non-compliance with the Rules and Regulations by any Participant, Subscriber, User,

Association/Board, MLS Entity, International Real Estate Entity, or other authorized user or entity granted access to the Service:

    a.   For failure to comply with any rule, policy, or assessed fine, the provisions of Sections 9 thru 9.16 of these Rules and Regulations shall apply.

    b.   For failure of an Association/Board, MLS Entity or International Entity receiving services or access from MRED to adopt or comply with any applicable rule, agreement, or policy governing the Service, such entity may be subject to suspension or restriction of access to the Service until such time as the entity demonstrates compliance.

**SECTION 7.1:    APPLICABILITY OF RULES**

Non-principal brokers, sales licensees, appraisers, and others affiliated with a Participant and authorized to have access to information published by the Service ("subscribers") are subject to these Rules and Regulations and may be disciplined for violations thereof, provided that the subscriber has signed an agreement acknowledging that access to and use of Service information is contingent on compliance with the Rules and Regulations. This provision does not eliminate the Participant's ultimate responsibility and accountability for all subscribers affiliated with the Participant, including fines any subscriber affiliated with the Participant may have incurred while previously affiliated with another Participant and fines any subscribers formerly affiliated with Participant incurred while affiliated with the Participant.

# SECTIONS 8-22:  FINES
## SECTION 8:    FINE SYSTEM AND PROCEDURE

Boards/Associations, MLS Entities and International Real Estate Entities that receive services from or are granted access to the Service shall establish and maintain minimum individual fine structures and collection procedures applicable to their affiliated Participants, Subscribers, or Users for violations of these Rules and Regulations, including the Code of Conduct adopted by the Service, in accordance with Sections 9 through 9.16 of these Rules and Regulations, or pursuant to the applicable Contract for Services Agreement, MLS Entity Agreement, or International Entity Agreement with MRED.

### SECTION 9:    FINES

Fines referred to in Sections 1(e), 9.3, 9.4, 9.4.1, 9.5, 9.7, 9.7.1, 9.8, 9.9, 9.10.1, 9.11, 9.12, 9.13, 9.14, 9.15, 9.16, and 30 are automatic. Additionally, portions of Section and 6.1.1 reference automatic fines.

Within ninety (90) days from conversion to the Service, a Board/Association, MLS Entity or International Real Estate Entity receiving services and access to the Service shall adopt and immediately implement the following schedule of minimum fines for violations of these Rules and Regulations.

### SECTION 9.1:    MINIMUM STANDARDS FOR ASSOCIATION/BOARDS

Rules and fines contained in this document are a minimum standards applicable for the Association/Boards, MLS Entity or International Real Estate Entity receiving services and access to the Service. The Association/Boards, MLS Entity or International Real Estate Entity receiving services and access to the Service shall at least adopt these minimum Rules and fines, and may, at their discretion and upon approval of MRED, identify additional requirements for the imposition of fines. Fines issued by the Service shall be billed by the Service to the Association/Board, MLS Entity or International Real Estate Entity for collection.

### SECTION 9.2:    VIOLATIONS OF THESE RULES AND REGULATIONS

If the alleged offense is a violation of these Rules and Regulations of the Service, the matter will be referred to MRED's Compliance department.  The Compliance department may assess fines under these rules administratively, without any hearing, subject to a Participant's or subscriber's right to appeal hereunder.  MRED reserves the right to remove any offensive and/or HUD (Fair Housing) non-compliant information (language, photos, audio, etc.) contained in the listing and notify the listing office of the removal.

### SECTION 9.3:    SUBMISSION OF NEW LISTINGS

For any new listing required to be entered, there shall be a $1,000.00 fine for failure to place the listing in the Service within 48 hours of the effective listing date or within 24 hours after the real estate broker advertises the real property to the general public through a website or utilizes any publicly accessible print advertisements, including for sale signs, whichever is earlier. Computer failure shall not be an excuse for such failure. The 48-hour requirement shall include weekends and holidays.  See Section 1.

### SECTION 9.4:    REPORTING CHANGES OF STATUS AND CONTINGENCIES

There shall be an automatic fine of $250.00 for the broker's first occurrence of failure to report contract pending, contingencies and deletion of contingency flags, and change of status of a listing if transferred to a different listing within 48 hours. Computer failure shall not be an excuse for such failure. The 48-hour requirement includes weekends and holidays. The broker's second offense within a 12-month period shall result in an automatic fine of $500.00; the automatic fine shall increase to $750.00 per broker's offense thereafter

within a 12-month period.

### SECTION 9.4.1:  REPORTING CLOSED (SOLD)

There will be an automatic $250.00 fine for the broker's first occurrence of failure to report Closed (Sold) within 48 hours with the exception of new construction listings as stated in Section 2.5. Computer failure shall not be an excuse for such failure. The 48-hour requirement shall include weekends and holidays. The broker's second offense within a 12-month period shall result in an automatic fine of $500.00; the automatic fine shall increase to $750.00 per broker's offense thereafter within a 12-month period.

### SECTION 9.5:    REPORTING PRICE CHANGES

There shall be an automatic $250.00 fine for failure to report a price change within 48 hours. Computer failure shall not be an excuse for such failure. The 48-hour requirement shall include weekends and holidays.

### SECTION 9.6:    REMOVAL FOR FAILURE TO MEET MINIMUM STANDARDS

In the event the listing broker's exclusive brokerage agreement for a property located in Illinois is removed from the Service for failure to meet the minimum service requirement under the Illinois Real Estate License Act, there shall be an automatic fine of $500.00 for the first violation per company. For a second violation of the same company, the automatic fine shall be $1,000.00. Thereafter, for each violation, that company shall pay a fine of $1,500.00. "Company" shall mean a real estate firm, corporation, LLC, partnership, sole proprietorship or otherwise, and all of its branch offices.

For purposes of this provision, "company" shall mean the real estate firm or brokerage responsible for the listing, including any corporation, limited liability company, partnership, sole proprietorship, or other business entity, together with all of its branch offices.

Such fines may be assessed and enforced by MRED, or by an Association/Board, MLS Entity, or International Real Estate Entity authorized to provide services or access to the Service, in accordance with these Rules and Regulations and any applicable Contract for Services Agreement, MLS Entity Agreement, or International Entity Agreement.

### SECTION 9.7:    UNAUTHORIZED DISSEMINATION OF SYSTEM ACCESS PASSWORD

There shall be a fine of $2,500.00 for each unauthorized dissemination of system access passwords as described in Section 1.3.

### SECTION 9.7.1:  PARTICIPATION

There shall be fine of $2,500 against a Participant for each use of the Service by a broker, sales licensee, licensed and certified appraiser and/or any other classification of real estate licensee who is not authorized to have access to the Service and is licensed to or affiliated with the Participant.

### SECTION 9.7.2:  INTERRUPTION OF ACCESS TO SYSTEM

The Compliance department may interrupt access to the system administratively, without any hearing, subject to a Participant's or subscriber's right to appeal hereunder, should there be reasonable grounds to believe a Participant or subscriber is enabling or allowing unauthorized access to the system.

### SECTION 9.8:    E-MAIL/USE OF THE TERM "MRED"

Participants may not use the letters MRED, the words "Midwest Real Estate Data, LLC", variations thereof or MRED approved icons in any e-mail or communication intended or designed to mislead other Participants as to the identity of the sender or sender's relationship to MRED. Any violation to e-mail guidelines will result in an automatic, finable offense, with a fine of $250.00.

### SECTION 9.9:    REPORTING STATUS CHANGES

There shall be an automatic $250.00 fine for the broker's first occurrence of entering status changes relating to amendments to the Participant's exclusive brokerage agreement without the seller's written consent. The broker's second offense within a 12-month period shall result in an automatic fine of $500.00; the automatic fine shall increase to $750.00 per broker's offense thereafter within a 12-month period.

### SECTION 9.10: REPORTING REQUIRED FIELDS

There shall be a $250.00 fine for failure to correctly report all appropriate required fields when placing or modifying a listing for both active and off-market property types excluding confidential commercial listings. Mandatory fields on all Property Input Forms for all property types are noted with an asterisk.

For a complete list of all required residential fields and any detailed instructions/prohibitions, see the MRED Residential glossary.

For a complete list of all room counting rules/definitions and any detailed instructions/prohibitions, see the MRED Room Counting Publication.

For a complete list of all required commercial fields and any detailed instructions/prohibitions, see the MRED Commercial glossary.

For a complete list of all required international property fields and any detailed instructions/prohibitions, see the MRED International Property Type – Glossary.

### SECTION 9.10.1: NO DIRECTION TO CONTACT SELLER ON OFFERS

Any language in a listing in the MRED system or otherwise, directing a cooperating broker to contact the seller to negotiate or present an offer shall be an automatic fine in the amount of $250.00 in accordance with the procedures outlined in Section 1: Exclusive Brokerage Agreements of the MRED Rules and Regulations.

### SECTION 9.11: PROVIDING REQUESTED DOCUMENTATION

There shall be a $250.00 fine for failure to provide the Service with any documentation requested by the Service within 72 hours of such request.

Fines referred to in Section 9.10, 9.11, 9.12, 9.15 and 9.16 are not automatic and may be corrected by the Participant prior to the levy of a fine. Additionally, portions of Section 6.1.1 reference fines that are not automatic.

### SECTION 9.12: ENTERING A LISTING WITHOUT AN EXCLUSIVE BROKERAGE AGREEMENT

An automatic $1,000.00 fine will be issued to any Participant who has listed a property in Service without having a listing agreement with the seller. MRED will immediately remove these listings from display on MRED systems.

### SECTION 9.13: REPORTING OF CLOSED TRANSACTIONS BY NON-LISTING BROKER

SECTION 9.13: REPORTING OF CLOSED TRANSACTIONS BY NON-LISTING BROKER. Only the Listing Broker Service Participant whose listing appears in the Service may report the listed property in the Service as closed, however, a Service Participant may report any property as closed if the Service Participant cooperated as the procuring cause of the buyer closing on the transaction and the Listing Broker Service Participant did not enter the listing into the System prior to closing. Any reporting of a closed transaction for a property in violation of this rule will result in an automatic fine of $250.00 for the first offense, $500.00 for the second offense, and $1,000.00 for each offense thereafter. For purposes of calculation of the fine in this Section 9.13 only, the automatic fine shall be calculated on the number of violations in the office (and not calculated for violations on a firm wide basis for those firms with multiple offices) reporting the closed transaction. Any property reported as closed in violation in this Section 9.14 will be immediately removed from the Service database.

### SECTION 9.14: REPEATED PATTERNS OF DATA MISREPRESENTATION

Notwithstanding the foregoing, should the Service become aware of repeated patterns of data misrepresentation by any customer:

1. The Service shall notify the customer, the managing broker, and the brokerage of the pattern of data misrepresentation.
2. MRED reserves the right to assess a $2,500 fine for each subsequent occurrence of data misrepresentation until a 12-month period without occurrences is established.
3. All fines otherwise indicated in these Rules & Regulations as correctable within a 72-hour period and fitting the repeated pattern of data misrepresentation shall convert to automatic fines.
4. All rights to appeal an assessed fine, as found in Section 9.2, and Sections 13-22, remain in effect.

### Section 9.15: DELIVERY OF BROKER ONLY INFORMATION

MRED prohibits the delivery of Broker Only Information to the general public, with the exception of seller clients, administrative staff and technical vendors. "Broker Only Information" is defined as the following data: Broker Remarks, Showing Instructions, Lockbox Codes, and Expiration Dates. Violation of this rule will result in an automatic fine of $250.00 per reported occurrence.

### Section 9.16: DISPUTE RESOLUTION AND ARBITRATION ROUTING

In addition to the enforcement procedures described in this Section 9, disputes between Users of the Service relating to professional conduct, ethics obligations, Code of Conduct requirements, or MLS participation may be resolved in accordance with the following

provisions.

(1) Applicability

This Section applies to disputes, complaints, arbitration demands, or alleged violations of professional standards, the REALTORS® Code of Ethics, the MRED Code of Conduct, MLS Rules and Regulations, or other conduct requirements arising between Users of the Service.

(2) Jurisdiction of the Respondent's Access Granting Entity

Unless otherwise provided in these Rules and Regulations or applicable MRED policies, disputes between Users of the Service shall be submitted to the dispute resolution, ethics enforcement, or arbitration forum designated by the Access Granting Entity through which the Respondent obtains access to the Service.

The Access Granting Entity shall have primary authority to administer and adjudicate such disputes.

(3) MRED Enforcement Authority

Nothing in this Section limits the authority of MRED to enforce violations of:

- the MRED Rules and Regulations

- MLS policies

- the MRED Code of Conduct

- other requirements governing access to or use of the Service

MRED may investigate and impose sanctions for violations affecting the operation or integrity of the Service in accordance with this Section 9.16.

(4) Association/ Board, International and MLS Entity Participation

Participants, Subscribers, MLS Entities, International Real Estate Entities, and any other Users of the Service accessing the Service through an MLS Entity Agreement, Contract for Service Agreement (CSA), or International Service Agreement agree that access to the Service constitutes agreement to submit to the dispute resolution procedures described in this Section.

Such entities shall ensure that their affiliated users agree to and comply with these procedures as a condition of access to the Service.

(5) Compliance with Determinations

All Users of the Service agree to comply with any final determination issued by the applicable dispute resolution forum.

Failure to comply with a final determination may constitute a violation of these Rules and Regulations and may result in disciplinary action, including but not limited to:

- suspension of Service access

- termination of Service access

- other sanctions permitted under Section 9.

### SECTION 10:    ACTION

A Participant's access to the Service may be suspended or terminated for failure to pay a fine and correct the finable offense in the Service subsequent to the exhaustion of appeal rights under these Rules and Regulations.

### SECTION 11:    DIVISION OF FINES

Upon issuance of a fine and expiration of any applicable fine appeal period, the Service will bill one-half (1/2) of such fine to the Association/Board, MLS Entity, or International Real Estate Entity for its Participant, Subscriber or User's violations of these Rules and Regulations. The applicable Association/Board, MLS Entity, or International Real Estate Entity shall bill the entire amount of the fine to the responsible Participant, Subscriber or User. Such entity shall remit the entire amount of the bill of the Service to the Service regardless of its ability to collect the fine from the responsible Participant, Subscriber or User. In the event the Participant, Subscriber or User files an Appeal, the appealing party shall submit payment of such fine to the Service with its Notice of Appeal. If the appeal is unsuccessful, the Service shall retain the payment of the fine submitted with the Notice of Appeal and use some or the entire fine to defray the expenses of the Appeal.

**SECTION 12:     COMPLAINTS OF UNETHICAL CONDUCT**

. All complaints alleging unethical conduct shall be referred to the Access Granting Entity, through which Participant, Subscriber, or User receives access to the Service for review and handling in accordance with the applicable Code of Ethics, Code of Conduct, or governing rules of that organization.  "An authorized User may not transfer access to the Service through another Access Entity while a review or disciplinary matter related to an alleged violation of the MRED Code of Conduct remains pending or unresolved.

**SECTION 13:     APPEALS COMMITTEE**

  The MRED Appeals Committee shall be comprised of individuals appointed by the MRED Board of Managers. The Board of Managers may appoint individuals from among Participants, Subscribers, Users, or other qualified representatives affiliated with organizations receiving services from MRED, including Associations/Boards, MLS Entities, or International Real Estate Entities, as it deems appropriate.

**SECTION 14:     FORMS**

Forms to be used in any Appeal shall be as promulgated from time to time by the Service.

**SECTION 15:     INITIATION OF APPEAL**

Any Participant, having reason to believe that the fine imposed on that Participant by the Service is without merit, may file an Appeal of the fine in writing, accompanied by the proof of correction and payment of fine, using a Request for Appeal Form provided that the Appeal is filed within 20 days of the fine being levied on the Participant.

**SECTION 16:     FAILURE TO APPEAL A FINE OR CORRECT AN ENTRY AFTER A FINE**

If a Participant fails to appeal a fine within the 20-day time period or pay the fine and correct the entry, there shall be an assessment of a $200.00 fine. Thereafter, every 30 days another $200.00 fine may be levied if the entry is not corrected. There shall be no appeal rights from any subsequent fines.

**SECTION 17:     APPEAL HEARING PANELS**

The Appeal Hearing Panel shall select a Chairperson. In the event an Appeal Hearing Panelist is disqualified from any Appeal Hearing, the Appeal Hearing Panel shall proceed with no fewer than 3 members. The Chairperson of any Hearing Panel shall only vote to make or break a tie.

**SECTION 18:     REQUESTS FOR DOCUMENTS**

The Chairperson of any Appeal Hearing Panel may request any documents from an appellant, and appellant shall provide same, that are deemed relevant and necessary to the determination of such appeal. Any failure to provide such requested documents shall be deemed a waiver of all Appeal rights.

**SECTION 19:     CONTINUANCES**

Any Participant having an Appeal is entitled to one continuance of the Hearing date for the Appeal upon reasonable notice to the Appeal Hearing Panel of the need for said continuance. If the Participant fails to appear at the Appeal Hearing and does not request a continuance, the Appeal Hearing shall proceed as scheduled. If the Participant has requested a continuance of the Appeal Hearing, the Appeal Hearing shall be continued to the next regularly scheduled Hearing date for the Appeal Hearing Panel. The Participant shall be notified of the date, place and time of the next Hearing. If the Participant fails to appear before the Appeal Hearing Panel for the second scheduled Appeal Hearing pursuant to the continuance, the Participant forever waives the right to appeal that fine which is the subject of said Appeal.

**SECTION 20:     ATTENDANCE AT APPEAL HEARINGS**

The Broker Owner/Manager and the Listing Broker who are the subject of a fine and legal counsel for same may attend an Appeal Hearing.

**SECTION 21:     APPEAL TO BOARD OF MANAGERS**

Within 20 days of the date of the decision of an Appeal Hearing Panel, an appellant may appeal the decision of the Appeals Hearing Panel to the Board of Managers of the Service. The Participant shall submit the basis of any Appeal in writing, accompanied by an "appearance fee" of $95.00, payable to the Service. The Participant will appear before the Board of Managers on the date, place and time of the scheduled appeal hearing. There shall be no continuance of a scheduled hearing date. Failure to appear before the Board of Managers on the scheduled date shall result in a forfeiture of the appearance fee.  The decision of the Board of Managers shall be final and there shall be no further rights of appeal.

### SECTION 22:  APPEAL HEARING PROCEDURES

Unless otherwise stated herein, the procedures for all Appeal Hearings will be approved by the MRED Board.

## SECTIONS 23-25:  CONFIDENTIALITY OF MRED INFORMATION
### SECTION 23:  CONFIDENTIALITY OF MRED INFORMATION

Any information provided by the Service to Participants shall be considered official information of the Service. Such information shall be considered confidential and exclusively for the use of authorized Participants, Subscribers and Users of the Service in accordance with these Rules and Regulations and any applicable agreements with MRED.

Access to and use of Service information shall be limited to those individuals who are duly authorized under these Rules and Regulations, applicable governing agreements, and the licensing, certification, or professional authorization requirements of the jurisdiction in which they operate.

### SECTION 24:  SERVICE NOT RESPONSIBLE FOR ACCURACY OF INFORMATION

The information published and disseminated by the Service is communicated verbatim, without change by the Service, as placed into the Service by the Participants. The Service does not verify the information provided and disclaims any responsibility for its accuracy. Each Participant agrees to hold the Service harmless against any liability arising from any inaccuracy or inadequacy of the information such Participant provides.

### SECTION 25:  ACCESS TO COMPARABLE AND STATISTICAL INFORMATION

Association/Board Participants who are actively engaged in real estate brokerage, management, mortgage financing and appraising, land development, or building, but who do not participate in the Service, are nonetheless entitled to receive by purchase all information other than current listing information that is generated wholly or in part by the Service including "comparable" information, "sold" information, and statistical reports.

Unless ordered by a court of competent jurisdiction otherwise, this information is provided for the exclusive use of Participants, Subscribers, Users and other authorized recipients who are engaged in the real estate business or related professional services, and may not be transmitted, retransmitted, or otherwise provided to any unauthorized individual, office, or firm except as otherwise permitted under these Rules and Regulations or applicable governing agreements.

## SECTION 26: COPYRIGHT
### SECTION 26:  OWNERSHIP OF SERVICE COMPILATION AND COPYRIGHTS

By the act of submission of any property listing data to the Service, Participant represents that the Participant has been authorized to grant and also thereby does grant authority for the Service to include the property listing data in the copyrighted Service Compilation and also in any statistical report on "Comparables."

The term Service Compilation includes any format in which property listing data is collected and disseminated to Participants including but not limited to computer data base, Internet, card file, or any other format whatsoever whether electronic or otherwise.

All right, title, and interest in all versions of every Service Compilation created by the Service and the copyrights therein, shall at all times remain vested in the Service, except as provided in the Participant Agreement and Subscriber Agreement. However, consistent with the licenses in the Participant Agreement, Participant Firm may distribute content from its own listings, regardless of whether it licensed or assigned content related to its own listings to MRED.   MRED may register copyrights in its compilation and underlying works owned by MRED and sue to prevent infringement of them by third parties.

### SECTION 26.1:  MRED DIGITAL MILLENNIUM COPYRIGHT ACT (DCMA) POLICY

Midwest Real Estate Data ("MRED") complies with the provisions of the Digital Millennium Copyright Act ("DMCA"). For purposes of said compliance, the name, title, email address, postal address and phone number of a designated broker for MRED (the "MRED DMCA Agent") to receive notification of claimed infringement under Title II of the DMCA is posted on the home page of mredllc.com, in the form of a DMCA Notice. Every Participant and subscriber utilizing MRED listing data must post the exact same DMCA Notice on its website—by doing so, the Participant/subscriber agrees to designate the MRED DMCA Agent as its DMCA agent for any takedown requests. Accordingly, any concerns regarding the use of copyrighted material on any MRED or Participant/subscriber web site shall be directed to the MRED DMCA Agent, who will accordingly respond to reports alleging copyright infringement.

The DMCA specifies that all infringement claims must be in writing (either electronic mail or paper letter) and must include the following:

1. A physical or electronic signature of the copyright holder or a person authorized to act on his or her behalf;

2. A description of the copyrighted work claimed to have been infringed and multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site;

3. A description of the material that is claimed to be infringing or to be the subject of infringing activity, and information reasonably sufficient to permit the service provider to locate the material;

4. Information reasonably sufficient to permit the service provider to contact you, such as an address, telephone number, and, if available, an electronic mail address;

5. A statement that you have a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its broker, or the law; and

6. A statement that the information in the notification is accurate, and under penalty of perjury, that you are authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

Upon notification of a possible copyright violation, the MRED DMCA Agent will expeditiously remove the material in question and inform the Participant and/or subscriber responsible for its posting, or else contact the Participant and/or subscriber to request removal if MRED is unable to remove the material in question, at which point the Participant and/or subscriber must expeditiously remove the material. If agreement cannot be reached between the MRED DMCA Agent and the Participant and/or subscriber, the matter will be brought before MRED's Board of Managers for resolution. Material found to be in violation of copyright law will remain removed. If, however, material is found not to be in violation of copyright law, it may be reposted. The MRED DMCA Agent will be responsible for communicating with the claimant regarding the final disposition of the claim of copyright infringement. The MRED DMCA Agent will keep a record of all claims of copyright violation. Participants and/or subscribers who receive three complaints or Participants and/or subscribers who refuse to remove material when requested will be barred from use of the MRED MLS system.

A Participant and/or subscriber may submit a counter notification if he disputes the fact that the posted material is infringing. Upon receipt of a counter notification, the MRED DMCA Agent will promptly notify claimant with a copy of the counter notification and inform claimant that MRED will replace the removed material in 10 business days. MRED will replace the removed material not less than ten, nor more than fourteen, business days following receipt of the counter notice, unless the MRED DMCA Agent first receives notice that the claimant has filed an action seeking a court order to restrain the infringing party from engaging in infringing activity on the MRED MLS system.

Please note that the MRED DMCA Agent is provided to Participants, free of charge, solely as a beneficial service, and MRED, by doing so, in no way takes on liability for any copyright infringement, nor does such service alter traditional copyright infringement liability principles in any way. Therefore, the role of the MRED DMCA Agent is solely to notify Participants and/or subscribers of any copyright infringement claim.  Participants and/or subscribers who post infringing content may nonetheless be liable to the copyright owner for copyright infringement according to traditional copyright liability principles.

### SECTION 27:    USE OF INFORMATION

Use of information developed by or published by the Service is strictly limited to the activities authorized under a Participants licensure(s) or certification and unauthorized uses are prohibited. Further, none of the foregoing is intended to convey "Participation" or "Membership" or any right of access to information developed by or published by the Service where access to such information is prohibited by law.

### SECTION 28:    DISPLAY

Participants and those persons affiliated as licensees with such Participants shall be permitted to display the Service's Compilation of listing information to prospective purchasers only in conjunction with their ordinary business activities of attempting to locate ready, willing, and able buyers or sellers for the properties in the Service Compilation.

### SECTION 29:    REPRODUCTION

Participants or their affiliated licensees shall not reproduce any Service's Compilation of listing information or any portion thereof except in the following limited circumstances:

Participants or their affiliated licensees may reproduce from the Service's compilation of listing information, and distribute to prospective purchasers, a reasonable number of single copies of property listing data contained in the Service compilation which relate to any properties in which the prospective purchasers are, or may, in the judgment of the Participants or their affiliated licensees, be interested.  Nothing contained herein shall be construed to preclude any Participants from utilizing, displaying, distributing, or reproducing property listing sheets or other Compilations of data pertaining exclusively to properties currently listed for sale with the Participant.

Any Service information delivered electronically or in any other form or format is for the exclusive use of the Participants and those licensees affiliated with the Participants who are authorized to have access to such information. Such information may not be transmitted, re-transmitted or provided in any manner to any unauthorized individual, office or firm.

None of the foregoing shall be construed to prevent any individual legitimately in possession of current listing information, "sold"

information, "comparable", or statistical information from utilizing such information to support an estimate of value on a particular property for a particular client. However, only such information that has deemed to be non-confidential and necessary to support the estimate of value may be reproduced and attached to the report, as supporting documentation. Any other use of such information is unauthorized and prohibited by these Rules and Regulations.

It is intended that the Participant be permitted to provide prospective purchasers with listing data relating to properties which the prospective purchaser has a bona fide interest in purchasing or in which the Participant is seeking to promote interest. The term "reasonable," as used herein, should therefore be construed to permit only limited reproduction of property listing data intended to facilitate the prospective purchaser's decision-making process in the consideration of a purchase. Factors which shall be considered in deciding whether the reproductions made are consistent with this intent, and thus "reasonable" in number, shall include, but are not limited to, the total number of listings in the Service's Compilation of listing information, how closely the types of properties contained in such listings accord with the prospective purchaser's expressed desires and ability to purchase, whether the reproductions were made on a selective basis, and whether the type of properties contained in the property listing data is consistent with a normal itinerary of properties which would he shown to the prospective purchaser.

Note: Effective October 1, 2011

MRED prohibits the delivery of Broker Only Information to the general public, with the exception of seller clients, administrative staff and technical vendors. "Broker Only Information" is defined as the following data: Broker Remarks, Showing Instructions, Lockbox Codes, and Expiration Dates. Violation of this rule will result in an automatic fine of $250.00 per reported occurrence.

### SECTION 29.1:   SHARING OF MLS ID

Dissemination of your MLS ID number with non-subscribers except for authorized vendors or required contract disclosures is strictly prohibited.

## SECTION 30: USE OF SERVICE INFORMATION
### SECTION 30:      LIMITATIONS ON USE OF SERVICE INFORMATION

Use of information from the Service's Compilation of current listing information, from the Participant's "Statistical Report," or from any "sold" or "comparable" report of the Service for public mass media advertising by a Participant or in other public representations by a Participant may not be prohibited.

However, any printed or non-print forms of advertising or other forms of public representations must clearly demonstrate the period of time over which such claims are based and must include the following notice:

"This representation is based in whole or in part on data supplied by Midwest Real Estate Data, LLC for the period (date) through (date). Midwest Real Estate Data, LLC does not guarantee nor is it in any way responsible for its accuracy. Data maintained by Midwest Real Estate Data LLC may not reflect all real estate activity in the market."

## SECTION 31:  BROKER RECIPROCITY / IDX

These policies are available through the MLS GRID at [MLS Grid IDX Rules.](MLS Grid IDX Rules.)

Sellers may elect to withhold their property's listing from display on the internet outside of MRED MLS platform systems. Those sellers who are making this choice shall execute option A of Appendix B: Seller Opt-Out form with their listing broker.

Sellers may elect to withhold display of the listing's property address, from the internet outside of MRED MLS platform systems. Those who are making this choice shall execute option B of Appendix B: Seller Opt-Out Form with their listing broker.

## SECTION 32:  USE OF TERMS
### SECTION 32.1:   USE OF TERMS

The acceptable use of the term "Service" or "MLS" or "Multiple Listing Service" is for a Participant to indicate they are a Participant of Midwest Real Estate Data LLC.

As used in Sections 32 of these Rules, the term "Participant" includes a Participant's affiliated non-brokers and sales licensees- except when the term is used in the phrases "Participant's consent" and "Participant's oversight, supervision and accountability".

No Participant or Non-Participant shall indicate or imply or infer in any medium (electronic or otherwise) that the Participant or Non-Participant is or operates a multiple listing service. Participants and Non-Participants shall not use the term "multiple listings service" the acronym "MRED" or any derivatives in company/firm names. No Participant or Non-Participant shall indicate, imply or infer in any manner that the Participant is a multiple listing service or that the public has access to or may search the multiple listing service (e.g. "Search the MLS" or "Access/Search MRED/Midwest Real Estate Data, LLC") on their own Web sites or in any advertising media. All

existing uses of such terms in the previously stated manner are subject to the penalties stated in this rule.

**SECTION 32.2:        GRANDFATHERING COMPANY NAMES**

If the Participant's office, firm, corporation, limited liability company or partnership or other legally recognized business entity name was duly registered with the applicable governmental authority and accepted by the Association/Board, MLS Entity, International Real Estate Entity, or other organization through which the Participant obtained access to the Service at the time the Participant was admitted to the Service prior to April 1, 2008, the Participant may continue to advertise using such company name, provided the Participant complies with all other applicable provisions of MRED's Rules and Regulations and applicable law.

**SECTION 32.3:        RULE VIOLATION PENALTIES**

Any Participant or Non-Participant who continues to operate a website, maintain a corporate name, uses the words MRED or derivatives in their name or is otherwise in contravention of Section 36.1 shall be fined $500.00 for the first offense, $1,000.00 for the second offense and $2,500.00 for the third offense.  In each case, the Participant or Non-Participant shall remove the offending language that violates Section 32.1 within seventy-two (72) hours of written notice from MRED.  Failure to do so will result in such Participant or Non-Participant's data feeds and agreements with such Participant or Non-Participant or third-party vendor servicing such Participant or Non-Participant to then cease until full compliance by such Participant or Non-Participant with this Rule.  Any further non-compliance would result in termination of the Participant's Service access privileges.

# SECTION 33: VOW RULES

These policies are available through the MLS GRID at MLS Grid VOW Rules.

Sellers may elect to withhold their property's listing from display on the internet outside of MRED MLS platform systems. Those sellers who are making this choice shall execute option A of Appendix B: Seller Opt-Out form with their listing broker.

Sellers may elect to withhold display of the listing's property address from the internet outside of MRED MLS platform systems. Those who are making this choice shall execute option B of Appendix B: Seller Opt-Out Form with their listing broker.

# SECTION 34: MOBILE AND ELECTRONIC DISPLAY DEVICES
### SECTION 34:1:   DEFINITIONS

As used in this Section and applied in these Rules and Regulations:

a) Mobile Devices are defined as portable instruments capable of accessing the Internet and include for example but are not limited to the following: smart phones, mobile phones, handheld devices, handheld computers, mobile Internet devices, PDAs (personal digital assistants) and Blackberrys.

b) Electronic Display Devices are defined as instruments that exhibit information and include for example but are not limited to the following:  digital signage, electronic display boards, public facing monitors and electronic kiosks.

### SECTION 34.2:   TRANSMISSION OF LISTING CONTENT

Participants and their brokers may transmit listing content according to the following guidelines:

a) The VOW database may be published via Mobile Devices so long as said publication is done in accordance with the provisions of Section 34 of these Rules and Regulations.

b)  The IDX database may be published via Mobile Devices and/or Electronic Display Devices so long as said publication is done in accordance with the provisions of Sections 31 through 34 (the "Broker Reciprocity" sections) of these Rules and Regulations.

c) Notwithstanding the foregoing as specified in Section 34.2 (b) regarding IDX data published via Mobile Devices, the requirements to post logos and display the MRED-approved icon is waived specifically for Mobile Devices only. The following language shall suffice for MRED's copyright notice: "this listing is part of the MRED data exchange program provided courtesy of [the listing office's name]."  This language will be delivered via text or voice as part of the data being delivered to the mobile device for each listing.

## SECTION 35: USE OF CONTACT INFORMATION POLICY
### SECTION 35.1: DEFINITION OF APPROPRIATE/INAPPROPRIATE USE

The purpose of user contact information (address, phone number, fax number, email address, etc.) contained within MRED systems is to aid in the transaction of real estate business.

Contact Information is prohibited from being used for solicitation of services outside the scope of the transaction of real estate business. Inappropriate use of contact information (email address, etc.) includes, but it not limited to:

- Mass solicitation for employment/recruiting.
- Unsolicited mass distribution of listings and/or other marketing materials to MRED system users.
- Mass offering of products and/or services not related to the transaction of real estate business.
- Spam
- Downloading of any form of contact information (email address, phone number, fax number, etc.) for a purpose other than transacting real estate business is strictly prohibited.

In the event an individual email is sent from one MRED system user to another, it must also comply with Section 9.8: E-mail/Use of the Term "MRED" as found in these MRED Rules and Regulations.

### SECTION 35.2: REMEDY

Every system user and/or vendor is restricted from utilizing contact information contained in MRED's systems in the prohibited manner(s) detailed above. In the event of inappropriate usage of contact information, MRED reserves the right to suspend and/or terminate access to MRED systems as MRED sees fit to remedy said inappropriate use. MRED reserves the right to additionally pursue all available remedies as detailed in MREDs Rules and Regulations and in accordance with applicable law.

## SECTION 36 ACCESS TO OTHER MLS'

Access to data of Other MLSs is subject to the following provisions:
### SECTION 36.1 ACCESS TO LISTING DATA IN OTHER MLS'

Participant and its salespeople may have access to the active listings of an Other MLS through the DSC according to the terms of that Other MLS's rules and regulations. Access to active listings in other DSC MLSs is available only to those Participants entitled to access to active listings in MRED's systems.
### SECTION 36.1.2 NO INPUT OR IDX/BROKER RECIPROCITY

Neither Participant nor its salespeople are entitled to (i) input any listing content into an Other MLS Database or (ii) use any portion of an Other MLS Database on any IDX or Broker Reciprocity$^{SM}$ web site of Participant. These privileges are limited to brokers and licensees who become Participants and subscribers directly to the Other MLS.

### SECTION 36.2 APPLICATION OF OTHER MLS RULES

If the Participant accesses or allows any of its salespeople to access the listing data of an Other MLS, Participant becomes bound by the rules and regulations of that Other MLS with regard to that listing data and with regard to any transaction arising from use of that data. The following provisions also apply.

36.2.1 **Priority of Rules and Agreements.** Access by Participant and its salespeople to the Other MLS Database is subject at all times to the limitations set out in the Other MLS Policies. In the event of an apparent conflict between the Other MLS Policies and these rules, Participant's obligations and rights shall be determined, in order of precedence, by the Other MLS Policies, by any agreement between Participant or its salespeople and the Other MLS, and by these rules.

36.2.2 **Use limited.** Participant and its salespeople may use the Other MLS Database solely for the purpose of selling, listing, leasing, and appraising real estate as provided in the Other MLS Policies. Except as expressly provided in the Other MLS Policies, Participant and its salespeople may not copy, create derivative works of, distribute, perform, or display the Other MLS Database or any part of it.

36.2.3 **Confidentiality.** Participant and its salespeople shall maintain the confidentiality of all user IDs and passwords and of the Other MLS Database; Participant, its salespeople, and its employees shall not provide IDs or passwords to any third party. To maintain the confidentiality of all user IDs, passwords, and the Other MLS Database, Participant, its salespeople, and its employees shall take the greater of reasonable care or the care Participant takes to protect its own confidential information.

36.2.4 **Consideration of alleged rule violations.** Participant must submit to the jurisdiction of the Other MLS with regard to any alleged violation of the Other MLS Policies, whether relating to a listing record in the Other MLS Database or to another broker Participant in the Other MLS. Participant remains subject to the rules of MRED as well. As a result, it is possible that the same

act or acts could constitute a violation of policy in both the Other MLS and MRED, and that Participant may be sanctioned in both MLSs if Participant is found culpable. Participant consents to Other MLSs communicating the final resolutions of disciplinary proceedings to all DSC MLSs.

**36.2.5** **Fines.** The Other MLS may collect fines from Participant for violation of the Other MLS Policies. Payment terms for fines are set out in the Other MLS Policies. The Other MLS may amend its schedule of fines and terms for collecting them at its sole discretion at any time. In the event Participant fails to pay a fine levied by the Other MLS, the Other MLS may discontinue further access to the Other MLS database by Participant and its licensees.

**36.2.6** **Other sanctions.** In addition to fines, Participant may be subject to other sanctions levied by MRED and by the Other MLS, including discontinued access to the DSC, the Other MLS Database, or MRED itself.

### SECTION 36.3    DISCLAIMER OF WARRANTIES

The Other MLS provides the Other MLS data on an "as is," "as available" basis. Use of the Other MLS data and the information available through the Other MLS data are at Participant's sole risk. MRED and the Other MLS do not warrant that the Other MLS data will be uninterrupted or error-free, accurate, complete, current or reliable.

### SECTION 36.4    SAVED INFORMATION

Saved Information in the DSC may not always be available to Participant and its salespeople and may become available to unauthorized persons. MRED and the Other MLS are not liable for unauthorized access to or loss of Saved Information.

## APPENDIX A: SANCTIONS

**Internal Remedies for Service Rules Violations**

1. A fine of up to $5,000.
2. Suspension of Service privileges.
3.Termination of Service privileges.

**Judicial Remedies for Data Misappropriation and Copyright Infringement**

1.  Injunctive relief.

2.  Statutory damages, which may range from $750 to $30,000, in the discretion of the court, or up to $150,000 if the infringement is willful.

3.  Actual damages and lost profits.

4.  Attorney's fees and costs, at the discretion of the court.
Potential criminal penalties

**APPENDIX B: SELLER OPT-OUT FORM**

CHECK ONE:

_____ OPTION A - I HAVE ADVISED MY BROKER OR SALES BROKER I DO NOT WANT THE LISTED PROPERTY TO BE DISPLAYED ON THE INTERNET; OR

_____ OPTION B - I HAVE ADVISED MY BROKER OR SALES BROKER I DO NOT WANT THE ADDRESS OF THE LISTED PROPERTY TO BE DISPLAYED ON THE INTERNET.

I UNDERSTAND AND ACKNOWLEDGE THAT, IF I HAVE SELECTED OPTION A, CONSUMERS WHO CONDUCT SEARCHES FOR LISTINGS ON THE INTERNET WILL NOT SEE INFORMATION ABOUT THE LISTED PROPERTY IN RESPONSE TO THEIR SEARCH.

DATE: _____

_____
SIGNATURE OF SELLER

_____
SIGNATURE OF SELLER

**APPENDIX C:**   **SYSTEMS ACCESS POLICY**

**APPENDIX D:** USER PRIVILEGES POLICY

**APPENDIX E:** POLICY ON THE USE OF CONTACT INFORMATION

**APPENDIX F: CODE OF CONDUCT POLICY**