**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| ZILLOW GROUP, INC. and ZILLOW, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> MIDWEST REAL ESTATE DATA LLC, COMPASS, INC., and COMPASS ILLI-NOIS, INC., <br><br> *Defendants*. | Case No. 1:26-cv-05451 <br> Hon. Judge John J. Tharp |

**DEFENDANT MIDWEST REAL ESTATE DATA LLC'S
<u>REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY
ACTION</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.     Zillow's claims about IDX and VOW feed access undoubtedly fall within the IDX and VOW Agreements' arbitration clauses, and MRED may enforce those contracts through arbitration as a third-party beneficiary. ................................................................................ 2

     A.     This case plainly "relates to" Zillow's access to MRED's IDX and VOW feeds, the very things the Agreements govern. ........................................................................ 3

     B.     The IDX and VOW Agreements grant MRED the right to enforce all terms of those Agreements, so MRED can enforce the arbitration clauses here. ........................... 5

II.     The Participation Agreement does not apply to disputes over Zillow's access to MRED's IDX and VOW feeds and does not bar arbitration because it contains only a narrowly worded *permissive* forum selection clause. .......................................................................... 10

     A.     The Participation Agreement does not address—and expressly requires a separate agreement for—access to each of MRED's IDX and VOW feeds. ......................... 10

     B.     Even if the Participant Agreement were relevant, its forum selection clause is narrow and permissive and would not override the IDX and VOW Agreements' broad and mandatory arbitration clause. ................................................................ 11

III.     Zillow has already obtained preliminary relief and must proceed to arbitration. .............. 13

IV.     The Court should stay this case pending arbitration. .......................................................... 14

CONCLUSION ......................................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Page**

*AlliedSignal, Inc. v. B.F. Goodrich Co.*,
   183 F.3d 568 (7th Cir. 1999) ...................................................................................4-5

*Anatomic & Clinical Lab'y Assocs., P.C. v. Cigna Health & Life Ins. Co.*,
   2023 WL 6392732 (M.D. Tenn. Sept. 29, 2023) .......................................................7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) .................................................................................................13

*Benton v. Vanderbilt Univ.*,
   137 S.W.3d 614 (Tenn. 2004) ....................................................................................7

*Bradford-Scott Data Corp. v. Phys. Comp. Network, Inc.*,
   128 F.3d 504 (7th Cir. 1997) ...................................................................................15

*Carder v. Carl M. Freeman Cmtys., LLC*,
   2009 WL 106510 (Del. Chan. Jan. 5, 2009) ..............................................................7

*Coinbase, Inc. v. Suski*,
   602 U.S. 143 (2024) ...................................................................................................9

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
   269 F.3d 187 (3d Cir. 2001) ...................................................................................6-7

*Falcon Tankers, Inc. v. Litton Sys., Inc.*,
   300 A.2d 231 (Del. Super. 1972) ...............................................................................9

*Finlay v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*,
   1987 WL 5237 (N.D. Ill. Jan. 5, 1987) ......................................................................8

*G&G Closed Circuit Events, LLC v. Castillo*,
   2017 WL 1079241 (N.D. Ill. Mar. 22, 2017) ...................................................... 14-15

*GNH Grp., Inc. v. Guggenheim Holdings, L.L.C.*,
   2020 WL 4287358 (D. Del. July 27, 2020) ................................................................9

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
   817 F.2d 75 (9th Cir. 1987) .....................................................................................12

*In re Currency Conversion Fee Antitrust Litig.*,
   265 F. Supp. 2d 385 (S.D.N.Y. 2003)........................................................................5

*In re Evanston Nw. Corp. Antitrust Litig.*,
   2015 WL 13735423 (N.D. Ill. Sept. 4, 2015).............................................................4

*In re Paragon Offshore PLC*,
   588 B.R. 735 (D. Del. 2018).......................................................................................8

*In re Remicade (Direct Purchaser) Antitrust Litig.*,
   938 F.3d 515 (3d Cir. 2019) .......................................................................................5

*James & Jackson, LLC v. Willie Gary, LLC*,
   906 A.2d 76 (Del. 2006) .............................................................................................9

ii

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
  174 F.3d 907 (7th Cir. 1999) ...................................................................................... 3

*LCA, Inc. v. Sharp Elecs. Corp.*,
  2000 WL 1222044 (N.D. Ill. Aug. 22, 2000) ........................................................... 4-5

*Morales-Posada v. Cultural Care, Inc.*,
  141 F.4th 301 (1st Cir. 2025) ................................................................................. 6, 8

*Neblock v. Gene by Gene, Ltd.*,
  2026 WL 1398928 (N.D. Ill. May 19, 2026) ............................................................. 13

*Osborn ex rel. Osborn v. Kemp*,
  991 A.2d 1153 (Del. 2010) ......................................................................................... 9

*Peters v. Kaleyra*,
  2024 WL 4333143 (D. Del. Sep. 27, 2024) ............................................................. 3, 8

*Popovich v. McDonald's Corp.*,
  189 F. Supp. 2d 772 (N.D. Ill. 2002) ...................................................................... 13

*Quicken Loans Inc. v. RE/MAX, LLC*,
  216 F. Supp. 3d 828 (E.D. Mich. 2016) .................................................................. 12

*Quinlan v. O'Brien*,
  2026 WL 93395 (Del. Jan. 13, 2026) ......................................................................... 5

*Quintillion Subsea Ops., LLC v. Maritech Project Servs., LTD.*,
  2023 WL 139663 (S.D. Tex. Jan. 6, 2023) ................................................................. 7

*Radzanower v. Touche Ross & Co.*,
  426 U.S. 148 (1976) ................................................................................................ 12

*S+L+H S.p.A. v. Miller-St. Nazianz, Inc.*,
  988 F.2d 1518 (7th Cir. 1993) .................................................................................. 3

*Shaffer v. Stratton Oakmont, Inc.*,
  756 F. Supp. 365 (N.D. Ill. 1991) ............................................................................. 8

*Sierra Rutile Ltd. v. Katz*,
  937 F.2d 743 (2d Cir. 1991) .................................................................................... 15

*Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*,
  1 F.3d 639 (7th Cir. 1993) ...................................................................................... 10

*TMIP Participants LLC v. DSW Grp. Holdings LLC*,
  2016 WL 490257 (Del. Ch. Feb. 4, 2016) ............................................................... 12

*Varnes v. Chrysler Fin. Corp.*,
  2007 WL 4125830 (N.D. Ind. Nov. 15, 2007) ......................................................... 15

*Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*,
  474 F.3d 966 (7th Cir. 2007) .................................................................................. 14

*Weber v. PACT XPP Techs., AG*,
  811 F.3d 758 (5th Cir. 2016) .................................................................................. 12

iii

*WMS Gaming, Inc. v. IGT,*
31 F. Supp. 3d 974 (N.D. Ill. 2014).......................................................................................... 15

*Yellow Freight Sys., Inc. v. Donnelly*,
494 U.S. 820 (1990) ................................................................................................................ 12

**INTRODUCTION**

Zillow's opposition confirms that this Court should compel arbitration, decline to address further requests for injunctive relief, and stay all non-arbitrable claims pending arbitration.

First, Zillow agreed to arbitrate any controversies arising out of or relating to the IDX and VOW Agreements (the "Agreements"), which afford Zillow access to MRED's IDX and VOW feeds and require it to follow MRED's rules governing access to those feeds. Zillow's antitrust claims plainly relate to those Agreements, which allow Zillow to access MRED's IDX and VOW feeds and allow MRED to enforce the rules governing that access. Zillow's argument that its antitrust claims are not *merely* about the Agreements drastically understates the role of IDX and VOW access and rules enforcement. Still, Zillow's concession that its claims relate to the Agreements shows that the arbitration clauses apply.

Second, MRED can enforce the arbitration clauses since the Agreements designate MRED as an intended third-party beneficiary that can enforce the Agreements' terms. Zillow asks the Court to ignore those provisions and find that MRED cannot enforce the arbitration clauses since other language in other sentences of the Agreements refers only to "parties." But courts cannot overlook the language of agreements as a whole, let alone the most relevant language, when interpreting contracts or arbitration clauses. Still, the Agreements' references to "parties" are fully consistent with MRED's right to enforce the arbitration clauses. By confirming MRED's status as a third-party beneficiary entitled to enforce all terms, the Agreements make clear that MRED can act (and be bound) as a party and render unnecessary clunky references to "the parties and third-party beneficiaries" throughout the rest of the Agreements. The nature of intended third-party beneficiary status, as well as treatises and case law, all confirm that MRED is entitled to enforce the arbitration clauses.

1

Third, the Participant Agreement's forum selection clause does not change any of that since Zillow's claims do not implicate that agreement. The Participant Agreement governs access to MRED's listing database but does not itself allow Zillow to display MRED's IDX and VOW data on its website or applications. In fact, it expressly states that a separate agreement is necessary for IDX and VOW access. Those separate agreements are the IDX and VOW Agreements. Thus, since Zillow's antitrust claims have nothing to do with its ability to access MRED's databases (which it can still do) but instead address its access to the IDX and VOW feeds, the Agreements are the contracts implicated here, not the Participant Agreement. Still, even if Zillow could show that the forum selection clause was implicated, its language—as courts addressing similar language have held—is permissive, meaning that disputes *can* but *need not* be resolved in the forums it cites. The arbitration clauses in the Agreements, in contrast, are mandatory and thus would control.

Finally, after compelling arbitration, the Court should decline to address the preliminary injunction motion and should stay all non-arbitrable claims. Courts may grant injunctive relief pending arbitration, but only when necessary to preserve the status quo. Here, the Court *already* maintained the status quo through its issuance of a TRO that will remain in effect until an arbitrator decides whether emergency relief should continue. So there is no reason to grant further relief. The Court should also stay all non-arbitrable claims, as parallel proceedings would intrude on the arbitrator's jurisdiction and create a strong risk of inconsistent rulings.

## ARGUMENT

I. **Zillow's claims about IDX and VOW feed access undoubtedly fall within the IDX and VOW Agreements' arbitration clauses, and MRED may enforce those contracts through arbitration as a third-party beneficiary.**

Under the Agreements, Zillow obtained access to MRED's IDX and VOW feeds and agreed to comply with MRED's IDX and VOW rules and pay a licensing fee. Zillow's antitrust claims hinge on its access to the IDX and VOW feeds and must be arbitrated under the

2

Agreements' arbitration clauses. In those Agreements, Zillow expressly empowered MRED to enforce all provisions, including the arbitration clauses.

### A. This case plainly "relates to" Zillow's access to MRED's IDX and VOW feeds, the very things the Agreements govern.

MRED gives access to its listings data to MLS Grid, MRED's technology vendor, which in turn allows Zillow to access MRED's IDX and VOW feeds through the Agreements. *See* Haran Decl. ¶¶ 5–9 (Dkt. 30-1); *see* IDX Agreement § II (Dkt. 30-2) (IDX feed license); VOW Agreement § II (Dkt. 30-3) (VOW feed license). Those Agreements contain arbitration clauses stating that "[a]ny controversy or claim arising out of or relating to this Agreement … shall be settled by binding arbitration." IDX Agreement § XII(c); VOW Agreement § XII(c). As courts repeatedly hold, "arising out of or relating to" language is "extremely broad and capable of expansive reach." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999); *see also* Mot. at 2, 9, 12–13 (Dkt. 30) (collecting cases). The language thus covers "all possible claims that touch on the rights set forth in the[] contract," *Peters v. Kaleyra*, 2024 WL 4333143, at *5 (D. Del. Sep. 27, 2024), including antitrust claims, *see* Mot. at 13–14 (collecting cases).

Zillow's claims undoubtedly *relate to* or *touch on* the Agreements. This entire case centers on Zillow's "access" to MRED's IDX and VOW feeds for display "on its own platforms," which Zillow deems "essential" and "critical." Compl. ¶¶ 1, 44–45 (Dkt. 1). More specifically, this case turns on Zillow's claim that MRED is improperly enforcing rules governing Zillow's IDX and VOW feed access. *See, e.g., id.* ¶¶ 97–109, 188–91. But Zillow's right to access the IDX and VOW feeds derives entirely from the Agreements. *See S+L+H S.p.A. v. Miller-St. Nazianz, Inc.*, 988 F.2d 1518, 1524 (7th Cir. 1993) (a claim "'that draws its very essence from the fact of and performance under'" an agreement necessarily "arises out of and relates to the Agreement … even though the claim may be statutory in nature"). And in those Agreements, Zillow agreed to follow

the very rules that form the core of this dispute. *See, e.g.*, IDX Agreement § II (Zillow's access is "subject to the MLS GRID Rules … Any other use of the MLS GRID Data is hereby prohibited."); *id.* § V(f)(vi)–(vii) (Zillow "shall" not use data "for any purpose" that is "inconsistent with … the MLS GRID Rules"); IDX Agreement §§ II, V(f)(vi)–(vii) (similar); MLS Grid IDX Rule 9 (Dkt. 30-4) ("objective criteria" rule); MLS Grid VOW Rule 13 (Dkt. 30-5) (same). So, there is simply no credible basis for concluding that the claims are not within the scope of the arbitration clauses.

Zillow's arguments only confirm that the arbitration clauses apply. It says this case "is not *merely* about contract performance" and that "MRED's rule-making and rule-enforcement process was but *one tool*" underlying its complaints. Opp. at 12 (Dkt. 12). That far understates the central role of the Agreements and the rules Zillow agreed to follow—absent which none of Zillow's claims would exist—but is nevertheless a concession that Zillow's claims relate to the Agreements. That Zillow's claims may *also* relate to other things is beside the point. *See, e.g.*, *LCA, Inc. v. Sharp Elecs. Corp.*, 2000 WL 1222044, at *3 (N.D. Ill. Aug. 22, 2000) ("simply because Sharp's conduct may violate the RPA … does not mean it does not also arise from the … Agreement").

Nor does Zillow cite any case supporting its conclusion. On the contrary, in *AlliedSignal, Inc. v. B.F. Goodrich Co.*, 183 F.3d 568 (7th Cir. 1999), the sole case Zillow cites declining to compel arbitration of antitrust claims, a supplier that sought to merge with another supplier tried to compel arbitration of a customer's challenge to the merger under a contract that "had nothing to do with either the [customer] or that [supplier] buying or selling anything from each other—it was just about seeking business opportunities together." *In re Evanston Nw. Corp. Antitrust Litig.*, 2015 WL 13735423, at *7 (N.D. Ill. Sept. 4, 2015). Here, by contrast, Zillow's antitrust claims turn exclusively on its access to the IDX and VOW fees and MRED's enforcement of its IDX and VOW rules, all of which occur through the Agreements. So *AlliedSignal* is irrelevant. *See id.*

4

(distinguishing *AlliedSignal*); *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 524 n.7 (3d Cir. 2019) (same); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 410 n.6 (S.D.N.Y. 2003) (same); *LCA, Inc.*, 2000 WL 1222044, at *3 (same). Thus, the Court should conclude that the arbitration clauses apply.

### B. The IDX and VOW Agreements grant MRED the right to enforce all terms of those Agreements, so MRED can enforce the arbitration clauses here.

MRED is undisputedly a third-party beneficiary under the Agreements. Mot. 10–12. Indeed, in sections titled "Third Party Beneficiaries," both Agreements state, "Each MLS is a third-party beneficiary of … this Agreement, and each MLS is entitled to enforce the terms of this Agreement." IDX Agreement § XII(j); VOW Agreement § XII(j). In exchange for that right, MRED provided its proprietary listing data, *see* Haran Decl. ¶ 15, and necessarily agreed to be mutually bound by the terms of the Agreements and their arbitration provisions, *see* Mot. at 9. For the most part, Zillow does not dispute any of that. It argues only that MRED's third-party beneficiary status does not allow it to enforce the arbitration clauses because that provision refers to "parties" and MRED is not a party. Opp. at 9–12. That argument fails for several reasons.

First, the text of the Agreements shows that Zillow's reading is wrong. In construing arbitration clauses, Delaware courts apply "ordinary state-law contract principles" and "read the agreement as a whole." *Quinlan v. O'Brien*, 2026 WL 93395, at *4 (Del. Jan. 13, 2026) (citation omitted). Here, the Agreements state that "[e]ach MLS is a third-party beneficiary" that "is entitled to enforce the terms of this Agreement." IDX Agreement § XII(j); VOW Agreement § XII(j). "Enforce" means "give force or effect to" or "compel obedience to." *Black's Law Dictionary* (12th ed. 2024). Thus, based on the Agreements' plain language, MRED can compel obedience to the Agreements' terms without limitation. That includes the arbitration clauses stating that "[a]ny

5

controversy or claim arising out of or relating to this Agreement … shall be settled by binding arbitration." IDX Agreement § XII(c); VOW Agreement § XII(c).

Zillow has no response to that language. It thus asks the Court to look to isolated "parties" language "[r]ather than analyze the language of the contract as a whole." Opp. at 10. But Delaware law—and ordinary interpretive principles—bar that head-in-the-sand approach, especially when the language a party seeks to ignore (here, the third-party beneficiary clause and main arbitration-clause language) is the most relevant language. The cases Zillow cites confirm as much. In one, the Third Circuit declined to compel arbitration against a non-party since it was not a "part[y] to the Agreement;" the "arbitration clause itself anticipated only three beneficiaries to the Agreement, all of them parties;" and "there [was] no evidence that [the non-party] was an intended third party beneficiary." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001). Similarly, the First Circuit declined a non-party's attempt to compel arbitration since no contract provision showed that it was a third-party beneficiary to *any* part of the contract, let alone the contract "as a whole," and since neither the arbitration clause itself nor "other contractual provisions" showed that the non-party was a third-party beneficiary to the arbitration clause. *Morales-Posada v. Cultural Care, Inc.*, 141 F.4th 301, 312–16 (1st Cir. 2025). In short, both cases examined the *entire contract*, including the arbitration clause, to determine if a company was third-party beneficiary entitled to enforce an arbitration clause. Applying that same approach here shows that MRED may enforce the arbitration clauses since (unlike in the cited cases) it "is entitled to enforce the terms of this Agreement" without limitation. IDX Agreement § XII(j); VOW Agreement § XII(j).

Second, that the Agreements refer to the "parties" throughout is fully consistent with MRED's rights to enforce the arbitration clauses. By confirming MRED's status as a third-party

6

beneficiary entitled to enforce the Agreements' terms, *see id.*, the Agreements clarified that MRED could enforce the same terms as the parties and obviated the need to use the clunkier "parties and third-party beneficiaries" throughout. Thus, as treatises and courts have confirmed, "[t]he term 'parties' in an arbitration clause is not, by itself, sufficient to exempt a third-party beneficiary who is seeking to enforce rights under the contract." 21 Williston on Contracts § 57:55 (citing *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 619 (Tenn. 2004)); *see also Anatomic & Clinical Lab'y Assocs., P.C. v. Cigna Health & Life Ins. Co.*, 2023 WL 6392732, at *7 (M.D. Tenn. Sept. 29, 2023) ("it would seem reasonable that an intended third-*party* beneficiary could be included in the term 'parties'"); *cf. Quintillion Subsea Ops., LLC v. Maritech Project Servs., LTD.*, 2023 WL 139663, at *11 (S.D. Tex. Jan. 6, 2023) (citing cases applying forum-selection clauses to non-parties under "the closely-related doctrine" despite "parties" language in clauses).

That conclusion also follows from the nature of third-party beneficiary status. An intended third-party beneficiary is bound "to the same extent that [one of the signatories] is bound." *Carder v. Carl M. Freeman Cmtys., LLC*, 2009 WL 106510, at *7 (Del. Chan. Jan. 5, 2009) (citation omitted). Thus, "as a basic derivative of the principle that a third-party beneficiary steps into the shoes of a contracting party and is subject to all provisions of contract, a third-party beneficiary of a contract containing an arbitration provision can be compelled to arbitrate." J. Douglas Uloth & J. Hamilton Rial, III, *Equitable Estoppel As A Basis for Compelling Nonsignatories to Arbitrate- A Bridge Too Far?*, 21 REV. LITIG. 593, 602 & n.41 (2002) (collecting cases); *see also DuPont*, 269 F.3d at 195 ("whether seeking to avoid or compel arbitration, a third party beneficiary has been bound by contract terms where its claim arises out of the underlying contract to which it was an intended third party beneficiary"). Here, since MRED is a third-party beneficiary that can enforce the Agreements' terms—and since the nature of that status entails stepping into the shoes

7

of the contracting party—MRED's right to enforce the arbitration clauses is entirely consistent with the Agreements' general references to "parties."

Third, Zillow's reliance on the term "parties" is especially unmoving since the *arbitration clauses* here are *not* limited to disputes among "parties." Instead, they state that "[a]ny controversy or claim arising out of or relating to this Agreement … shall be settled by binding arbitration." IDX Agreement § XII(c); VOW Agreement § XII(c). *Other* parts of the clause refer to the parties only in the context of costs and good-faith obligations. *Id.* None limit the scope of arbitration. When faced with similar language, Delaware courts have not hesitated to grant third-party beneficiaries' motions to compel arbitration. In one case, for example, the arbitration clause read:

> 12.    Arbitration. Any controversy or claim arising out of or relating to this Agreement, or any breach thereof, shall be settled by binding arbitration in the State of Delaware in accordance with the rules of the American Arbitration Association then in effect and judgment upon such award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The board of arbitrators shall consist of one arbitrator to be appointed by the Company, one by the Executive, and one by the two arbitrators so chosen. The cost of arbitration, including all travel-related costs for both parties, shall be paid for by the Company.

Request for Judicial Notice at 59, *Peters*, No. 23CV1051-SB (D. Del. Oct. 31, 2023) (Dkt. 8-1). Despite references to "the Company" paying the costs for "both parties," the court "enforce[d] the arbitration agreement" because "Kaleya is a third-party beneficiary." *Peters*, 2024 WL 4333143, at *5. The cases Zillow cites, in contrast, involved *non*-third-party beneficiaries (or, at best, parties granted discrete, limited rights under a contract) and arbitration clauses that expressly referenced the parties in defining the scope of arbitration.[1] Those cases are thus irrelevant.

---

[1] *See Morales-Posada*, 141 F.4th at 306 (non-third-party beneficiary could not enforce clause stating that "any claim, dispute, or proceeding arising out of the relationship of me and [ICL]"); *In re Paragon Offshore PLC*, 588 B.R. 735, 743–44 (D. Del. 2018) (under New York law, where third-party beneficiary status was not argued, non-party could not enforce clause stating that "[e]ach Party agrees on behalf of itself and each member of its respective Group that the procedures set forth in this Article V shall be the sole and exclusive remedy"); *Shaffer v. Stratton Oakmont, Inc.*, 756 F. Supp. 365, 366 (N.D. Ill. 1991) ("[a]ny controversy between *Ameritrade, Inc. and me*"); *Finlay v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 1987 WL 5237, at *1 (N.D. Ill. Jan. 5, 1987) (party could not enforce arbitration clause that "refers only to disputes between plaintiff and SSC" since nothing "in the agreement suggest[s] that the parties intended to make Mosely a third-party beneficiary of their agreement for the purpose of invoking the arbitration clause");

Fourth, if accepted, Zillow's reading would render the third-party beneficiary clauses meaningless. Those clauses let MRED "enforce the terms of this Agreement." IDX Agreement § XII(j); VOW Agreement § XII(j). Yet under Zillow's reading, MRED *cannot* enforce the terms of the Agreements because nearly every term is framed in the context of "Vendor" and "Participant" or the "Parties." The Court should thus reject that reading because it renders the third-party beneficiary clauses surplusage. *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (courts should not "render any part of the contract mere surplusage").

Finally, if any doubt remains, this Court should refer the issue to the arbitrator. Delaware courts apply the "majority federal view" that references to the AAA rules in arbitration clauses like those here "evidence[] a clear and unmistakable intent to submit arbitrability issues to an arbitrator." *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80 (Del. 2006). The cases Zillow cites are not to the contrary. *See* Opp. 11–12. In one, a court declined to compel arbitration against a non-party who was not even alleged to be a third-party beneficiary. *See GNH Grp., Inc. v. Guggenheim Holdings, L.L.C.*, 2020 WL 4287358, at *7 (D. Del. July 27, 2020). But here, MRED is a stated third-party beneficiary, so the arbitration clauses' delegation of arbitrability by reference to the AAA rules applies. In another, the Supreme Court held that a court may decide which of two contracts applies. *See Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). But here, since the IDX and VOW Agreements apply (as discussed above) and the Participant Agreement does not (as discussed below), the Court should refer any questions about the scope of the arbitration clauses to the arbitrator.

---

*Falcon Tankers, Inc. v. Litton Sys., Inc.*, 300 A.2d 231, 236-37 (Del. Super. 1972) ("any dispute, difference or disagreement between Buyer and Seller").

**II.** **The Participation Agreement does not apply to disputes over Zillow's access to MRED's IDX and VOW feeds and does not bar arbitration because it contains only a narrowly worded *permissive* forum selection clause.**

The Participant Agreement governs access to MRED's MLS database but does not allow Zillow to display IDX and VOW data. So that agreement is not implicated, and its forum selection clause is irrelevant. Yet even if the forum selection clause were relevant, it would not control since it is narrow and permissive, while the arbitration clause is broad and mandatory.

**A.** **The Participation Agreement does not address—and expressly requires a separate agreement for—access to each of MRED's IDX and VOW feeds.**

MRED's Participant Agreement, unlike the IDX and VOW Agreements, has nothing to do with Zillow's antitrust claims, so its forum selection clause does not apply. As Chris Haran, MRED's Managing Director and Chief Technology Officer, explains, "MRED's Participant Agreements give brokerages (including, here, brokers and agents with Zillow), among other things, the ability to input listings on MRED's databases." Haran Supp. Decl. ¶ 4. Zillow still has that access—which has nothing to do with Zillow's antitrust claims. Thus, Zillow's claims do not relate to the Participant Agreement, let alone arise "under" it, as its narrow forum selection clause requires. Participant Agreement ¶ 43; *see Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (citing cases addressing narrowness of similar language).

"The Participant Agreements do not, however, allow a brokerage or an agent to export MRED's listings via IDX or VOW data feeds for use on external websites (like here, Zillow.com) or in applications. That occurs through licensing agreements with MLS Grid." Haran Supp. Decl. ¶ 5. The Participant Agreement itself makes that clear. *See id.* ¶ 6. Unlike the IDX and VOW Agreements, the Participant Agreement nowhere allows Zillow to display IDX and VOW data. Instead, in a section titled "IDX and VOW data access subject to separate agreement," the agreement states, "Firm Participant acknowledges that access to MRED's IDX and VOW database

and data feeds can occur only subject to a separate written agreement between MRED, Firm Participant[,] and Subscriber, as applicable." Participant Agreement ¶ 12 (Dkt. 92-2). The separate agreements, of course, are the IDX and VOW Agreements. "If a brokerage does not execute these separate agreements, the brokerage and its brokers will not be able to use MRED's IDX and VOW data on their websites and in applications." Haran Supp. Decl. ¶ 6.

In a footnote, Zillow responds that, while "the MRED Participant Agreement contemplates that Zillow and MRED would enter into a separate agreement governing access to the IDX and VOW feeds, … no such agreement was ever entered." Opp. 3 n.1. The Participant Agreement in fact says that a separate agreement must include "applicable" parties. Participant Agreement ¶ 12. The IDX and VOW Agreements do that by including Zillow and MLS Grid as signatories and MRED as a third-party beneficiary who can enforce (and must follow) all terms of the Agreements. By their terms, those Agreements govern Zillow's IDX and VOW access. Without them, Zillow would not gain access through the Participant Agreement, which expressly requires "a separate written agreement." Participant Agreement § 12. Indeed, that Zillow entered into the IDX and VOW Agreements shows that it needed to do so. Thus, Zillow's claims about IDX and VOW access have everything to do with the Agreements and nothing to do with the Participant Agreement, rendering the forum selection clause irrelevant.

> **B. Even if the Participant Agreement were relevant, its forum selection clause is narrow and permissive and would not override the IDX and VOW Agreements' broad and mandatory arbitration clause.**

The arbitration clauses apply for the reasons discussed above. *See supra* § (I)(A). But even if Zillow could show that the forum selection clause in the Participant Agreement *also* applied, the arbitration clause would trump that forum selection clause for several reasons.

First, the arbitration clauses in the Agreements are mandatory, while the forum selection clause in the Participant Agreement is permissive. The arbitration clauses state that "[a]ny

controversy … shall be settled by binding arbitration." IDX Agreement § XII(c); VOW Agreement § XII(c). By contrast, the Participant Agreement states only that any controversy "shall have jurisdiction and venue" in certain courts in Illinois. Participant Agreement ¶ 43. As many courts have held, a forum selection clause "is mandatory only if it contains clear language specifying that litigation *must* occur in the specified forum—and language merely indicating that the courts of a particular place 'shall have jurisdiction' (or similar) is insufficient." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016); *see, e.g.*, *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987) (clause's "shall have jurisdiction" language was permissive); *cf. Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990) (language that federal courts "shall have jurisdiction" did not "oust[] state courts" of jurisdiction). Because the arbitration clauses are mandatory and the forum selection clause is not, the former prevails over the latter. *See, e.g.*, *Quicken Loans Inc. v. RE/MAX, LLC*, 216 F. Supp. 3d 828, 834 (E.D. Mich. 2016) (holding that mandatory clause "prevail[ed] over" permissive clause).

Second, courts conclude that specific provisions control over general ones. *See, e.g.*, *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) ("It is a basic principle … that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum."). Here, the Agreements govern access to MRED's IDX and VOW feeds, while the Participant Agreement simply governs overall database access and expressly states that IDX and VOW access can only occur through separate agreements. Since Zillow's claims center on its access to the IDX and VOW feeds, the specific agreements governing that access—and those Agreements' arbitration clauses—should govern. *Cf. TMIP Participants LLC v. DSW Grp. Holdings LLC*, 2016 WL 490257, at *12 (Del. Ch. Feb. 4, 2016) ("[N]otwithstanding the parties' general agreement …, they also expressly agreed to a specific

12

procedure to challenge and arbitrate … That clear and specific arbitration provision trumps the general forum selection clause in the Merger Agreement.").

Finally, if a "contract contains an arbitration clause, there is a presumption of arbitrability" and "doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (cleaned up). Thus, if there is any remaining doubt, the Court should resolve those doubts by concluding that the arbitration clauses apply.

**III.    Zillow has already obtained preliminary relief and must proceed to arbitration.**

Zillow says that even if the Court compels arbitration, it should still resolve the preliminary injunction motion "to preserve the status quo *ante*." Opp. at 14. But this Court already issued a TRO restoring Zillow's access to MRED's listing feeds and barring Zillow from enforcing its new rules in the zip codes where MRED had listings during the year before its announcement with Compass. Dkt. 52. Days after the Court issued that TRO, Zillow characterized it as "things essentially go[ing] back to the way they were before the feed cut, which is what Zillow asked for." Zillow Grp., *A federal judge ordered MRED to restore Zillow's Chicagoland feed. MRED claimed it as a win. Here's the truth.*, ZILLOW FRONT PORCH (May 29, 2026), https://shorturl.at/Ru4CY. This Court has thus *already* restored the status quo. And since MRED did not oppose Zillow's motion to extend the TRO, the status quo will remain undisturbed until an arbitrator determines whether emergency relief should continue under the AAA rules. Dkt. 73.

Zillow cannot show that more relief is necessary. Courts may "grant preliminary injunctive relief pending arbitration," but only "when such relief is necessary." *Neblock v. Gene by Gene, Ltd.*, 2026 WL 1398928, at *5 (N.D. Ill. May 19, 2026); *see also Popovich v. McDonald's Corp.*, 189 F. Supp. 2d 772, 776 (N.D. Ill. 2002) ("a court retains the authority to enter a preliminary injunction to preserve the *status quo ante*"). Here, the status quo has been preserved. Zillow wants the Court to *upend* the status quo by allowing it to reject listings from disfavored brokers while

MRED remains barred from enforcing its anti-discrimination rules. But no authority allows courts to *disrupt* the status quo pending arbitration. Zillow claims doing so would promote the "goals underlying the Sherman Act." Opp. at 15. But arbitrators are fully capable of addressing those goals. Mot. 13–14 (collecting cases). Zillow also argues that the Court should hear the preliminary injunction motion because it "has already invested substantial time and resources into this matter, will handle the matter going forward as to Compass … and will reduce the chances of inconsistent outcomes." Opp. at 15. But it is not clear why that justifies investing further resources in avoidable judicial proceedings. Regardless, this Court recognized that compelling arbitration was a possibility from the start by building in briefing time to hear the motion. With the status quo preserved, further judicial relief is unwarranted.

## IV. The Court should stay this case pending arbitration.

Zillow argues that the Court can proceed on Zillow's non-arbitrable claim against Compass even if it grants MRED's motion to compel. Opp. at 14–15. Perhaps. But "that discretion reaches its limits … when allowing non-arbitrable issues to proceed … risks inconsistent rulings because the pending arbitration is likely to resolve issues material to [the] lawsuit." *G&G Closed Circuit Events, LLC v. Castillo*, 2017 WL 1079241, at *9 (N.D. Ill. Mar. 22, 2017) (quoting *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007)) (cleaned up). Courts must weigh "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays." *Id.* (quoting *Volkswagen*, 474 F.3d at 972). "When these factors weigh in favor of staying the entire action pending arbitration, the district court may abuse its discretion in allowing the nonarbitrable issues to proceed." *Volkswagen*, 474 F.3d at 973.[2]

---

[2] Zillow's cases are not relevant. Opp. at 13–14. One dealt whether an interlocutory stay under § 16 of the FAA applies to non-signatories, and the Seventh Circuit still instructed the district court to "decide whether

Here, the factors warrant a stay. First, there is a strong "likelihood that the Court might be confronted with the arbitrable issue, thereby intruding on the authority of the [arbitrator] and risking ruling inconsistent with the [arbitrator's] decision." *WMS Gaming, Inc. v. IGT*, 31 F. Supp. 3d 974, 977 (N.D. Ill. 2014). Zillow appears to concede that risk. *See* Opp. at 15 (claiming litigating in a single forum would "reduce the chances of inconsistent outcomes"). Second, for similar reasons, the "extent to which the parties will be bound" also warrants a stay. *G&G*, 2017 WL 1079241, at *11. Finally, prejudice to MRED also favors a stay. Arbitration may streamline or resolve overlapping issues here, thus "narrow[ing] the dispute[s]" and avoid interference with the arbitrator's jurisdiction. *Id.* On the other hand, any delay is attributable to Zillow's choice to litigate instead of arbitrating. Thus, for all those reasons, a stay is proper here.

## CONCLUSION

This Court should grant the motion to compel arbitration and stay this action pending completion of the arbitration proceedings.

---

discovery among … the defendants … can proceed without [arbitrating parties]. *If not, the judge should put a hold on discovery until the appeals have been resolved.*" *Bradford-Scott Data Corp. v. Phys. Comp. Network, Inc.*, 128 F.3d 504, 507 (7th Cir. 1997) (emphasis added). The others are even further afield. *See, e.g.*, *Varnes v. Chrysler Fin. Corp.*, 2007 WL 4125830, at *1 (N.D. Ind. Nov. 15, 2007) ("Chrysler moved for entry of final judgment based on the arbitrator's decision."); *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991) ("the claims against the various defendants here will be largely if not wholly unaffected by the resolution of claims between [the parties] in the arbitration proceeding.").

15

Dated: June 29, 2026

Respectfully Submitted,
/s/ *Stephen D. Libowsky*
Stephen D. Libowsky
MANATT, PHELPS & PHILLIPS, LLP
151 N. Franklin St. (Suite 2600)
Chicago, IL 60606
(312) 477-4798
SLibowsky@manatt.com
Attorney No. 6187081

Dylan M. Carson (*pro hac vice*)
Joshua N. Drian (*pro hac vice*)
MANATT, PHELPS & PHILLIPS, LLP
1700 M St. NW, 4th Floor
Washington, D.C. 20036
Telephone: (202) 585-6500
DCarson@manatt.com
JDrian@manatt.com

*Attorneys for Defendant*
*Midwest Real Estate Data, LLC*

16

## CERTIFICATE OF SERVICE

I, Stephen D. Libowsky, of the law firm of Manatt, Phelps & Phillips, LLP, certify that I have filed the foregoing **DEFENDANT MIDWEST REAL ESTATE DATA LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ACTION** with the Northern District of Illinois Court via the Court's CM/ECF notification system, which will send notification of such filing by electronic service to counsel of record as follows:

**Beau William Buffier**
Wilson Sonsini Goodrich & Rosati
31 West 52nd Street, Fifth Floor
New York, NY 10019
bbuffier@wsgr.com

**Bonnie Lau**
Wilson Sonsini Goodrich & Rosati
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
blau@wsgr.com

**Nicholas Sidney**
Wilson Sonsini Goodrich & Rosati
701 Fifth Ave., Suite 5100
Seattle, WA 98104
nsidney@wsgr.com

**Brian Joseph Smith**
Wilson Sonsini Goodrich & Rosati
1700 K St. NW, Fifth Floor
Washington, DC 20006
brian.smith@wsgr.com

*Attorneys for Plaintiffs*

Dated: June 29, 2026

*/s/ Stephen D. Libowsky*

17