**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| ZILLOW GROUP, INC. and ZILLOW, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> MIDWEST REAL ESTATE DATA LLC, COMPASS, INC., and COMPASS ILLINOIS, INC., <br><br> *Defendants*. | Case No. 1:26-cv-05451 <br> Hon. Judge John J. Tharp |

**DEFENDANT MIDWEST REAL ESTATE DATA, LLC'S**
**RESPONSE TO PLAINTIFFS' MOTION TO SEAL**

Defendant Midwest Real Estate Data, LLC ("MRED") responds to Plaintiffs' Motion to Seal (Dkt. No. 96) as follows: Despite the requirement in Zillow's license agreements to privately arbitrate all disputes, Zillow invoked the Court's authority and sought extraordinary equitable relief in a public judicial proceeding. *See Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002) ("[B]usinesses that fear harm from disclosure required by the rules for the conduct of litigation often agree to arbitrate."). The Court has discretion over when to close its courtroom, so MRED merely notes that the Seventh Circuit has a "strong judicial norm that judicial proceedings are open to the public," *Matter of Husain*, 866 F.3d 832, 835 (7th Cir. 2017), and that it is Zillow's burden to overcome that presumption.

1

I. **The Seventh Circuit Recognizes a Strong Presumption of Public Access to Judicial Proceedings and Judicial Records.**

"Secrecy in judicial proceedings is disfavored[.]" *GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 419 (7th Cir. 2014). Documents used in court proceedings "that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l,* 297 F.3d at 545; *see also Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000) ("Many a litigant would prefer that the subject of the case ... be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing.").

II. **Zillow Bears the Burden of Demonstrating Good Cause for Closing the Courtroom.**

"The Seventh Circuit has held that good cause to file a document, or portion thereof, under seal requires the party seeking protection to 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Baxter Int'l*, 297 F.3d at 548. Analysis of good cause "requires balancing the harm to the party seeking the protective order and the importance of disclosure to the public." *Paine v. City of Chicago,* No. 06 C 3173, 2006 WL 3065515, *7 (N.D. Ill. Oct. 26, 2006). Courts routinely reject generalized assertions of competitive harm. *See, e.g., FractureLabs Ou v. Jump Trading, LLC*, No. 24-cv-10249, 2025 WL 1582429, at *2 (N.D. Ill. June 4, 2025) ("[T]hat competitors could use the information provided in its [exhibit] to 'undermine its competitive position in the marketplace,' 'take unfair advantage of [defendant] in negotiations,' 'otherwise prejudice [defendant's] business interests,' and 'subject [it] to increased cybersecurity risks including targeted cyber-attacks ...' These arguments fail to meet the requirements for sealing set out by the Seventh Circuit and Local Rules."). "[G]eneral interests in commercial advantage and privacy aren't sufficient reasons to keep information relevant to judicial decision-making secret." *Palacio v. Med. Fin. Sols.*, No. 21 CV 1288, 2022 WL 2132505, at *2

2

n.4 (N.D. Ill. June 14, 2022). In this case, the burden rests with Zillow to identify why its information requires protection from public disclosure.

### III.  Zillow Has Only Identified Generalized Harm.

According to Zillow, DX108 establishes how the listing portal Realtor.com may "display Zillow Preview listings on [its] own platforms and websites." (Cartales Decl., Dkt. No. 96-3.) DX108 was used in the deposition of Zillow's expert economist, Dr. Wu. Zillow now argues that the "terms" of the agreement contain "competitively sensitive material." But Zillow did not – and would not – explain during the parties' June 29 meet and confer which terms were competitively sensitive.

MRED attempted to accommodate Zillow's confidentiality concerns through less restrictive means, proposing the parties turn off monitors at counsel table and use paper versions of the exhibit for the Court, counsel, and the witness. MRED also proposed that if Zillow identified the competitively sensitive provisions of the document, the parties could agree on limited redactions, especially as MRED does not know which portions Zillow considers competitively sensitive. If MRED does not plan to elicit testimony about those provisions, the issue would be moot. But Zillow declined, instead asking MRED to identify which witness they intend to use DX108 to examine.

Rather than identify specific provisions that qualify as trade secrets, Zillow seeks to shield the agreement in its entirety from public scrutiny based on *generalized* assertions of competitive harm. (*See id.*, at ¶ 4 ("[C]ounterparties would thus gain an unearned advantage that impairs Zillow's negotiating positions by taking advantage of public disclosure of the pricing and terms that Zillow agreed to.").) Zillow has not identified "in detail" which specific contractual terms of PX108 are trade secrets requiring protection. Zillow instead makes repeated references to "competitively sensitive information" generally, but such a "bald assertion that confidentiality

promotes [its] business interest" does not justify sealing DX108 in its entirety. *Baxter Int'l,* 297 F.3d at 547.

If Zillow identified which portions of DX108 it seeks to shield from public disclosure, other than its "terms," the parties could employ reasonable alternatives to shield that information, while protecting MRED's right to ask about the exhibit in open court. Instead of, for example, targeted redactions, Zillow insists on closing the courtroom during a public evidentiary hearing that it sought.

Zillow claims that MRED has not offered "any explanation" as to why its agreement about the display of listing data "is relevant to [MRED's] defense of Zillow's preliminary injunction motion," (Dkt. No. 96 at 3), even though the document was already used with Zillow's economist, and this lawsuit – like Zillow's license agreement with Realtor.com – is about the display of licensed listing data. Regardless, it is not MRED's burden to demonstrate relevance when Zillow seeks to close the courtroom.

Dated:  June 30, 2026

Respectfully Submitted,
/s/ *Stephen D. Libowsky*
Stephen D. Libowsky
MANATT, PHELPS & PHILLIPS, LLP
151 N. Franklin St. (Suite 2600)
Chicago, IL 60606
(312) 477-4798
slibowsky@manatt.com
Attorney No. 6187081

Dylan M. Carson (*pro hac vice*)
Joshua N. Drian (*pro hac vice*)
MANATT, PHELPS & PHILLIPS, LLP
1700 M St. NW, 4th Floor
Washington, D.C. 20036
Telephone: (202) 585-6500
dcarson@manatt.com
jdrian@manatt.com

*Attorneys for Defendant*
*Midwest Real Estate Data, LLC*

5