**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ZILLOW GROUP, INC. and ZILLOW, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> MIDWEST REAL ESTATE DATA LLC, COMPASS, INC., and COMPASS ILLINOIS, INC., <br><br> *Defendants*. | Case No. 1:26-cv-05451 <br><br> Judge: Hon. John J. Tharp, Jr. |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO MIDWEST REAL ESTATE DATA LLC'S
MOTION TO COMPEL ARBITRATION AND STAY ACTION**

**TABLE OF CONTENTS**

**Page**

I.     MRED'S NEW FACTUAL ARGUMENTS DO NOT SATISFY ITS BURDEN TO ESTABLISH AN AGREEMENT TO ARBITRATE. ......................................................1

     A.     The MRED Participant Agreement Controls—It Does Not Give Way to the MLS Grid Agreement. ........................................................................1

     B.     As a Third-Party, MRED Benefits from the Substantive Terms of the MLS Grid Agreement, But Not the Dispute Resolution Procedure.............................2

II.    MRED MISREPRESENTED THE STATUS QUO IN CONNECTION WITH THE TRO PROCEEDINGS. ......................................................................5

III.   THE COURT SHOULD DENY MRED'S REQUEST FOR A DISCRETIONARY STAY OF THE CLAIMS AGAINST COMPASS. ............................................6

IV.   CONCLUSION..............................................................................9

i

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*AgGrow Oils, LLC v. National Union Fire Insurance Co.*,
242 F.3d 777 (8th Cir. 2001) ...................................................................................7, 8

*Anatomic & Clinical Lab'y Assocs., P.C. v. Cigna Health & Life Ins. Co.*,
2023 WL 6392732 (M.D. Tenn. Sept. 29, 2023)...................................................3

*Benjamin v. Traffic Executive Ass'n E. R.R.*,
869 F.2d 107 (2d Cir. 1988)..................................................................................8

*Benton v. Vanderbilt Univ.*,
137 S.W.3d 614 (Tenn. 2004).................................................................................3

*Carder v. Carl M. Freeman Cmtys., LLC*,
2009 WL 106510 (Del. Ch. Jan. 5, 2009)...............................................................3

*IDS Life Insurance Co. v. SunAmerica, Inc.*,
103 F.3d 524 (7th Cir. 1996) ..............................................................................7, 8

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)..............................................................................................6, 7

*Panoramic Stock Images, Ltd. v. John Wiley & Songs Inc.*,
963 F. Supp. 2d 842 (N.D. Ill. 2013) ...................................................................4

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979)................................................................................................8

*Peters v. Kaleyra, Inc.*,
No. 23CV1051-SB, ECF No. 8-1 (D. Del. Oct. 31, 2023) ...................................3

*Quintillion Subsea Ops., LLC v. Maritech Project Servs., LTD.*,
2023 WL 139663 (S.D. Tex. Jan. 6, 2023) .........................................................3

*Sierra Rutile Ltd. v. Katz*,
937 F.2d 743 (2d Cir. 1991)..............................................................................6, 7, 8

*Volkswagen of America, Inc. v. Sud's of Peoria, Inc.*,
474 F.3d 966 (7th Cir. 2007) ................................................................................7

*Wallrich v. Samsung Elecs. Am., Inc.*,
106 F.4th 609 (7th Cir. 2024) ...............................................................................4

**STATUTES**

FAA § 4.........................................................................................................................................2

## I. MRED'S NEW FACTUAL ARGUMENTS DO NOT SATISFY ITS BURDEN TO ESTABLISH AN AGREEMENT TO ARBITRATE.

MRED has not carried its burden to establish a "written agreement" by which Zillow agreed to arbitrate this dispute against MRED. Its attempts to undermine the direct written agreement that governs Zillow and MRED's relationship are unavailing. The MRED Participant Agreement is the only place where MRED promises Zillow access to the data that it withheld as part of its conspiracy with Compass, and thus is the only place where MRED could have provided the consideration for its promise about dispute resolution procedures.

### A. The MRED Participant Agreement Controls—It Does Not Give Way to the MLS Grid Agreement.

For the first time in its Reply, MRED erroneously claims that the Participant Agreement—which clearly manifests MRED and Zillow's intent to resolve disputes arising from Zillow's rights as an MRED Participant in court—points to the MLS Grid Agreement as a more specific and restrictive manifestation of the parties' agreement about how to handle disputes over MRED cutting off access to its data. Reply at 10-12. Its new purported evidence, Chris Haran's Supplemental Declaration, does not sustain MRED's burden to establish Zillow's mutual assent to arbitrate and waive its right to litigate with MRED in open court. The Supplemental Declaration states only that "Section [12] of the Participant Agreement makes clear" that the MLS Grid Agreement is a condition precedent to obtaining the data feeds. Dkt. 95, Haran Supp. Decl. ¶ 6. True, Zillow must satisfy additional conditions, laid out in the MLS Grid Agreement, in order to receive access to that data feed from MLS Grid. It is not, however, the "written agreement" with "MRED" promised by the plain text of Section 12. It cannot, therefore, satisfy MRED's burden to show that Zillow intended to rewrite its obligations as to MRED. MRED's belated attempt to twist the meaning of Section 12 of the Participant Agreement cannot transform the MLS Grid Agreement into one between the parties.

1

The much simpler explanation for Section 12 is that MRED never bothered to create a license agreement to lay out more specific rights and obligations that would apply in the IDX and VOW context,[1] resting instead on the broader Participant Agreement as sufficient to clarify when a Participant like Zillow has a right to enjoy the MRED data as part of the MRED Service,[2] what substantive conditions apply to that access, and how disputes between MRED and the Participant over that access can be resolved. The MLS Grid Agreement does create additional obligations that Zillow must abide by in order to receive the technical service from MLS Grid, but it stops short of changing the dispute resolution mechanism between third-parties. Opp. at 3, 9-12. Rather, it specifies for the first time how MLS Grid, Vendors, and Subscribers (as "Parties" to the MLS Grid Agreement) will resolve disputes regarding those rights and obligations. *Id.*

Because there is no more specific agreement between MRED and Zillow manifesting the parties' agreement on how to resolve disputes about Zillow's rights to MRED data, the MRED Participant Agreement controls.[3]

> B. **As a Third-Party, MRED Benefits from the Substantive Terms of the MLS Grid Agreement, But Not the Dispute Resolution Procedure.**

---

[1] If the Court were to conduct an evidentiary hearing under FAA § 4, rather than denying MRED's Motion to Compel Arbitration on the papers or based on oral argument, then Zillow would put on evidence that other MLSs use similar language in their agreements for participants, but in fact require a direct licensing agreement between the MLS and the data feed recipient.

[2] The Participant Agreement indeed contemplates that the MRED Service will be subject to additional "license[s]" and "contractors" relationships, while still obligating MRED to provide that service in exchange for the obligations given by the Participant. *See* Hendricks Decl., Dkt. 92-2, Ex. E § 1.

[3] MRED's cases establish general canons of statutory and contractual construction but are irrelevant here: the specific vs. general and mandatory vs. permissive canons are tools for divining *one set of parties'* intent across provisions they mutually adopted. They have no work to do where the question is whether MRED, which did not sign the MLS Grid Agreement as a party, can use that contract's arbitration clause to escape the forum clause it *did* sign with Zillow.

MRED also argues for the first time in its Reply that the third-party beneficiary clause in the MLS Grid Agreement would be rendered meaningless if it did not allow MRED to consider itself a "Party," an unconvincing attempt to avoid the dispositive fact that the arbitration clause specifically refers to disputes between the "Parties." Reply at 9.[4] Again, this interpretation defies common sense and the plain text of the contract, which defines "Party" to exclude MRED and only occasionally references specific roles for "Parties."

There are several ways that MRED benefits from the ability to enforce the terms of the MLS Grid Agreement even without being considered a Party. For instance, in the very first substantive paragraph of the contracts, Zillow is granted a license to use the data "solely for those usage options selected by the MLS." Haran Decl., Dkt. 30-2, Ex. A § II; Dkt. 30-3, Ex. B § II. MRED's third-party beneficiary status is what would allow it to assert breach of contract against Zillow if it used the data for other purposes. As another example, all of the Participant and Vendor Obligations (§§ V, VI, and VII) are terms that MRED could enforce as a third-party beneficiary, including by declining to provide data through MLS Grid if the Participant or Vendor breached those obligations—those sections do not refer specifically to the "Parties." *Id.*

---

[4] MRED tries to escape the Delaware law authority that looks specifically to the text of the arbitration clause by citing decisions under different state laws, which confirm that different jurisdictions take a different approach on this question. *See Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 619 (Tenn. 2004) ("[T]hose courts that have exempted a third-party beneficiary from an arbitration provision in the contract have generally emphasized contractual language that limited the arbitration clause to the 'parties' to the agreement."); *see also Anatomic & Clinical Lab'y Assocs., P.C. v. Cigna Health & Life Ins. Co.*, 2023 WL 6392732, at *6 (M.D. Tenn. Sept. 29, 2023); *Quintillion Subsea Ops., LLC v. Maritech Project Servs., LTD.*, 2023 WL 139663 (S.D. Tex. Jan. 6, 2023). MRED's other cases are equally unavailing. *See Carder v. Carl M. Freeman Cmtys., LLC*, 2009 WL 106510, at *2 (Del. Ch. Jan. 5, 2009) (emphasizing that non-signatory defendant was a wholly-owned subsidiary or close affiliate of the signatory defendant); *Peters v. Kaleyra, Inc.*, No. 23CV1051-SB, ECF No. 8-1, Ex. 3 § 12 (D. Del. Oct. 31, 2023) (arbitration clause, as drafted, was silent on whether it reaches only "the parties").

Case: 1:26-cv-05451 Document #: 107 Filed: 07/06/26 Page 8 of 14 PageID #:1472

MRED can enjoy all these substantive contract terms without being considered a "Party" for purposes of procedural terms like the dispute resolution clause.[5]

Accordingly, MRED provides no reason to interpret Zillow's assent to the MLS Grid Agreement's arbitration clause as manifesting its assent to arbitrate against MRED when MRED deprives Zillow of privileges as an MRED Participant. Indeed, MRED fails its burden to establish how the MLS GRID Agreement could have captured Zillow's understanding about obligations to MRED specifically. It offers no concrete evidence that Zillow would have understood MRED to fall under the definition of a relevant "MLS" (let alone a "Party") when Zillow signed the MLS Grid Agreements. MRED's name appears nowhere on the contracts. Nor does MRED proffer any evidence to establish the dates it became or has been a member of MLS Grid. MRED has thus failed to plausibly suggest, let alone carry its burden to show, that Zillow intended to form a new, more restrictive dispute resolution agreement with MRED, superseding its dispute resolution rights as an MRED Participant.

MRED grasps at straws to try to construe the written agreement to arbitrate with MLS Grid as a written agreement to arbitrate with MRED, but in so doing reveals that it has not carried its "initial burden of proving the existence of a valid arbitration agreement with [Zillow]." *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 619 (7th Cir. 2024). The Court must therefore deny the Motion to Compel Arbitration. *Id.*

---

[5] Indeed, MRED remains conspicuously silent in response to Zillow's argument that MRED did not provide consideration for Zillow's alleged offer to arbitrate. It does not deny there is no "mutual[ity]" to the arbitration commitment or assert that MRED is bound to arbitrate. *See* Opp. at 9; *see also Panoramic Stock Images, Ltd. v. John Wiley & Songs Inc.*, 963 F. Supp. 2d 842, 848 (N.D. Ill. 2013) (holding that movant's failure to address an argument against arbitration in the opposition brief "operates as a forfeiture of [its] attempt to compel arbitration").

## II.    MRED MISREPRESENTED THE STATUS QUO IN CONNECTION WITH THE TRO PROCEEDINGS.

MRED contends that the TRO is sufficient to maintain the status quo and this case should proceed to arbitration without the Court resolving Zillow's motion for preliminary injunction. However, as Zillow explained at the TRO hearing, MRED's historical footprint has been limited to Illinois and neighboring portions of six adjacent states within the Midwest, *see* Dkt. 23, Samuelson Decl. ¶ 12; prior to April 2026 MRED had no national footprint. Following expedited discovery and the preliminary injunction hearing, it is now clear that MRED overstated the breadth of its historical national footprint to the Court, and thus, that the scope of the TRO does not align with the scope of Zillow's prior enforcement of its Listings Access Standards.

At the TRO hearing, counsel represented that MRED was a large national MLS database with "almost 700 closed listings in states far-flung all over the United States—Florida, Texas, Pennsylvania, Alabama, Noth Dakota, Arkansas, and Nebraska," that had maintained "hundreds of listings across the country for years." TRO Hearing Tr. 51:2-22. Zillow's counsel countered that MRED's historical footprint has been limited to the Midwest, as confirmed by its own website; any purported national geographic coverage had been "mere droplets" of ad hoc listings. *See id.* at 86:4-24.[6] Expedited discovery has revealed the extent to which MRED overstated its historical national presence. As Dr. Lawrence Wu explained in his Supplemental Declaration, "[t]he data show that nearly all of MRED's active for-sale listings—around 99.98%—are in its primary service area." Wu Supp. Decl. ¶ 11. Indeed, "[a]s of April 23, 2026, there were **only**

---

[6] The Court previously rejected MRED's attempt to inject dozens of other non-Midwest zip codes into the scope of the TRO by adding not only residential "for sale" listings, but also "sold" and other non-residential listings information. Dkt. 56-4, Ex. D at 2. As Rebecca Jensen conceded while testifying to the same map, DDX 4-3, it includes "sold" listings dating back to "well before 2008," PI Hearing Tr. 466:9-23, and listings for commercial, vacant lot, and other non-residential properties, *id*. at 477:8-478:2.

5

**seven** active for-sale property listings on MRED outside of its primary service area," leading Dr. Wu to conclude that "outside of its primary service area MRED has virtually no presence." *Id*. ¶ 13 (emphasis added). Yet MRED was able to leverage its claimed national footprint to inject zip codes from 18 additional states into the scope of the TRO ruling, thus enlarging the jurisdictions in which Zillow may no longer enforce its Standards. Dkt. 56 at 1; Dkt. 56-1, Ex. A; Dkt. 56-2, Ex. B.

Because the scope of the TRO ruling does not align with the scope of Zillow's prior enforcement of its Standards, and does not provide relief as against Compass, it is necessary for the Court to reach and rule on Zillow's preliminary injunction motion.

### III. THE COURT SHOULD DENY MRED'S REQUEST FOR A DISCRETIONARY STAY OF THE CLAIMS AGAINST COMPASS.

Should the Court compel arbitration, MRED concedes that Zillow's claims against Compass would be non-arbitrable and thus, that the Court has discretion to continue the litigation as to Compass. Reply at 14-15. MRED requests a discretionary stay for the first time in its Reply, but fails to satisfy the required showing of "necessity" or propose a narrowly confined scope for any such stay. *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991) (vacating discretionary stay in part because the district court "failed to confine its stay so as not to prejudice [non-movant] and never required [movants] to show necessity for the stay or that [non-movant] would not be harmed by its relative indefiniteness") (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("the suppliant for a stay must make out a clear case of hardship or inequity in being

6

required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else").[7] Indeed, MRED offers no concrete showing whatsoever.

MRED invokes three factors that the court identified as relevant to a discretionary stay in *Volkswagen of America, Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007)—risk of "inconsistent rulings," the extent to which the parties to the court proceeding will be bound by the arbitrators' decision, and prejudice to the non-movant from delay—but fails to explain, let alone satisfy, any of them. Reply at 14-15. The *Volkswagen* court affirmed denial of a discretionary stay. 474 F.3d at 976. As to the first factor, the risk from "inconsistent rulings," it explained that a stay had been necessary in another case because the non-arbitrable claim "was completely dependent upon the arbitrable issues of [] fact"—in other words, one was the predicate of the other. *Id.* at 972 (cleaned up). In contrast, here, MRED fails to show that any threshold issue of fact about Zillow's or MRED's rights and obligations under the MLS Grid Agreement would be a predicate to proving Compass conspired with MRED to orchestrate a nationwide conspiracy to punish Zillow and force it to abandon its core competitive strategy: Zillow's pro-transparency Listing Access Standards.

As to the second factor, "the extent to which parties will be bound by the arbitrators' decision," the *Volkswagen* court cited to *AgGrow Oils, LLC v. National Union Fire Insurance Co.*, 242 F.3d 777, 783 (8th Cir. 2001), which explains that where the parties to the arbitration are different than those to the litigation, it may not be appropriate for the court to give preclusive

---

[7] Both *Sierra Rutile* and *Landis* were cited approvingly by the Seventh Circuit in affirming the denial of a stay under similar circumstances in *IDS Life Insurance Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996).

effect to the arbitrators' decision. *Id.*[8] Here, however, non-party Compass would not be bound by any arbitral proceeding between MRED and Zillow. And even assuming some of the same issues would be litigated in arbitration, common party Zillow would not be collaterally estopped from re-litigating them against Compass because Zillow's ability to obtain discovery, among other procedures, would be more fulsome in the federal court proceeding. *See Benjamin*, 869 F.2d at 110 (discussing the availability of "full scale discovery" and other procedural safeguards as critical to the collateral estoppel analysis) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 n.15 (1979)).

Finally, the third factor, prejudice from delay, concerns any hardship the non-moving party would experience in the interim (a question directly addressed by the preliminary injunction proceeding itself). *See IDS Life Ins.*, 103 F.3d at 529. Here, Zillow will be prejudiced by any delay in obtaining the relief it seeks against Compass. If Compass is able to conspire with MRED and other MLSs to prevent Zillow from enforcing its Listing Access Standards in states outside of Chicagoland, the incentives in the industry will start to shift away from pro-transparency business models, and consumers will lose confidence in Zillow as a comprehensive source for listings, creating a downward spiral that Zillow will struggle to recover from. *See* Dkt. 21, Pls. PI Mot. at 13.

---

[8] Collateral estoppel would only ever be appropriate against a common party (like Zillow here) if the arbitration procedures would give it a full and fair chance to litigate its claims. *See AgGrow*, 242 F.3d at 783 (citing *Sierra Rutile*, 937 F.2d at 750 ("The difference between the parties and issues in the court action and in the arbitration undermines the rationale that the arbitration will have an effect on the stayed action. *Cf. Benjamin v. Traffic Executive Ass'n E. R.R.*, 869 F.2d 107, 110 (2d Cir. 1988) (arbitral determination given collateral estoppel effect in subsequent federal court action where arbitral procedures were sound and where parties had a full and fair opportunity to litigate).")).

MRED has fallen far short of justifying a discretionary stay here. Instead, the Court should complete the preliminary injunction ("PI") proceedings and issue an injunction that binds at least Compass, and also MRED for the reasons explained above and in Zillow's Opposition.

## IV.     CONCLUSION

MRED cannot use the MLS Grid Agreement as a shield from open court or to convert its broad anticompetitive conspiracy with Compass into a narrow data licensing dispute with Zillow. For the reasons set forth here and in Zillow's Opposition, the Court should deny MRED's Motion to Compel Arbitration and Stay Action in its entirety.

Dated: July 6, 2026

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/ *Bonnie Lau*
Bonnie Lau (admitted *pro hac vice*)
One Market Plaza, Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: blau@wsgr.com

Brian J. Smith (IL Bar No. 6321543)
1700 K Street NW, Fifth Floor
Washington, DC 20006
Telephone: (202) 973-8800
Facsimile: (866) 974-7329
Email: brian.smith@wsgr.com
*Admitted to practice only in Illinois and Maine*

Beau W. Buffier (admitted *pro hac vice*)
31 West 52nd Street, Fifth Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: bbuffier@wsgr.com

9

Nicholas R. Sidney (admitted *pro hac vice*)
701 Fifth Avenue, Suite 5100
Seattle, Washington 98104
Telephone: (206) 883-2500
Facsimile: (866) 974-7329
Email: nsidney@wsgr.com

*Attorneys for Plaintiffs Zillow Group, Inc. and Zillow, Inc.*

10