# DX498



Wilson Sonsini Goodrich & Rosati
Professional Corporation

1700 K Street NW
Fifth Floor
Washington, D.C. 20006-3817

O: 202.973.8800
F: 202.973.8899

BEAU BUFFIER
Email: bbuffier@wsgr.com
Direct dial: 917.412.6461

*CONFIDENTIAL TREATMENT REQUESTED*

April 17, 2025

**VIA EMAIL**

Yvette Tarlov
Section Chief, Media, Entertainment, and Communications
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
Yvette.Tarlov@usdoj.gov

> **Re:    Industry Efforts to Eliminate or Weaken the Clear Cooperation Policy**

Dear Yvette,

Zillow Group, Inc. ("Zillow") is writing to inform the Department of Justice ("DOJ") about its newly introduced Listing Access Standards, a policy which aims to ensure homebuyers have free and transparent access to listings on Zillow and other sites while aligning within the parameters set forth by the National Association of Realtors' ("NAR") clarifications to its Clear Cooperation Policy ("CCP"). Zillow's policy is designed to ensure both consumers and agents have equitable, timely access to real estate information, supporting and protecting a more open and competitive housing market. Unfortunately, some industry players have mischaracterized these standards, are misinterpreting NAR's rules to facilitate private listing networks, and continue to assert that the DOJ views the CCP as anticompetitive. Zillow respectfully believes it would be beneficial for the DOJ and Zillow to meet to discuss how the significant changes in the real estate industry since the February 5, 2025 meeting are impacting competition and consumers.

> **1. Zillow's Listing Access Standards Respond to Traditional Brokerages' Efforts to Exploit Uncertainty and Suppress Access to Listings**

On April 10, 2025, Zillow announced its Listing Access Standards to ensure that all buyers can view property listings.[1] Zillow independently developed these standards, which represent Zillow's unilateral policy regarding what listings it chooses to display on its sites.[2] The standards

---

[1]    If a Listing Is Online, It Should Be Online Everywhere: Zillow's New Listing Access Standards, ZILLOW (Apr. 10, 2025), available here.

[2]    On April 14, Redfin independently announced a similar unilateral policy. Zillow and Redfin arrived at these policies independently and without coordination.

AUSTIN   BEIJING   BOSTON   BRUSSELS   HONG KONG   LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN DIEGO   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, DC   WILMINGTON, DE

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY -
SUBJECT TO PROTECTIVE ORDER

ZG-MC-00058921

**DX498 - page 1 of 5**

WILSON
SONSINI

Yvette Tarlov, Esq.
April 17, 2025
Page 2

reflect Zillow's sincere belief that hidden listings harm buyers, sellers, and agents by creating an unfair market. Specifically, the standards require that when a listing is publicly marketed to consumers, it must be submitted to a Multiple Listing Service ("MLS") within one day and published on Zillow and other sites that receive listing feeds.[3] Listings that do not meet these standards will not be published on Zillow or Trulia for as long as the listing is with the same listing agent and/or the same listing brokerage. Public marketing means advertising a listing in any manner, such as yard signs, Instagram posts, and displaying listings behind registration walls on brokerage websites (e.g., private listing networks). Zillow does not consider agents sharing listings with other agents within the listing brokerage, who in turn may share those listings through 1:1 communications with such agents' buyer clients, as public marketing, so long as the seller has signed a waiver instructing the agent not to market the listing on publicly available websites.[4] These standards are designed to ensure that consumers have free and transparent access to listings within the confines of NAR's policymaking efforts in this area, including the CCP requirement for MLS submission within one day of public marketing, NAR's Delayed Marketing Exempt Listings policy ("Delayed Listings Policy") that allows sellers to delay IDX syndication while including their listings in VOWs, and the Office Exclusive exemption.[5] Zillow's Listing Access Standards, effective May 2025, encourage brokerages to make listings widely accessible rather than limiting exposure to increase agent commissions, maximizing exposure for sellers and access for buyers, and increasing trust in the market.

To maximize access to listings for homebuyers, Zillow is also entering into listing feed agreements with brokerages where brokerages agree to provide their listings to Zillow, such as the agreement with eXp announced on April 10, 2025.[6] Under these agreements, brokerages commit to making all publicly marketed listings available to Zillow, including "Coming Soon" and Delayed Listings. However, these agreements do not enable Zillow to display non-publicly marketed listings and do not dictate how the brokerage or any other third party displays its or others' listings on its own websites. Similar to Zillow's Listing Access Standards, these agreements reflect the company's commitment to ensuring that access to listings is free, fair, transparent, and easy for consumers.

Based on recent announcements in the industry seeking to exploit uncertainty, Zillow felt that now was the time to act. Zillow has previously informed the DOJ that a growing number of actors are abusing the Office Exclusive exemption and plan to do the same with the recently announced Delayed Listings Policy in ways that would require consumers to first sign a representation contract with an agent to access listings.[7] Specifically, some agents interpret the

---

[3] The standards "apply to listings that are subject to an exclusive for sale listing agreement between a broker and a seller." If a Listing Is Online, It Should Be Online Everywhere: Zillow's New Listing Access Standards, ZILLOW (Apr. 10, 2025), available here.

[4] To be clear, Zillow supports sellers who keep their listings private and do not publicly market them. Zillow will display these listings if they are available for display on Zillow within one day of public marketing.

[5] Multiple Listing Options for Sellers, National Association of Realtors, available here (last accessed Apr. 15, 2025).

[6] Press Release, Zillow and eXp Announce Consumer-First Commitment to Real Estate Transparency, Zillow (Apr. 10, 2025), available here.

[7] Letter from Zillow Group, Inc. to the Department of Justice (Apr. 10, 2025), Re: Industry Efforts to Eliminate or Weaken the Clear Cooperation Policy.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY -
SUBJECT TO PROTECTIVE ORDER

ZG-MC-00058922

WILSON
SONSINI

Yvette Tarlov, Esq.
April 17, 2025
Page 3

Office Exclusive exemption as allowing one-on-one communication between agents at different brokerages.[8]  Additionally, some brokerages are expanding the Office Exclusive exemption beyond 1:1 communications, which was intended to be a limited exception, and using this loophole to keep more listings off the MLS while publicly marketing their exclusive network of listings behind a registration wall only accessible to potential buyers who are working with their agents. Regarding the Delayed Listings Policy, Zillow believes that some traditional brokerages may restrict online brokerages' access to listings by either not inputting listings into VOW feeds or challenging online brokerages' right to access and display the feeds.  By way of example, Zillow is aware that SFAR (the San Francisco MLS) provides for a "coming soon" listing status. While such listings are entered into the MLS, they are not made available for display to other MLS participants via an IDX or VOW feed. As a result, certain brokerages actively exploit this loophole to display coming soon listings on their site but nowhere else online, which not only hinders homebuyers' access to listings but also forces them to agree to a relationship with a broker to access listings.  In effect, traditional brokerages are turning a commodity—access to listings—into a bait and switch tactic to solicit clients desiring visibility to a complete listings inventory and willing to pay higher commissions for such access, only to turn around and market the listing widely on the MLS later.[9]  Unrepresented buyers will be even worse off than represented buyers because they will not have access to all available listings.  Zillow's Listing Access Standards aim to prevent these consumer harms and encourage brokers to make listings accessible to all; however, the ability of Zillow's standards to prevent consumer harm remains limited due to the continued abuse of the Office Exclusives exemption under the CCP by certain industry participants.

There is also coordinated movement by certain MLSs—alongside the large brokerages that control them—to suppress competition from non-traditional and online brokerages by denying VOWs and non-traditional entities, such as Zillow, access to the most critical listings data, which is essential to attract high-intent homebuyers.  This coordination appears to be taking place through the MLSs.  For example, Midwest Real Estate Data MLS, based in Chicago (MRED), is a part of MLS GRID, which is owned by a consortium of MLSs and provides listing syndication services to its members.  MRED plans to allow agents to opt out of including listings for display in a VOW feed.  While MRED is not affiliated with NAR, the decision is nonetheless in conflict with consistent NAR guidance (post the 2008 DOJ Consent Decree) that listings must be made accessible and displayable via a VOW feed.  On information and belief, other MLSs, particularly those in the MLS GRID consortium, are planning to adopt similar approaches to suppress the display of Delayed Listings on VOW feeds.  This suppression would mean that non-traditional brokerages, like Zillow, will not have access to or be able to display Delayed Listings from these MLSs, substantially impairing the ability of non-traditional brokerages to compete.

---

[8]   NAR's Clear Cooperation Policy Just Changed - What You Must Know, Vimeo (Mar. 26, 2024), 10:45, available here (NextHome Chief Executive Officer James Dwiggins stating, "I've seen articles written where people are like, great, well, I'm gonna communicate all of this to one brokerage and then I'm going to communicate this to another brokerage, and then I'm gonna communicate this to another brokerage and not put [th]em all in the same email [to circumvent the CCP].")

[9]   "There is evidence that some big brokers, notably Compass, are already encouraging their agents to promote private listings. There is also evidence that some agents are taking advantage of consumer unfamiliarity with the sales process to persuade sellers to sign up for private listings. These listings limit access to buyers, which could well minimize sale prices and extend the time to sell." Press Release, New Zillow Policy Will Help Protect Home Buyers and Sellers from Anti-Consumer Private Listing Networks, Consumer Policy Center (Apr. 14, 2025), available here.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY -
SUBJECT TO PROTECTIVE ORDER

ZG-MC-00058923

**WILSON SONSINI**

Yvette Tarlov, Esq.
April 17, 2025
Page 4

### 2. Multiple Prominent Industry Players are Spreading Misinformation to Advantage Their Platforms

Unfortunately, some industry players are spreading misinformation about Zillow's motives and the CCP in general. For example, Andy Florance, CEO of CoStar Group's Homes.com, emailed agents and published an article misrepresenting the standards as an attempt by Zillow to control listing marketing. The email and article provide a link to report complaints directly to the DOJ.[10] This messaging overlooks that, as the Consumer Policy Center noted, "private listing networks limit buyer access to homes," "severely limit marketplace transparency," and "unequivocally disadvantage[]" buyers.[11] Further, despite Florance's assertion that Zillow's standards represent "a pure power play of epic proportion," Zillow's share of the monthly unique visitors that visit Zillow, CoStar, Redfin, and Realtor.com is less than 50 percent[12] and Zillow has only a single-digit share of the total number of residential real estate transactions.[13]

The misinformation being spread by certain industry participants expands beyond Zillow's Listing Access Standards. For example, Robert Reffkin, Chief Executive Officer of Compass, published an Instagram post on April 12, 2025, that yet again claimed that the "DOJ believes that the Clear Cooperation Policy restricts home-seller choices and precludes competition from new listing services."[14] Reffkin published this post despite the DOJ's amicus brief in *Nosalek v. MLS PIN* that states that "[t]he Division has not taken a position that such policies *standing alone* (i.e., without mandated MLS publication of offers of compensation or exceptions benefiting primarily large brokerages) are anticompetitive."[15] While others in the industry took note of this important clarification, Reffkin continues to fearmonger and sow confusion.[16]

Despite facing misinformation and mischaracterizations from certain industry players, Zillow remains committed to promoting fair access to listings for all consumers. The Listing Access Standards and Zillow's agreements with brokerages to display listings are evidence of that commitment. Zillow appreciates the DOJ's attention to these matters and requests a meeting to

---

[10] Email from Andy Florance, Chief Executive Officer, Homes.com, Your Listing, Your Lead—Not Zillow's Lead (Apr. 12, 2025) (on file at Zillow); *see also* Andy Florance, *CoStar's Florance: New Zillow Rule 'Hijacks Your Leads for Profit'*, INMAN (Apr. 14, 2025), available here.

[11] Press Release, New Zillow Policy Will Help Protect Home Buyers and Sellers from Anti-Consumer Private Listing Networks, Consumer Policy Center (Apr. 14, 2025), available here.

[12] Comscore, U.S. Only (Mar. 2025). Zillow's share is based on visitors to Zillow Parent Group, including all of its sub-entities, properties. CoStar's unique visitors are calculated by adding unique visitors for the Apartments.com Network and Homes.com, net of crossover visitors for the two entities.

[13] Q4 2024 Shareholder Letter at 2, Zillow Group, Inc., available here. Zillow calculates its total number of customer transactions by counting "each unique purchase or sale transaction in which the homebuyer or seller uses Zillow Home Loans, Zillow Showcase, Spruce and/or involves an agent partner with whom the buyer or seller connected through Zillow Group." *Id.* at 13. It then divides this figure by the total number of residential real estate transactions. *Id.*

[14] Robert Reffkin (@robreffkin), Instagram (Apr. 12, 2025), available here.

[15] Supplemental Statement of Interest of the United States at 7 n.2, Nosalek v. MLS Property Information Network, No. 1:20-cv-12244-PBS (Mar. 17, 2025).

[16] *See, e.g.*, Lillian Dickerson, *DOJ Signals Clear Cooperation Alone May Not be Anticompetitive*, INMAN (Mar. 20, 2025), available here.

---

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY -
SUBJECT TO PROTECTIVE ORDER

ZG-MC-00058924

**DX498 - page 4 of 5**

**WILSON
SONSINI**

Yvette Tarlov, Esq.
April 17, 2025
Page 5

discuss how recent developments in the industry, including those discussed in this letter and Zillow's April 10, 2025 letter, are impacting competition.

*     *     *

The letter contains highly confidential and proprietary business information of Zillow, the disclosure of which may cause significant economic harm to it. Zillow submits this letter with the understanding that the DOJ will afford these materials and information the maximum confidential treatment provided for in the Freedom of Information Act, 5 U.S.C. § 552, and all other applicable laws, regulations, and rules.

If you have any questions regarding this information, please do not hesitate to contact me at bbuffier@wsgr.com.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Beau Buffier

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY -
SUBJECT TO PROTECTIVE ORDER

ZG-MC-00058925

**DX498 - page 5 of 5**