**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ZILLOW GROUP, INC. and
ZILLOW, INC.,

*Plaintiffs*,

v.

MIDWEST REAL ESTATE DATA LLC,
COMPASS, INC., and
COMPASS ILLINOIS, INC.,

*Defendants*.

Case No. 1:26-cv-05451

Judge John J. Tharp, Jr.

**DEFENDANT MIDWEST REAL ESTATE DATA LLC'S RESPONSE**
**POST-HEARING BRIEF ON ZILLOW'S MONOPOLIZATION CLAIM**

Defendant Midwest Real Estate Data LLC (MRED) incorporates in full Defendants' Joint Response Post-Hearing Brief and submits this Response Post-Hearing Brief on Section 2.

**I. Zillow Cannot Show A Likelihood Of Success On Its Monopolization Claim.**

*First*, Zillow does not contest that "businesses are free to choose the parties with whom they will deal." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). Instead, Zillow asserts this is not "a mere refusal to deal" case; it involves "[t]ying and exclusive dealing." Pl. Br. 33 (citation omitted). But those are distinct theories nowhere mentioned in Zillow's Complaint and PI motion. *See Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 453 (7th Cir. 2020); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 956 (N.D. Ill. 2018) (citing cases "distinguishing unilateral refusals to deal from … exclusive dealing and tying"). Those theories are thus irrelevant, as "new claims unrelated to the allegations contained in the complaint cannot serve as the basis for a preliminary injunction." *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 867 (S.D.W. Va. 2014) (collecting cases).

*Second*, the "definition of a market depends on substitutability on the supply side as well as on the demand side." *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1410 (7th Cir. 1995). Here, Zillow claims that MRED has monopoly power since it "controls" 98% of Chicago-area listings, Pl. Br. 2, even while admitting that "[e]ach broker has control over its own listings feed and can supply that feed to Zillow or whomever it wants." *Id.* at 31 (quoting Dr. Aron). Direct brokerage feeds are a substitute to MRED's data compilation. PI Tr. 530:14–20 (Aron). Indeed, Zillow admits that it can already access at least 45% of Chicago-area listings through direct feeds. Pl. Br. 16, 36. And Zillow can access even more since, in its view, only 28% of Compass listings are truly ineligible for direct feed. Pl. Br. 31, 36. Since MRED does not "control" 98% of Chicagoland listings, the Court should thus reject Zillow's product market

and monopoly power allegations as deficient given that they "clearly do[] not encompass all interchangeable substitute products." *Int'l Equip. Trading, Ltd. v. AB SCIEX LLC*, No. 13 C 1129, 2013 WL 4599903, at *3 (N.D. Ill. Aug. 29, 2013) (citation omitted) (collecting cases).[1]

*Third*, even if Zillow had alleged a viable monopolization theory, its claim that enforcing the objective criteria rule is coercive would not support that theory. MRED's rule, which Zillow's expert did not evaluate, bars discrimination and increases output by preventing suppression of listings. Def. Br. at 7–8; DX107 at 153:5-9 (Wu Dep.). Increasing output is not coercion. *See Chicago Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 95 F.3d 593, 597 (7th Cir. 1996) ("Unless a contract reduces output in some market, to the detriment of consumers, there is no antitrust problem."). MRED's conduct is consistent with its unilateral self-interest in enforcing its procompetitive, output-increasing listing display rules. *See Pope v. Miss. Real Est. Comm'n*, 872 F.2d 127, 130 (5th Cir. 1989) (MLS rules "serve pro-competitive purposes"); *cf.* DX108 at 12 (Dkt. 96-2) (display rules for Zillow Preview listings on Realtor.com); PI Tr. 235:17–236:16 (Hofmann).

Finally, MRED's "valid business reasons" for enforcing its objective criteria rule rebut any *prima facie* case. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 483 (1992) (citation omitted). That enforcement and MRED's national expansion were not pretextual. The expansion was a long-time goal that MRED consulted with many brokerages about and became feasible after an Operating Agreement change to admit non-Realtors. PI Tr. at 466:9–467:15 (Jensen). No law bars that expansion, and national expansion itself spurs competition with other MLSs, benefitting buyers, sellers, brokerages, and agents. *Id.* 469:23–470:19 (Jensen).

For all those reasons, the Court should thus deny injunctive relief.

[1] That establishing direct feeds may involve "a lot of time" or "higher costs," Pl. Br. 38, does not affect their substitutability. *E.g.*, *DSM Desotech, Inc. v. 3D Sys. Corp.*, No. 08 cv 1531, 2013 WL 389003, at *13 (N.D. Ill. Jan. 31, 2013).

Dated: July 13, 2026

/s/ *Stephen D. Libowsky*
Stephen D. Libowsky
MANATT, PHELPS & PHILLIPS, LLP
151 N. Franklin St. (Suite 2600)
Chicago, IL 60606
Telephone: (312) 477-4798
slibowsky@manatt.com
Attorney No. 6187081

Dylan M. Carson (*pro hac vice*)
Joshua N. Drian (*pro hac vice*)
MANATT, PHELPS & PHILLIPS, LLP
1050 Connecticut Ave. NW (Suite 600)
Washington, D.C. 20036
Telephone: (202) 585-6500
dcarson@manatt.com
jdrian@manatt.com

Zachary J. Howe (*pro hac vice*)
MANATT, PHELPS & PHILLIPS, LLP
12730 High Bluff Dr. (Suite 300)
San Diego, CA 92130
Telephone: (619) 205-8500
zhowe@manatt.com

*Counsel for Defendant*
*Midwest Real Estate Data LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 13, 2026, I electronically filed a copy of the foregoing through the Court's CM/ECF system, which will send notifications of the filing to all counsel of record.

Dated: July 13, 2026 /s/ *Stephen D. Libowsky*