**BC**

**FILED**
7/14/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MPV

DMITRY SHKIPIN (*pro se*)
support@homeopenly.com
325 Sharon Park Dr. #416
Menlo Park, CA 94025
Telephone: 650.281.6962

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Zillow Group, Inc. et al.<br><br>   Plaintiff,<br><br> v.<br><br>Midwest Real Estate Data LLC et al.<br><br>   Defendant. | Case No.: 1:26-cv-05451<br><br>**GEODOMA'S STATEMENT IN SUPPORT OF NEITHER PARTY**<br><br>Judge:  Hon. John J. Tharp Jr. |

## STATEMENT

Your Honor, in their pleadings (ECF 131), Midwest Real Estate Data LLC (MRED) admits to the following:

> "… Here, Zillow claims that MRED has monopoly power since it "con-trols" 98% of Chicago-area listings, Pl. Br. 2, even while admitting that "[e]ach broker has control over its own listings feed and can supply that feed to Zillow or whomever it wants." Id. at 31 (quoting Dr. Aron). Direct brokerage feeds are a substitute to MRED's data compilation. PI Tr. 530:14–20 (Aron). Indeed, Zillow admits that it can already access at least 45% of Chicago-area listings through direct feeds. Pl. Br. 16, 36. And Zillow can access even more since, in its view, only 28% of Compass listings are truly ineligible for direct feed. Pl. Br. 31, 36. …"

In my Amicus Brief (ECF 17), I identified this exact problem: direct brokerage feeds are a substitute for Legacy MLS feeds. Direct brokerage feeds are critical data inputs (same as other common e-commerce inputs: hotel bookings, airline bookings, vacation rentals bookings, tangible goods for sale, digital stock photos, ride-sharing drivers availability, dog sitters availability, real estate agents availability, etc.) into a common platform that works to "facilitate a single, simultaneous transaction" and offers "different products or services to two different groups who both depend on the platform to intermediate between them." Ohio v. Am. Express Co., 138 S. Ct. 2274, 201 L. Ed. 2d 678 (2018)

Digitally, one can VERY EASILY incorporate certain inputs of their direct competitors. For instance, Amazon, an online retailer, incorporates products of about two million third-party sellers (aka "internal competitors") into its website (also subject to anticompetitive price-fixed MFNs. See https://oag.ca.gov/news/press-releases/attorney-general-bonta-exposes-amazon-price-fixing-scheme-driving-costs ). Walmart does as well. Redfin, an online real estate brokerage, incorporates services of about 85,000 (Redfin Partner Program and Rocket Homes Partner Program) so-called "partner agents" affiliated with competing real estate firms.



*Diagram A*



*Diagram B*

Diagrams A and B visually explain the real reason Zillow opened this docket – Zillow wants this Court to enforce its *de facto* non-compete IDX data-feed-sharing agreement with MRED (and, as a show of force, to keep all Legacy MLSs from cutting them off) – even though the Zillow platform directly competes for listing inputs with MRED.

Zillow says not all brokers will give them their listing data. Tough luck. Geodoma cannot accept ANY listings from ANY of these brokerages because Zillow Preferred (Flex) and about (50)+ other "Referral Networks" have implicated all major real estate brokerages in a $15B annually nationwide RESPA/RICO fraud. Geodoma cannot do business with brokerages that we KNOW violate federal law in collusion with Zillow Preferred (Flex). See Taylor v. Zillow, Inc., 2:25-cv-01818 (W.D. Wash. Oct. 6, 2025) (Doc. 7). Because of illegal actions by others, Geodoma is forced to entirely by-pass feeds from major real estate brokerages in America, and go to home sellers DIRECTLY to obtain ALL our listings data (which is nearly impossible to do: the whole reason to hire a broker is not having to list a home yourself.)

Moreover, home sellers cannot make optional offers of Buyer Agent Commissions (BAC) directly to buyer brokers. Home sellers can only make Interested Party Contributions (IPCs) to help homebuyers pay for their buyer-paid closing costs. This means that home sellers cannot themselves include optional BAC offers into self-published listings, unless the listing is posted by their listing brokerage that offers to share seller-paid commissions in a real estate brokerage capacity, subject to the 12 U.S.C. 2607(c)(3) exemption.

Being able to transmit optional BAC offers (in (40) U.S. states where buyer broker rebates are allowed by state law) is a major advantage and an integral part of the United States real estate marketplace (splitting seller-paid (e.g., ~6% "full") real estate commission between brokers does not affect GSE's IPCs caps for maximum seller concessions set between 3%-6%. See Tuccori v. At World Properties, LLC, 1:24-cv-00150 (N.D. Ill. Apr. 21, 2026) (Docs. 149; 180)).

Zillow's RESPA/RICO fraud not only implicates "Flex partner agents" in ongoing violations of a federal ban on kickbacks, but also prevents alternative and lawful platforms from engaging real estate brokers complicit in Zillow's fraud. This is a win for Zillow and Zillow alone – everyone else loses ("Flex partner brokers" think that Zillow Preferred (Flex) only costs them ~40% in kickbacks. No. Flex "success fees" are illegal under RESPA and cost ~1,040% once the law is enforced against this conduct, plus legal fees and reputational damage.)

Zillow is able to get away with this blatant abuse because it does not have to ask real estate brokers to obtain listings directly - Zillow and MRED utilize a *de facto* non-compete agreement to share listing inputs (MRED is eager to give Zillow access, even though "mere possession of a broker's license is not sufficient to qualify for MLS Participation").

These *de facto* non-compete agreements between Legacy MLSs and "paper" brokerage platforms to syndicate listing inputs restrain open competition - leaving both buyer brokers and listing brokers with fewer platform choices and lower-quality platforms that abuse them (CoStar Homes.com is the only major RESPA-compliant "paper" brokerage platform with IDX access). Because (1) Zillow's access to MRED's data feeds is by itself anticompetitive, and (2) Zillow uses MRED's data feeds to implicate the industry in RESPA/RICO fraud – this Court is wise to consider the greater irreversible harms Zillow causes to the entire industry and consumers.

Thank you for your time,


I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 14, 2026

/s/ Dmitry Shkipin


Dmitry Shkipin, pro se

GEODOMA'S STATEMENT IN SUPPORT
OF NEITHER PARTY                              5                    Case No.: 1:26-cv-05451